1  Marcia Robinson Lowry (*admitted pro hac vice*)
   mlowry@abetterchildhood.org
2  Jonathan G. Borle (SBN # 314669)
   jborle@abetterchildhood.org
3  A BETTER CHILDHOOD
   355 Lexington Avenue, Floor 16
4  New York, NY 10017
   Telephone: (646) 795-4456
5  Facsimile: (212) 692-0415

6  *Attorneys for Plaintiffs* (Additional Counsel Listed on Signature Page)

7              **UNITED STATES DISTRICT COURT**

8      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| 9  Gary G., *et al.*, | Case No. 5:23-cv-00947-MEMF-BFM |
| 10                 Plaintiffs, | *Assigned to the Hon. Maame Ewusi-Mensah Frimpong* |
| 11  v. | **PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) MOTION TO DISMISS (ECF NO. 44)** |
| 12  Gavin Newsom, *et al.*, | |
| 13                 Defendants. | |
| 14 | |
| 15 | <u>**Hearing**</u>: Date:      February 29, 2024 |
| 16 | Time:      10:00 a.m. Room:     Courtroom 8B |
| 17 | Action Filed:    May 25, 2023 |
| 18 | FAC Filed:      August 14, 2023 Trial Date:      None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT BACKGROUND ......................................................................... 2

    A.  Overview of San Bernardino County's Child Welfare System. ............ 2

    B.  The Juvenile Court's Role in San Bernardino County's Child Welfare System. ...................................................................................... 3

    C.  Plaintiffs And The Action ...................................................................... 4

III. THE *MOTION* SHOULD BE DENIED ........................................................ 5

    A.  *Younger* Abstention Does Not Apply. .................................................. 5

        1.  Plaintiffs' Dependency Proceedings Are Not One of the Three Required "Exceptional Circumstances." ......................... 6

        2.  Defendants Have Not Proven The *Middlesex* Criteria Are Satisfied. ......................................................................... 9

            a.  This Suit Does Not Implicate Any Important State Interest That Is Not Also A Federal Interest. ................... 10

            b.  The Dependency Proceedings Do Not Provide An Adequate Forum For Alleged Systemic Statutory And Constitutional Violations. ......................................... 11

        3.  Defendants Have Not Shown The Federal Action Will Effectively Enjoin The State Dependency Proceedings. ............. 12

    B.  The *Rooker-Feldman* Doctrine Does Not Apply. ............................... 14

    C.  Plaintiffs Have Adequately Alleged Redressability. ........................... 16

IV. CONCLUSION .............................................................................................. 19

OPPOSITION TO COUNTY DEFENDANTS' FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS (ECF No. 44)

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*31 Foster Children v. Bush*
5
   329 F.3d 1255 (11th Cir. 2003) ....................................................................... 13

6

*A v. Nutter*
7
   737 F. Supp. 2d 341 (E.D. Pa. 2010) ............................................................... 15

8

*A.A. v. Buckner*
   2021 U.S. Dist. LEXIS 209247 (M.D. Ala. Oct. 29, 2021) .............................. 13
9

*AmerisourceBergen Corp. v. Roden*
10
   495 F.3d 1143 (9th Cir. 2007) ......................................................................... 10

11

*Applied Underwriters, Inc. v. Lara*
12
   37 F.4th 579 (9th Cir. 2022) ........................................................................ 6, 7

13

*Belinda K. v. Baldovinos*
14
   2012 U.S. Dist. LEXIS 18366 (N.D. Cal. Feb. 13, 2012) ................................... 3

15

*Bennett v. Spear*
16
   520 U.S. 154, 171 (1997) ................................................................................ 16

17

*Bonnie v. Bush*
18
   2001 U.S. Dist. LEXIS 23600 (S.D. Fla. Apr. 20, 2001) ................................... 15

19

*Brian A. by Brooks v. Sundquist*
   149 F. Supp. 2d 941 (M.D. Tenn. 2000) ......................................................... 12
20

*Brown v. Alexander*
21
   2013 U.S. Dist. LEXIS 175357 (N.D. Cal. Dec. 13, 2013) .............................. 12

22

*Bryan C. v. Lambrew*
23
   340 F.R.D. 501 (D. Me. 2021) ...................................................................... 9, 13

24

*Citizens for Fair Representation v. Padilla*
25
   2018 U.S. Dist. LEXIS 202623 (E.D. Cal. Nov. 28, 2018) .............................. 17

26

*Connor B. v. Patrick*
27
   771 F. Supp. 2d 142 (D. Mass. 2011) ......................................................... 11, 19

28

*Cordery v. Ige*
   2023 U.S. Dist. LEXIS 63085 (D. Haw. Apr. 11, 2023) ................................... 16

**Page(s)**

<u>Cases</u>

*Doe v. Mann*
   415 F.3d 1038 (9th Cir. 2005) ........................................................ 6, 7

*Duke v. Gastelo*
   64 F.4th 1088 (9th Cir. 2023) ............................................................. 6

*Dwayne B. v. Granholm*
   2007 U.S. Dist. LEXIS 28265 (E.D. Mich. Apr. 17, 2007) ........................ 10, 11

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*
   874 F.3d 1083 (9th Cir. 2017) .......................................................... 16

*Edmonds v. City of L.A.*
   2023 U.S. Dist. LEXIS 209719 (C.D. Cal. June 30, 2023) ............................ 17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*
   544 U.S. 280 (2005) ..................................................................... 14

*Holley v. Gilead Scis., Inc.*
   379 F. Supp. 3d 809 (N.D. Cal. 2019) ................................................. 17

*Hollingsworth v. Perry*
   570 U.S. 693 (2013) ..................................................................... 16

*Horne v. Flores*
   557 U.S. 433 (2009) ..................................................................... 18

*J.B. ex rel. Hart v. Valdez*
   186 F.3d 1280 (10th Cir. 1999) ........................................................ 13

*Jeremiah M. v. Crum*
   2023 U.S. Dist. LEXIS 173564 (D. Alaska Sep. 28, 2023)
   .................................................................. 8, 9, 12, 13, 14, 17, 18

*Jonathan R. v. Justice*
   41 F.4th 316 (4th Cir. 2022) ........................................................ 6, 9, 11

*Juliana v. U.S.*
   947 F.3d 1159 (9th Cir. 2020) ...................................................... 16, 17, 18

*Ke v. Gonzalez*
    2018 U.S. Dist. LEXIS 62340 (N.D. Cal. Apr. 12, 2018) .................................... 8

**Page(s)**

<u>Cases</u>

*Kenny A. v. Perdue*
    218 F.R.D. 277 (N.D. Ga. 2003) ................................................................. 11, 15

*Lahey v. Contra Costa Cty. Dep't of Children & Family Servs.*
    2004 U.S. Dist. LEXIS 18292 (N.D. Cal. Aug. 31, 2004) ................................. 12

*LaShawn A. by Moore v. Kelly*
    990 F.2d 1319 (D.C. Cir. 1993) ............................................................ 8, 9, 11, 12

*Laurie Q. v. Contra Costa Cnty.*
    304 F. Supp. 2d 1185 (N.D. Cal. 2004) ........................................................ 4, 13

*Lewis v. Casey*
    518 U.S. 343 (1996) ....................................................................................... 18

*L. H. v. Jamieson*
    643 F.2d 1351 (9th Cir. 1981) ....................................................................... 8, 11

*Logan v. U.S. Bank Nat'l Ass'n.*
    722 F.3d 1163 (9th Cir. 2013) ........................................................................ 10

*Lujan v. Defs. of Wildlife*
    504 U.S. 555, 575 (1992) .............................................................................. 17

*In re M.C.*
    199 Cal. App. 4th 784 (2011) .......................................................................... 3

*M.D. ex rel. Stukenberg v. Perry*
    675 F. 3d 832 (5th Cir. 2012) .......................................................................... 9

*M.D. v. Abbott*
    907 F.3d 237 (5th Cir. 2018) .......................................................................... 18

*M.D. v. Perry*
    799 F. Supp. 2d 712 (S.D. Tex. 2011) .......................................................... 9, 10

*McCartney v. Cansler*
    608 F. Supp. 2d 694 (E.D.N.C. 2009) ............................................................ 10

*Mecinas v. Hobbs*
   30 F.4th 890 (9th Cir. 2022) ........................................................................ 16, 18

                                                                                                      **Page(s)**

Cases

*Melendres v. Maricopa Cnty.*
   897 F.3d 1217 (9th Cir. 2018) ............................................................................ 19

*Moore v. Sims*
   442 U.S. 415, 418-22 (1979) ............................................................................ 7, 8

*Mosley v. Jessup*
   2019 U.S. Dist. LEXIS 34487 (W.D.N.C. Mar. 4, 2019) ................................... 15

*Negrete v. L.A. Cnty.*
   2021 U.S. Dist. LEXIS 116468 (C.D. Cal. June 22, 2021)................................. 8

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*
   491 U.S. 350 (1989) ........................................... 5, 6, 7, 9, 10, 12, 13, 14

*Noel v. Hall*
   341 F.3d 1148 (9th Cir. 2003) ....................................................................... 14, 15

*Novak v. U.S.*
   795 F.3d 1012 (9th Cir. 2015) ............................................................................ 17

*Patterson v. Ariz. Dep't of Econ. Sec.*
   2015 U.S. Dist. LEXIS 184724 (D. Ariz. July 21, 2015) ................................. 15

*People United for Children, Inc. v. City of New York*
   108 F. Supp. 2d 275 (S.D.N.Y. 2000) ............................................................... 12

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*
   657 F. 3d 876 (9th Cir. 2011) ....................................................................... 10, 11

*Rahman v. Chertoff*
   244 F.R.D. 443 (N.D. Ill. 2007) ........................................................................ 19

*Rizzo v. Goode*
   423 U.S. 362 (1976) ........................................................................................... 19

*Rynearson v. Ferguson*
   903 F.3d 920 (9th Cir. 2018) ............................................................................... 6

*S. River Watershed All., Inc. v. Dekalb Cnty.*
    69 F.4th 809 (11th Cir. 2023) .............................................................. 16

**Page(s)**
<u>Cases</u>

*S.F. Baykeeper v. City of Sunnyvale*
    627 F. Supp. 3d 1102 (N.D. Cal. 2022) ............................................. 18

*S.W. v. City of New York*
    46 F. Supp. 3d 176 (E.D.N.Y. 2014) .................................................. 15

*Sam M. v. Chafee*
    800 F. Supp. 2d 363 (D.R.I. 2011) ..................................................... 11

*Serafin v. Realmark Holdings, LLC*
    2023 U.S. Dist. LEXIS 193462 (N.D. Cal. Oct. 26, 2023) ................... 6

*Smith v. Cal. Dep't of Managed Health Care*
    2023 U.S. Dist. LEXIS 209492 (N.D. Cal. Nov. 22, 2023) ............... 16

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ........................................................................... 16

*Sprint Commc'ns., Inc. v. Jacobs*
    571 U.S. 69 (2013) ............................................................... 5, 6, 7, 13

*Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*
    827 F.3d 314 (4th Cir. 2016) ....................................................... 14, 15

*Tinsley v. McKay*
    156 F. Supp. 3d 1024 (D. Ariz. 2015) ....................................... 7, 8, 14

*U.S. v. Texas*
    143 S. Ct. 1964 (2023) ....................................................................... 18

*Wallingford v. Bonta*
    82 F.4th 797 (9th Cir. 2023) ................................................................ 6

*Wyatt B. v. Kate Brown*
    2021 U.S. Dist. LEXIS 184389 (D. Or. Sept. 27, 2021) ...................... 8

*Yahvah v. Cnty. of L.A.*
    2018 U.S. Dist. LEXIS 109429 (C.D. Cal. Mar. 9, 2018) ................... 8

*Younger v. Harris*
    401 U.S. 37 (1971) ..................................................1, 5, 6, 7, 8, 9, 10, 12, 13, 14

**Page(s)**

Cases

*Zayas v. Nguyen*
    2021 U.S. Dist. LEXIS 241551 (W.D. Wash. Dec. 17, 2021)............................ 8

Statutes

29 U.S.C. § 701 *et seq.* ....................................................................................... 5

42 U.S.C. § 671 .................................................................................................... 10

42 U.S.C. § 672 .................................................................................................... 10

42 U.S.C. § 672(a)(2)(B) ....................................................................................... 2

42 U.S.C. § 1983....................................................................................................4, 5

42 U.S.C. § 12131 *et seq.* ..................................................................................... 5

48 U.S.C. § 1983.................................................................................................... 4

Cal. Code Regs. Title 2 § 11140 *et seq.* .................................................................. 5

Cal. Gov't Code § 11135 *et seq.*.............................................................................. 5

Welfare and Institutions Code ("Cal. Welf. & Inst. Code")
    § 300 ..............................................................................................................3
    § 325 ..............................................................................................................3
    § 356 ..............................................................................................................3
    § 358 ..............................................................................................................3
    § 360 ..............................................................................................................3
    § 366 ..............................................................................................................3
    § 366(a) .......................................................................................................3, 7
    § 366(a)(1)(B)..................................................................................................4
    § 1530.5 ..........................................................................................................2
    § 1530.8 ..........................................................................................................2
    § 1534 ..............................................................................................................2
    § 1538.9 ..........................................................................................................2
    § 10800 ..........................................................................................................2
    § 16501 ..........................................................................................................2

§ 16501.1 ...................................................................................................4
§ 16501.1(a) ..............................................................................................4

**Page(s)**

Statutes

Welfare and Institutions Code ("Cal. Welf. & Inst. Code")
§ 16501.1(f) ..............................................................................................4
§ 16501.1(d) ..............................................................................................4
§ 16501.1(g)(14) .......................................................................................4
§ 16503(a), *et seq* ...................................................................................4
§ 17730 .....................................................................................................2

Other Authorities

Cal. Const Article I, § 7(a) ......................................................................4

U.S. Constitution Article III ......................................................2, 16, 18

OPPOSITION TO COUNTY DEFENDANTS' FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS (ECF No. 44)

# I.    <u>INTRODUCTION</u>

Following years of investigation, the San Bernardino Grand Jury declared San Bernardino County's foster care system "too broken to fix." Plaintiffs are children in this broken system – a system administered by County Defendants – who have been forced to file suit to protect themselves from systemic and injurious violations of their statutory and constitutional rights.[1] The Court should reject Defendants' attempt to avoid necessary systemic changes and deny the *Motion to Dismiss for Lack of Subject Matter Jurisdiction* ("*Motion*") for several reasons.

First, the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) does not apply. The dependency proceedings to which Plaintiffs are subjected do not fall within the three "exceptional" categories necessary for *Younger*'s application. It is undisputed they are not criminal proceedings or civil proceedings implicating California's interest in enforcing its courts' judgments. And, contrary to Defendants' contentions, they are not "quasi-criminal." Plaintiffs are not criminals and have not been accused of criminal activity; they are victims the proceedings are intended to protect. The Court need go no further to properly reject *Younger* abstention. But, even if the Court did, Defendants' argument would still fail because Defendants have not established that the other *Younger* abstention requirements are met.

Second, the *Rooker-Feldman* doctrine is inapplicable. Plaintiffs are not state-court losers seeking to undo any state court judgments. They seek to require Defendants to comply with statutes and constitutional provisions intended to protect Plaintiffs' rights – an action to which *Rooker-Feldman* does not apply.

---

[1] Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R. are referred to as "Plaintiffs." Defendants San Bernardino County ("County"), Members of the San Bernardino Board of Supervisors ("Board"), San Bernardino County Children and Family Services ("CFS"), and Jeany Zepeda are referred to as the "County Defendants" or "Defendants."

Finally, Plaintiffs have adequately pled the redressability necessary for Article III standing. The injunctive relief Plaintiffs seek is specific and concrete (the *FAC* identifies no less than 20 specific injunction terms), indisputably likely to redress their injuries, and within the Court's authority to award. Defendants' arguments – which are heavy on inapposite authority and light on analysis of this case's allegations and remedies – do not establish otherwise.

## II.    RELEVANT BACKGROUND

### A.    Overview of San Bernardino County's Child Welfare System.

Congress provides federal funding to states on the condition that the state's child welfare system takes responsibility for placement and care of its foster children. 42 U.S.C. § 672(a)(2)(B). In California, the "Department of Social Services" ("CDSS") is the state agency that promulgates regulations, policies, and procedures necessary to implement the child welfare system and has general oversight over the state's local child welfare agencies. ECF No. 34 ¶¶ 3, 41, 128.

While CDSS is responsible for supervising California's child welfare system, actual administration occurs at the county level. Cal. Welf. & Inst. Code § 10800; *see also* ECF No. 34 ¶¶ 2, 43. Counties must monitor foster children's well-being, ensuring they are placed in appropriate homes with access to adequate support services. *See* Cal. Welf. & Inst. Code § 16501. The counties must also, *inter alia*, "establish regulations" governing placements, "establish" enough placements to meet foster children's needs, and then "inspect" the placements to ensure they are safe and appropriate. *Id*. §§ 1530.5, 1530.8, 1534, 1538.9; *see also id*. § 17730.

CFS runs San Bernardino County's foster care system and is responsible for the children within it. ECF No. 34 ¶¶ 1-2. Ms. Zepeda, CFS Director, oversees CFS's policies, practices, and operations, and is responsible for ensuring it complies with applicable laws. *Id*. ¶ 46. The County oversees and monitors CFS. *Id*. ¶ 43. And the Board is responsible for, *inter alia*, overseeing the County's policies and operations,

appointing and supervising CFS's director, and ensuring the County complies with applicable laws. *Id*. ¶ 44. These are the "County Defendants."

**B.     The Juvenile Court's Role in San Bernardino County's Child Welfare System.**

California's "juvenile court system is a statutory creation." *In re M.C.*, 199 Cal. App. 4th 784, 790 (2011). "A juvenile court is a superior court exercising limited jurisdiction arising under juvenile law." *Id*. (internal quotations omitted). "Dependency proceedings in the juvenile court" – *i.e.*, the proceedings at issue here – "are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." *Id*.; *see also Belinda K. v. Baldovinos*, 2012 U.S. Dist. LEXIS 18366, at *2 (N.D. Cal. Feb. 13, 2012).

The first step in dependency proceedings begins with a CFS petition to bring the child within the juvenile court's jurisdiction. Cal. Welf. & Inst. Code §§ 300, 325. The juvenile court may take jurisdiction under various circumstances including where the child has suffered serious physical harm intentionally inflicted by the child's parent or guardian. *Id*. If the court finds jurisdiction, it must decide whether, *inter alia*, the child will be made a dependent of the court or to allow the child to remain in the supervised custody of her guardian. *Id*. §§ 356, 358, 360. The children in San Bernardino County's foster care system are those made dependents of the juvenile court. *See*, *e.g.*, *id*. §§ 300, 325.

The juvenile court retains jurisdiction over any dependent child and must review her status at least every six months. Cal. Welf. & Inst. Code §§ 300, 366. At these hearings, the court must "consider the safety of the child" and determine, *inter alia*, "the continuing necessity for and appropriateness of the placement[,]" "the extent of [CFS's] compliance with the case plan[,]" and "the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care." *Id*. § 366(a).

C.    **Plaintiffs And The Action**

Plaintiffs are children in San Bernardino County's "too broken to fix" foster system. ECF No. 34 ¶¶ 2, 9, 11, 26-39, 55-60.[2] Plaintiffs have been injured by Defendants' policies and practices that fail to protect foster children, in violation of their statutory and constitutional rights. *Id*. ¶¶ 11-21, 55-123, 137-221. These failures include: (1) failing to adequately vet foster homes and monitor children once placed; (2) failing to provide adequate case planning;[3] (3) failing to provide emergency placements; (4) failing to provide necessary health assessments or services; (5) failing to protect children from mistreatment; (6) permitting case workers to carry dangerously high caseloads; and (7) failing to provide effective services to children with disabilities. *Id*.

Plaintiffs filed the *First Amended Complaint* ("*FAC*") on August 14, 2023, asserting the following claims arising from the deprivation of statutory and constitutional rights on behalf of themselves and similarly-situated children: (1) 48 U.S.C. § 1983–Adoption Assistance and Child Welfare Act; (2) Cal. Welf. & Inst. Code § 16501.1, 16503(a), *et seq*.–State Statutory Rights; (3) 42 U.S.C. § 1983–Federal Right to Substantive Due Process; (4) Art. I, §7(a) Cal. Const.–State Right to

---

[2]  Defendants incorrectly attribute the assertion that the foster care system is "too broken to fix" to Plaintiffs (ECF No. 44-1 at 10:17-19), but this was a grand jury finding made after years of investigation. ECF No. 34 ¶¶ 55-61.

[3] A case plan is the "foundation and central unifying tool in child welfare services" and sets "forth the circumstances that caused the child to be placed in foster care, the goals of…placement, the services…provid[ed] for the child, the success of those services…, and future plans for placing the child permanently[.]" *Laurie Q. v. Contra Costa Cnty.*, 304 F. Supp. 2d 1185, 1188-89 (N.D. Cal. 2004) (quoting Cal. Welf. & Inst. Code § 16501.1(a), (f)). Defendants contend that "[j]uvenile courts formulate and implement case plans." ECF No. 44-1 at 8:27-28 (citing Cal. Welf. & Inst. Code § 366(a)(1)(B)). But Section 366(a)(1)(B) does not say that. "Case plans are prepared by the county agency…in charge of administering the foster care program" – here, CFS. *Laurie Q.*, 304 F. Supp. 2d at 1189; *see also* Cal. Welf. & Inst. Code §§ 16501.1(a), (d). "The juvenile court is obligated to review the case plan at each of the periodic hearings it holds, and may modify the plan as it sees fit." *Laurie Q.*, 304 F. Supp. 2d at 1189; *see also* Cal. Welf. & Inst. Code §§ 366(a)(1)(B), 16501.1(g)(14). Case workers may modify the case plan between hearings without court approval. *Id*.

1  Substantive Due Process; (5) 42 U.S.C. § 1983–Federal Right to Family Association;

2  (6) 42 U.S.C. § 12131 *et seq.*–The Americans with Disabilities Act; (7) 29 U.S.C. §

3  701 *et seq.*–The Rehabilitation Act; and (8) Cal. Gov't Code § 11135 *et seq.*, Cal.

4  Code Regs. tit. 2 § 11140 *et seq.*–State Right Against Unlawful State Discrimination.

5  *Id*. ¶¶ 223, 235-281. Plaintiffs seek, *inter alia*, a declaration that Defendants'

6  infringement of Plaintiffs' rights is unconstitutional and unlawful, and an injunction

7  – identifying nearly two dozen specific provisions – prohibiting Defendants from

8  subjecting Plaintiffs to ongoing practices that violate Plaintiffs' rights. *Id*. at Prayer

9  for Relief. None of the requested relief is directed at the juvenile courts.

10          **III.    THE *MOTION* SHOULD BE DENIED**

11  **A.    *Younger* Abstention Does Not Apply.**

12          Federal courts must "decide cases within the scope of federal jurisdiction."

13  *Sprint Commc'ns., Inc. v. Jacobs,* 571 U.S. 69, 72 (2013); *see also New Orleans Pub.*

14  *Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) (*NOPSI*). This

15  obligation is "virtually unflagging" and "[p]arallel state-court proceedings do not

16  detract from" it. *Sprint,* 571 U.S. at 77 (internal quotations omitted).

17          In *Younger*, the Supreme Court identified a single exception to the rule that

18  state court proceedings do not affect federal courts' obligation to decide cases within

19  their jurisdiction.[4] Although it subsequently expanded *Younger*'s applicability, the

20  Supreme Court made clear in *Sprint* that *Younger* abstention applies **only** in one of

21  "three exceptional circumstances" (sometimes referred to as the "*NOPSI* categories")

22  – where federal action would unduly interfere with (1) ongoing state criminal

23  prosecutions, (2) state civil enforcement proceedings that are akin to criminal

24  proceedings (*i.e.*, "quasi-criminal" proceedings), or (3) state civil proceedings that

25  implicate the state's interest in enforcing the orders and judgments of its courts. 571

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]  In particular, *Younger* held that that "[w]hen there is a parallel, pending state
28  criminal proceeding, federal courts must refrain from enjoining the state prosecution."
    *Sprint*, 571 U.S. at 72.

OPPOSITION TO COUNTY DEFENDANTS' FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS (ECF No. 44)

U.S. at 77-82 (internal quotations omitted). If a state proceeding falls into a *NOPSI* category, *Younger* abstention applies ***only*** if: (1) the state proceeding is (a) ongoing, (b) implicates important state interests, and (c) provides an adequate opportunity to raise constitutional challenges (the "*Middlesex* criteria"); ***and*** (2) adjudication of the federal action would have the practical effect of enjoining the state proceeding. *See*, *e.g.*, *Wallingford v. Bonta*, 82 F.4th 797, 822-23 (9th Cir. 2023) (Collins, J., dissenting); *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 588 (9th Cir. 2022); *Serafin v. Realmark Holdings, LLC*, 2023 U.S. Dist. LEXIS 193462, at *11 (N.D. Cal. Oct. 26, 2023). Each *Younger* "requirement[] must be strictly met." *Rynearson v. Ferguson*, 903 F.3d 920, 925 (9th Cir. 2018) (internal quotations omitted); *see also Duke v. Gastelo*, 64 F.4th 1088, 1094 (9th Cir. 2023).

### 1.     Plaintiffs' Dependency Proceedings Are Not One of the Three Required "Exceptional Circumstances."

Defendants do not contend that the dependency proceedings which they assert necessitate *Younger* abstention are criminal proceedings (first *NOPSI* category) or civil proceedings implicating California's interest in enforcing its courts' judgments (third *NOPSI* category). They cannot. Plaintiffs' dependency proceedings are not criminal. *See*, *e.g.*, *Doe v. Mann*, 415 F.3d 1038, 1057 (9th Cir. 2005) ("Dependency proceedings are civil in nature" and "designed…to protect the child") (internal quotations omitted). Nor are the dependency proceedings civil proceedings implicating California's interest in enforcing its courts' judgments. Those are "'civil proceedings involving certain orders…uniquely in furtherance of…state courts' ability to perform their judicial functions[,]'" such as state contempt orders. *Jonathan R. v. Justice*, 41 F.4th 316, 330-31 (4th Cir. 2022) (quoting *Sprint*, 571 U.S. at 78). "[F]oster-care periodic hearings" – which involve, *inter alia*, confirming compliance with case plans and "ensuring the children's placements continue to be in their best interest" – "are nothing of the sort." *Id*. at 331.

Because the dependency hearings do not fall within the first or third *NOPSI* category, Defendants' *Younger* argument rests on the assertion that "it is well-settled that child custody and juvenile dependency cases are quasi-criminal enforcement actions[.]" ECF No. 44-1 at 17:15-16 (internal quotations omitted). Not so.

To qualify as a "quasi-criminal enforcement action[] subject to *Younger*" (ECF No. 44-1 at 17:15-6), the underlying action must be "akin to a criminal prosecution." *Sprint*, 571 U.S. at 80-81.  Such actions are:

> characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

*Applied Underwriters*, 37 F.4th at 588 (quoting *Sprint*, 571 U.S. at 79-80). Plaintiffs' dependency proceedings are not akin to criminal prosecution. They are not initiated to sanction Plaintiffs for a wrongful act; they are intended to protect them. *See*, *e.g.*, Cal. Welf. & Inst. Code § 366(a); *Mann*, 415 F.3d at 1057; *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1034 (D. Ariz. 2015). And, while CFS initiates the proceedings, they do not culminate in the filing of a complaint or charges against Plaintiffs.

Tellingly, the authority Defendants contend establishes it is "well-settled" that the dependency proceedings here are quasi-criminal does not. ECF No. 44 at 17:15-25 (internal quotations omitted). Each decision involved allegedly abusive and/or neglectful **parents** who filed suit in federal court seeking to overturn custody orders or injunctions against juvenile court proceedings or state statutes. For example, in *Moore v. Sims*, the Supreme Court found abstention proper because **parents** accused of abusing or neglecting their children in state proceedings sued in federal court and sought orders, *inter alia*, enjoining the proceedings and reversing custody orders. 442 U.S. 415, 418-22 (1979). The court found that "the temporary removal of a child in the child-abuse context was, in aid of and closely related to criminal statutes." *Id*. In other words, the state's removal of children from abusive or neglectful parents constituted a quasi-criminal action against the **parents** – a state action into which the

1    *parents* asked the federal court to intervene.[5] But neither *Moore* nor any other

2    decision cited by Defendants addresses a scenario, like here, where foster children

3    subject to dependency proceedings intended to protect them file suit in federal court

4    to protect themselves against systemic statutory and constitutional violations.

5        Ninth Circuit courts have rejected attempts to apply *Moore* or its reasoning to

6    find Plaintiffs' dependency hearings quasi-criminal. *See*, *e.g.*, *L. H. v. Jamieson*, 643

7    F.2d 1351, 1354 (9th Cir. 1981); *Jeremiah M. v. Crum*, 2023 U.S. Dist. LEXIS

8    173564, at *38 (D. Alaska Sep. 28, 2023); *Wyatt B. v. Kate Brown*, 2021 U.S. Dist.

9    LEXIS 184389, at **17-18 (D. Or. Sept. 27, 2021); *Tinsley*, 156 F. Supp. 3d at 1034.

10   For example, the *Tinsley* court found the "ongoing dependency proceedings" that take

11   place once a child is placed in state custody are not quasi-criminal because their

12   "animating purpose…is to plan for and monitor the development and wellbeing of

13   children, not to investigate or penalize those who might have contributed to their

14   dependency." 156 F. Supp. 3d at 1034. The court distinguished *Moore* – "where an

15   immediate threat of criminal harm warranted the removal of children from the custody

16   of the parent" – to find that the ongoing dependency proceedings did "not qualify as

17   quasi-criminal for the purposes of *Younger*." *Id*. Similarly, the *Jeremiah M.* court

18   found that "[p]laintiffs' ongoing [juvenile court] proceedings [] miss[] the defining

19   feature of this *Younger* category—enforcement" because, "[u]nlike in the majority of

20

21   _____

     [5] The other decisions cited by Defendants similarly involve **parents** accused of abuse
22   or neglect as federal plaintiffs seeking to challenge custody determinations. ECF No.
     44-1 at 17:15-25; *see also Zayas v. Nguyen*, 2021 U.S. Dist. LEXIS 241551, at **2-3
23   (W.D. Wash. Dec. 17, 2021) (parent of removed child filed suit to have welfare
     workers fired); *Negrete v. L.A. Cnty.*, 2021 U.S. Dist. LEXIS 116468, at **1-2 (C.D.
24   Cal. June 22, 2021) (parent filed suit in federal court based on allegations that
     defendants "fabricated evidence in connection with the unlawful removal of
25   [p]laintiff's adopted child…and deprived [p]laintiff of her parental rights"); *Ke v.
     Gonzalez*, 2018 U.S. Dist. LEXIS 62340, at **1-11 (N.D. Cal. Apr. 12, 2018) (parent
26   of removed children filed suit to stop dependency proceedings and seek return of
     children); *Yahvah v. Cnty. of L.A.*, 2018 U.S. Dist. LEXIS 109429, at **3-7, 11-12
27   (C.D. Cal. Mar. 9, 2018) (parent of child removed by state filed suit seeking, *inter
     alia*, temporary restraining order against ongoing custody proceedings).
28

[defendant's] cases," the "parents of the plaintiff foster children are not parties in this suit." 2023 U.S. Dist. LEXIS 173564, at *17. Ultimately, "[t]he absence of parties against whom criminal statutes would be enforced" and "the complete lack of sanctions being sought" against plaintiffs made the "suit fundamentally dissimilar from others that fall within the quasi-criminal category." *Id.* (internal quotations omitted).

Courts outside the Ninth Circuit have done the same. In *Jonathan R.*, the Fourth Circuit "easily reject[ed]" the use of *Moore* to establish the propriety of abstention because the at-issue "ongoing individual hearings serve[d] to protect the children who would be plaintiffs in federal court[,]" while "*Moore* concerned the other side of the foster-care process: parental rights[.]" 41 F.4th at 329-30. As the court explained, "[i]t would turn decades of Supreme-Court jurisprudence—and logic—on its head to put the[] foster children [in *Jonathan R.*] in the shoes of the abusive parents in *Moore*[.]" *Id.* at 330 (internal citations omitted). Courts in the Fifth Circuit (from which *Moore* originated) have also subsequently rejected *Younger* abstention in the foster care class action context. *See M.D. ex rel. Stukenberg v. Perry*, 675 F. 3d 832, 835 (5th Cir. 2012); *M.D. v. Perry*, 799 F. Supp. 2d 712, 726 (S.D. Tex. 2011). And courts in other circuits have reached similar determinations, finding that, unlike the "state-initiated proceeding to gain custody of children allegedly abused by their parents" in *Moore*:

> periodic individual child welfare state court proceedings…are beyond the custody determination and are not attempts to sanction a party by removing parental rights for some wrongful act. The parallel proceedings involving the [p]laintiffs may involve periodic reviews by the state court, but they lack any element that would put them into the quasi-criminal category.

*Bryan C. v. Lambrew*, 340 F.R.D. 501, 510 (D. Me. 2021).

### 2. Defendants Have Not Proven The *Middlesex* Criteria Are Satisfied.

Because Defendants have not established the dependency proceedings fall into any *NOPSI* category, their *Younger* argument fails. *See, e.g., Jonathan*, 41 F.4th at

329. Even if Defendants had met their *NOPSI* category burden (they have not), they have not proven the required *Middlesex* criteria exist.

a.   *This Suit Does Not Implicate Any Important State Interest That Is Not Also A Federal Interest.*

*Middlesex*'s "important state interest" factor cannot be met where a state child welfare system is also governed by substantial federal statutes, oversight, and policy. This is because "[t]he goal of *Younger* abstention is to avoid federal court interference with ***uniquely*** state interests such as preservation of these states' peculiar statutes, schemes, and procedures." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007) (emphasis in original). The federal government has a significant stake in how states – which accept federal funds and agree to extensive rules and regulations – administer foster care. *See* 42 U.S.C. §§ 671-72; *Perry*, 799 F. Supp. 2d at 726 ("The voluntary submission to such federal oversight greatly lessens the force of any complaints regarding unwarranted federal intrusion on state sovereignty"); *Dwayne B. v. Granholm*, , 2007 U.S. Dist. LEXIS 28265, at *20 n.5 (E.D. Mich. Apr. 17, 2007) ("there are no 'comity' or 'federalism' concerns presented [where] the State…has voluntarily agreed to federal oversight of its foster care system in exchange for federal funding"). There can be no unique state interest where, as here, defendants willingly subject their foster care system to federal oversight. *See McCartney v. Cansler*, 608 F. Supp. 2d 694, 703-04 (E.D.N.C. 2009) (*Younger* abstention not warranted in case alleging federal Medicaid violations because of strong federal interest in and regulation of program).

Moreover, the Ninth Circuit has cautioned that the important state interest requirement is "not an invitation to abstain simply because a suit implicates a state law, even one involving a traditional state concern" and strictly limited *Younger*'s application to proceedings "where the operation of the state judicial system is itself at issue." *Logan v. U.S. Bank Nat'l Ass'n.*, 722 F.3d 1163, 1167-68 (9th Cir. 2013); *see also Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F. 3d 876, 886 (9th Cir. 2011)

1  (*Younger* abstention requires the state interest go to "'the core of the administration

2  of [its] judicial system'") (quoting *Juidice*, 430 U.S. at 335). In *Potrero*, the Ninth

3  Circuit held the federal suit would not unduly interfere with the state's vital interest

4  in protecting "the authority of [the state's] judicial system" because it did not

5  challenge state courts authority to issue writs or "processes for their enforcement once

6  issued." 657 F. 3d at 887 (internal quotations omitted). Plaintiffs' challenges here do

7  not go to the "core" of the administration of the state juvenile court. *Id*.

8           b.    *The Dependency Proceedings Do Not Provide An Adequate*

9                 *Forum For Alleged Systemic Statutory And Constitutional*

10                *Violations.*

11         The final *Middlesex* criteria requires that the state proceedings provide

12  plaintiffs an adequate opportunity to present their federal claims. *Middlesex*, 457 U.S.

13  at 432. Courts, however, recognize Plaintiffs' dependency proceedings are an

14  inappropriate forum for remedying the systemic and agency-wide statutory and

15  constitutional violations at issue. *See Jamieson*, 643 F.2d at 1354 (systemic relief

16  sought by a class of foster children would not "be presented during the normal course

17  of a state [juvenile court] proceeding"); *Jonathan R.*, 41 F.4th at 332, 336 (finding

18  that "individual periodic [child welfare] hearings do not afford an adequate

19  opportunity for [p]laintiffs to press their systemic claims" and "[r]eforming foster care

20  case-by-case would be like patching up holes in a sinking ship by tearing off the

21  floorboards"); *LaShawn A. by Moore v. Kelly*, 990 F.2d 1319, 1323 (D.C. Cir. 1993)

22  (child welfare proceedings not appropriate for a "multi-faceted class-action challenge

23  to the [State's] administration of its entire foster-care system").[6]

24  _____

25  [6] *See also Connor B. v. Patrick*, 771 F. Supp. 2d 142, 158 (D. Mass. 2011) (state courts "cannot and do not" afford foster children an "adequate opportunity to seek relief for

26  systemic failures"); *Sam M. v. Chafee*, 800 F. Supp. 2d 363, 381-82 (D.R.I. 2011) (family court not an adequate forum to address constitutional violations); *Dwayne B.*,

27  2007 U.S. Dist. LEXIS 28265, at *21 (juvenile courts not adequate forum for "class

28  of children to present…multifaceted request for broad-based injunctive relief based

In particular, state court proceedings address issues involving the care of a child by his or her parent, and "are not suitable arenas in which to grapple with broad issues external to the parent-child relationship." *LaShawn*, 990 F. 2d at 1323; *see also Brown v. Alexander*, 2013 U.S. Dist. LEXIS 175357, at *23 (N.D. Cal. Dec. 13, 2013) (California's juvenile courts "'are of limited jurisdiction and are not equipped to rule on claims arising from constitutional due process considerations'") (quoting *Lahey v. Contra Costa Cty. Dep't of Children & Family Servs.*, 2004 U.S. Dist. LEXIS 18292, at *32 (N.D. Cal. Aug. 31, 2004)). As a recent decision put it:

> [i]f a [juvenile] court orders [the agency] to come up with a different placement for a [p]laintiff or to provide that [p]laintiff particular services, the injuries complained of here remain. By contrast, the relief requested here—such as requiring [the agency] to provide services to all children whose case plans identify a need for services, manage caseloads at a certain level, and conduct annual case record reviews 'to measure how likely children in [d]efendants' custody are to receive timely permanence'—is likely to redress Plaintiffs injuries.

*Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *38. It is not possible for a dependency court to provide systemic relief on a class-wide basis. Thus, this *Middlesex* criteria cannot be demonstrated.

### 3. Defendants Have Not Shown The Federal Action Will Effectively Enjoin The State Dependency Proceedings.

Even if a federal case implicates a *NOPSI* category and each *Middlesex* criteria exists (they do not), *Younger* abstention is improper unless the party requesting it proves the federal action will have the practical effect of enjoining state proceedings. Defendants have not done so.

---

on the Constitution and on federal and state law") (internal quotations omitted); *Kenny A. v. Perdue*, 218 F.R.D. 277, 287 (N.D. Ga. 2003) ("juvenile court[s] cannot order [the child welfare agency] to provide a particular placement for a child, develop new placements, or enter orders requiring staff training, caseloads, the creation of new resources or other issues affecting what happens to children who come before it"); *Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941, 957 (M.D. Tenn. 2000); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 291 (S.D.N.Y. 2000).

Defendants argue Plaintiffs' challenges to "the County's handling of case plans, placements, and services…fall[] directly within the core competency and purview of the juvenile courts" such that the Court "simply cannot grant injunctive relief without second-guessing the juvenile courts' careful determinations as to these matters." ECF No. 44-1 at 18:17-21. But Defendants' outdated authority – *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280  (10th Cir. 1999), and *Laurie Q.* – does not support abstention. The decisions – which pre-date the Supreme Court's *Sprint* decision – failed to determine whether the state court proceedings fell into a required *NOPSI* category and, instead, relied solely on the *Middlesex* criteria. *31 Foster Children*, 329 F.3d at 1278; *Valdez*, 186 F.3d at 1292; *Laurie Q.*, 304 F. Supp. 2d at 1205. In other words, the courts found *Younger* abstention proper without determining whether the state proceedings actually qualified for such abstention. "The Supreme Court[,]" however, "eschewed this approach in *Sprint*." *Bryan C.*, 340 F.R.D. at 510 (refusing to rely on *31 Foster Children*, *Valdez*, and *Laurie Q*); *see also Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *15 n.61 (D. Alaska Sep. 28, 2023) ("pre-*Sprint* case law" is "of limited assistance in resolving the [abstention] issue" because it "analyzed *Younger* abstention utilizing only the *Middlesex* factors"). And, as set forth above, it is clear the dependency proceedings do not fall into the three exceptional *NOPSI* categories. The *Younger* analysis should end there.

Even so, Defendants' authority does not establish that this case will have the practical effect of enjoining the periodic dependency proceedings because the relief sought there is distinguishable from the relief sought here. For example, in *31 Foster Children*, plaintiffs "ask[ed] for individualized determinations with respect to particular foster children[.]" *A.A. v. Buckner*, 2021 U.S. Dist. LEXIS 209247, at *19 (M.D. Ala. Oct. 29, 2021). Plaintiffs do not seek such relief and the relief they seek will not enjoin the juvenile court's operation. Even if Plaintiffs did seek such relief,

1   the Court could disallow any requested relief that will effectively enjoin the
2   dependency proceedings.

3       Moreover, courts have rejected the argument that systemic claims brought
4   against executive branch defendants – like Plaintiffs' – implicate the juvenile court's
5   judicial actions. *See, e.g., Tinsley*, 156 F. Supp. 3d at 1043-44 (abstention improper
6   where plaintiffs "do not allege any statutory or constitutional violations in the
7   procedure or administration of the juvenile courts" or accuse "the juvenile courts for
8   failing to address these constitutional issues"); *see also NOPSI*, 491 U.S. at 368.

9   **B.    The *Rooker-Feldman* Doctrine Does Not Apply.**

10      Like *Younger* abstention, the *Rooker-Feldman* doctrine does not apply. The
11  *Rooker-Feldman* doctrine prohibits "cases brought by state-court losers complaining
12  of injuries caused by state-court judgments rendered before the district court
13  proceedings commenced and inviting district court review and rejection of those
14  judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284
15  (2005). It "only comes into play…when a disappointed party seeks to take not a
16  formal direct appeal, but rather its *de facto* equivalent, to a federal district court." *Noel*
17  *v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). If a court finds plaintiff's suit is a *de*
18  *facto* appeal of a state court decision, it must determine whether "any issue raised in
19  the suit [] is 'inextricably intertwined' with an issue resolved by the state court in its
20  judicial decision" and refuse to decide those issues. *Id*. at 1157-58.

21      Here, Plaintiffs are not "state-court losers," and neither allege their injuries are
22  "caused by state-court judgments" nor ask the Court to "undo" those non-existent
23  judgments. *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *29.[7] Instead, Plaintiffs
24  "seek[] review of state agency action" – suits to which "*Rooker-Feldman* does not
25  apply[.]" *Exxon*, 544 U.S. at 287; *see also Thana v. Bd. of License Comm'rs for*
26  *Charles Cnty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) ("state administrative and

---

27
28  [7]   Defendants do not cite any order Plaintiffs purportedly seek to undo or argue this case is a *de facto* appeal of any (unidentified) order.

executive actions are not covered by the [*Rooker-Feldman*] doctrine"). *Rooker-Feldman* is therefore completely "inapplicable" here. *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *29 (rejecting argument similar to Defendants' because it "ignores the past two decades of Supreme Court and Ninth Circuit precedent").[8]

Defendants' contentions to the contrary are unavailing. They argue – without citation to authority – that *Rooker-Feldman* applies because Plaintiffs challenge state agency actions (*e.g.*, placement decisions) already reviewed by the juvenile court. ECF No. 44 at 26:1-7. But *Rooker-Feldman* does not apply simply because a suit challenges an agency action that has been reviewed in state court. *See, e.g., Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 316 (4th Cir. 2016); *Mosley v. Jessup*, 2019 U.S. Dist. LEXIS 34487, at *6 (W.D.N.C. Mar. 4, 2019). Moreover, juvenile courts only review agency actions in individual cases, not the systemic failures alleged in the *FAC*. Defendants also argue – again, without authority – that the Court "cannot grant Plaintiffs' requested relief without overruling the juvenile courts' determinations" because "[t]he juvenile proceedings and this lawsuit are…inextricably intertwined." ECF No. 44-1 at 26:1-7. But, even if is assumed to be true, "a finding that prior state litigation is 'inextricably intertwined' with subsequent federal litigation does not automatically trigger application of *Rooker-Feldman*[.]" *Patterson v. Ariz. Dep't of Econ. Sec.*, 2015 U.S. Dist. LEXIS 184724, at *3 (D. Ariz. July 21, 2015). "Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play[.]" *Noel*, 341 F.3d at

---

[8] *See also S.W. v. City of New York*, 46 F. Supp. 3d 176, 201-03 (E.D.N.Y. 2014) (*Rooker-Feldman* no bar to plaintiff-children's claims that agency-defendants' failed to properly screen foster mother or subsequently monitor plaintiffs); *A v. Nutter*, 737 F. Supp. 2d 341, 360 (E.D. Pa. 2010) (*Rooker-Feldman* no bar to claims that defendants violated children's and parent's constitutional rights due to their unsafe child welfare policies); *Kenny A.*, 218 F.R.D. at 289 (*Rooker-Feldman* no bar to plaintiff-children's claims about systemic foster care deficiencies) (N.D. Ga. 2003); *Bonnie v. Bush*, 2001 U.S. Dist. LEXIS 23600, at **37-38 (S.D. Fla. Apr. 20, 2001) (*Rooker-Feldman* no bar to plaintiff-foster children's federal claims against state executive officials).

1158. Because Defendants have not proven this suit is a *de facto* appeal, the "inextricably intertwined" test does not apply.

**C.    Plaintiffs Have Adequately Alleged Redressability.**

"Article III of the U.S. Constitution limits federal court jurisdiction to 'Cases' and 'Controversies.'" *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (quoting U.S. Const. art. III, § 2, cl. 1). For a case or controversy to exist, a plaintiff must have Article III "standing" to pursue the claim raised. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To have Article III standing, "a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. U.S.*, 947 F.3d 1159, 1168 (9th Cir. 2020). "Each of these elements must be supported with the manner and degree of evidence required at the successive stages of the litigation." *Mecinas*, 30 F.4th at 896-97 (internal quotations omitted). Relevant here, "[a]t the motion to dismiss stage, the burden to prove redressability is 'relatively modest.'" *S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 820 (11th Cir. 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)); *see also Smith v. Cal. Dep't of Managed Health Care*, 2023 U.S. Dist. LEXIS 209492, at *21 (N.D. Cal. Nov. 22, 2023).

Defendants' Article III argument rests on a single contention – that Plaintiffs lack standing because they "assert broad and generalized grievances about the County foster care system" that "a federal court cannot redress." ECF No. 44-1 at 12:1-9; *see also id.* at 16:6 ("Plaintiffs' claimed injury is not redressable via federal injunction"). While it is true the Supreme Court has held that "a 'generalized grievance[]'…is insufficient to confer standing" (*Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)), Defendants cannot establish the "generalized grievance bar" (*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1093 (9th Cir. 2017)) applies here.

"[A] grievance too 'generalized' for standing purposes is one characterized by its abstract and indefinite nature[.]" *Mecinas*, 30 F.4th at 897; *see also Cordery v. Ige*, 2023 U.S. Dist. LEXIS 63085, at *7 (D. Haw. Apr. 11, 2023) ("A generalized

grievance is 'undifferentiated and common to all members of the public'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992)).[9] Plaintiffs' "grievances" are concrete and specific. For example, County Defendants' contention that Plaintiffs' assert "generalized grievances" about case plans (ECF No. 44-1 at 15:2-5) ignores that the *FAC* identifies numerous individual and specific case plan "grievances" and seeks specific relief related to them including an injunction requiring CFS to provide a case plan addressing required issues within the 60-day time period required by law – something CFS has repeatedly failed to do. *See*, *e.g.*, ECF No. 34 ¶¶ 67-78, 105, 144, 164, 170, 180, 188-89, 221, Prayer for Relief.

Not only are the *FAC*'s alleged "grievances" specific and concrete, they are redressable because the requested relief is within the Court's power to award. *See Juliana*, 947 F.3d at 1170 (redressability requires that requested relief "is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award").[10] *Jeremiah M.* stands as example. There, the district court denied a motion to dismiss for lack of standing, finding that a court order "likely could redress…injuries" caused by systemic child welfare issues "by requiring systematic improvements, such as new systems for providing placements and services, enhanced

---

[9] Although courts most often review generalized grievance arguments in the context of the actual injury requirement (*see*, *e.g.*, *Novak v. U.S.*, 795 F.3d 1012, 1018 (9th Cir. 2015); *Citizens for Fair Representation v. Padilla*, 2018 U.S. Dist. LEXIS 202623, at *9 (E.D. Cal. Nov. 28, 2018)), Defendants tie their argument to Article III's redressability element. ECF No. 44-1 at 12:1-9, 16:6. That courts analyze these arguments in the context of injury does not mean Defendants have made such an argument. And Defendants' footnote (and unexplained) assertion that the *FAC* "does not plead cognizable injury" (*id*. at 12:22-28) is not sufficient to raise an actual injury argument in the *Motion*. *See*, *e.g.*, *Edmonds v. City of L.A.*, 2023 U.S. Dist. LEXIS 209719, at *32 n.9 (C.D. Cal. June 30, 2023); *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019). In any event, to the extent Defendants claim they are challenging injury in the *Motion* and the Court considers this argument, Plaintiffs incorporate by reference Section IV.A.1.b.2 of their concurrently-filed *Opposition to County Defendants' Federal Rule of Civil Procedure 12(b)(6) Motions to Dismiss*.

[10] Defendants do not contend the requested relief is not substantially likely to redress Plaintiffs' injuries. *See* ECF No. 44-1 at 11:15-16:7.

and transparent reporting, better caseload management practices, and a requirement to conduct regular case record reviews." *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at **38-40; *see also M.D. v. Abbott*, 907 F.3d 237, 273-76 (5th Cir. 2018) (affirming injunction requiring child welfare agencies to comply with specific mandates). In doing so, the court rejected defendant's argument that the relief would make the court "the arbiter[] of state agency resource" (*i.e.*, money) "allocation" because, although the potential allocation of resources raised federalism concerns, those "concerns must be balanced with the fact that 'federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief.'" *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564 at *39 (quoting *Horne v. Flores*, 557 U.S. 433, 450 (2009)).

Defendants' authority does not change the conclusion that Plaintiffs have adequately alleged redressability at this stage. ECF No. 44-1 at 12:10-16:7. No decision – other than *Juliana*, which is readily distinguishable – addressed redressability.[11] Each decision addressed the propriety of relief after merits determinations (*e.g.*, trial), at which point each court was able to make detailed findings based on the case's established facts. *U.S. v. Texas*, 143 S. Ct. 1964, 1968-

---

[11] In *Juliana*, plaintiffs' "sole claim" was the government "deprived them of a substantive constitutional right to a climate system capable of sustaining human life." 947 F.3d at 1169 (internal quotations omitted). They sought a declaration the government was violating the Constitution and "an injunction requiring the government not only to cease permitting, authorizing, and subsidizing fossil fuel use, but also to prepare a plan subject to judicial approval to draw down harmful emissions." *Id.* at 1170. But this declaration – while "undoubtedly likely to benefit the plaintiffs psychologically" – was "unlikely…to remediate their alleged injuries[.]" *Id.* And plaintiffs' own experts found their injunction – which would require, *inter alia*, significant intervention into the Executive and Congress, could conflict with those branches' national economy and defense decisions, would require court supervision for decades, and would exceed the court's Article III power – would not "suffice to stop catastrophic climate change or even ameliorate their injuries." *Id.* at 1170-72; *see also Mecinas*, 30 F.4th at 901 n.6; *S.F. Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1102, 1116 (N.D. Cal. 2022). Here, Plaintiffs do not ask the Court to solve an intractable global crisis with remedies they concede would not redress their injuries. Plaintiffs seek to require Defendants to comply with specific obligations to prevent specific, continuing, and injurious violations of Plaintiffs' rights.

69 (2023); *Horne*, 557 U.S. at 439-41; *Lewis v. Casey*, 518 U.S. 343, 346-47 (1996); *Rizzo v. Goode*, 423 U.S. 362, 364-66 (1976); *Connor B*., 985 F. Supp. 2d at 133-34; *see also Rahman v. Chertoff*, 244 F.R.D. 443, 455 (N.D. Ill. 2007) (distinguishing *Rizzo* because the court "had the benefit of factual findings regarding the precise parameters of the contested policies and procedures as well as the purported constitutional violations"). Like the defendants in those cases, Defendants will have every opportunity to present their arguments in this case – including arguments establishing that some or all of the injunctive relief Plaintiffs seek is improper.[12] They will be able to attempt to establish which relief (if any) is an improper intrusion on their "discretion" to address the issues raised in the *FAC*.[13] Defendants have not shown the Court should shortcut these processes and decide – on a motion to dismiss that, *inter alia*, fails to cite on-point authority or address any of the relief actually sought – that it cannot grant Plaintiffs' requested relief.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court deny the *Motion*. Should, however, the Court grant any part of the *Motion*, Plaintiffs respectfully request the Court provide them with leave to amend.

---

[12] Because defendants do not address any particular relief request, the Court has no basis to determine whether any particular request is not within its power. *See Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1222 (9th Cir. 2018) (rejecting argument injunction violates *Rizzo*'s "federalism principles" because defendant did not discuss specific injunction provisions and the court would not "manufacture…arguments for" it).

[13] Although Defendants contend the Court should not impinge on their "discretion" (*see*, *e.g.*, ECF No. 44-1 at 12:7-9), they do not identify any requested relief that implicates an area of discretion, particularly discretion to flout statutes and constitutions.

1                   A BETTER CHILDHOOD

2

3     Dated:  December 7, 2023     By    */s/ Polly Towill*
Marcia Robinson Lowry (*admitted pro hac vice*)
4     mlowry@abetterchildhood.org
Jonathan G. Borle (SBN # 314669)
5     jborle@abetterchildhood.org
355 Lexington Avenue, Floor 16
6     New York, NY 10017
Telephone: (646) 795-4456
7     Facsimile: (212) 692-0415

8

9     SHEPPARD MULLIN RICHTER &
HAMPTON LLP
10    Polly Towill (SBN # 120420)
ptowill@sheppardmullin.com
11    Daniel Brown (*admitted pro hac vice*)
dlbrown@sheppardmullin.com
12    Benjamin O. Aigboboh (SBN # 268531)
baigboboh@sheppardmullin.com
13    Tori Kutzner (SBN # 334057)
tkutzner@sheppardmullin.com
14    Victoria B. Ayeni (SBN # 335233)
vayeni@sheppardmullin.com
15    Alexandria Amerine (*admitted pro hac vice*)
aamerine@sheppardmullin.com
16    333 S. Hope St., Forty-Third Floor
Los Angeles, CA 90071
17    Telephone: (213) 620-1780
Facsimile: (213) 620-1398
18

19    *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

-20-                                    Case No. 5:23-cv-947
OPPOSITION TO COUNTY DEFENDANTS' FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS (ECF No. 44)

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R., certifies that this brief contains 6,726 words, which:

    x   complies with the word limit of L.R. 11-6.1.

   ___ complies with the word limit by court order dated _____.

Dated:  December 7, 2023

*/s/ Polly Towill*
_____
POLLY TOWILL
