1  A BETTER CHILDHOOD
   MARCIA ROBINSON LOWRY (*admitted pro hac vice*)
2  mlowry@abetterchildhood.org
   JONATHAN G. BORLE, Cal Bar No. 314669
3  jborle@abetterchildhood.org
   355 Lexington Avenue, Floor 16
4  New York, NY 10017
   Telephone:  646.795.4456
5  Facsimile:   212.692.0415

6  *Attorneys for Plaintiffs* (Additional Counsel Listed on Signature Page)

7              **UNITED STATES DISTRICT COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

9  GARY G. et al.,                           Case No. 5:23-cv-00947-MEMF-BFM

10              Plaintiffs,                   *Assigned to the Hon. Maame Ewusi-*
                                              *Mensah Frimpong*
11      v.
                                              **PLAINTIFFS' OPPOSITION TO**
12  GAVIN NEWSOM et al.,                      **STATE DEFENDANTS' MOTIONS**
                                              **TO DISMISS (ECF NOS. 42 & 43)**
13              Defendants.
                                              **Hearing**:
14                                            Date:   February 29, 2024
                                              Time:   10:00 a.m.
15                                            Room:  8B

16                                            Action Filed:  May 25, 2023
                                              FAC Filed:   August 14, 2023
17                                            Trial Date:     None Set

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................1

II.   RELEVANT BACKGROUND ...................................................2

    A.    State Defendants' Role in Overseeing San Bernardino County's Child Welfare System. ........................................2

    B.    Plaintiffs, Their Next Friends, and This Action. ...................3

III.  LEGAL STANDARD .............................................................3

IV.   THE *MOTIONS* SHOULD BE DENIED ................................4

    A.    Plaintiffs' Next Friends Satisfy Federal Rule Of Civil Procedure 17's Requirements..................................................4

        1.    Prior Court Approval Is Not Required for a Minor to Sue By a Next Friend. ..........................................4

        2.    Dismissal Is Not An Appropriate Remedy Under Rule 17(c). ...................................................................5

    B.    CDSS Is Not Immune From Suit Under the Eleventh Amendment. ..........................................................................6

    C.    The *FAC* Alleges a Causal Connection Between CDSS Defendants and Plaintiffs' Injuries...................................7

    D.    The *FAC* States Claims Against Governor Newsom. ......10

    E.    The *FAC* Sufficiently Pleads Claims Against State Defendants for Deprivations of Rights Under the CWA, United States Constitution, ADA, and RA (First, Third, Fifth, Sixth, and Seventh Causes of Action). ...................12

        1.    The *FAC* Alleges a CWA Claim Against State Defendants. ..............................................................12

        2.    The *FAC* Alleges a Substantive Due Process Claim Against State Defendants.................................14

        3.    The *FAC* Alleges A Family Association Claim Against State Defendants. ...........................................15

        4.    The *FAC* Alleges ADA and RA Claims Against State Defendants. ...................................................16

V.    CONCLUSION....................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)...................................................................3

*Blessing v. Freestone*
  520 U.S. 329 (1997)..................................................................13

*Brian A. by Brooks v. Sundquist*
  149 F. Supp. 2d 941 (M.D. Tenn. 2000) ......................................11

*Charlie H. v. Whitman*
  83 F. Supp 2d 476 (D.N.J. 2000).................................................11

*In re Chi., Rock Island & Pac. Ry.*
  788 F.2d 1280 (7th Cir. 1986) ......................................................5

*Clark v. Cal. Dep't of Corrections*
  123 F.3d 1267 (9th Cir. 1997) ...................................................6, 7

*Connor B. v. Patrick*
  771 F. Supp. 2d 142 (D. Mass. 2011)..........................................11

*Cotta v. Cnty. of Kings*
  2013 U.S. Dist. LEXIS 88493 (E.D. Cal. June 24, 2013) ..................5

*D.G. v. Henry*
  2011 U.S. Dist. LEXIS 38709 (N.D. Okla. Apr. 8, 2011).................11

*Davis v. Walker*
  745 F.3d 1303 (9th Cir. 2014) ......................................................6

*Dwayne B. v. Granholm*
  2007 U.S. Dist. LEXIS 28265 (E.D. Mich. Apr. 17, 2007) .......4, 5, 11

*Elisa W. v. City of N.Y.*
  2016 U.S. Dist. LEXIS 123332 (S.D.N.Y. Sept. 12, 2016) ..........6, 13

*Eminence Capital, L.L.C. v. Aspeon, Inc.*
  316 F.3d 1048 (9th Cir. 2003) ......................................................4

*Espino v. Regents of the Univ. of Cal.*
  2023 U.S. Dist. LEXIS 58626 (C.D. Cal. Mar. 31, 2023)....................................7

*Gardner v. Parson*
  874 F.2d 131 (3d Cir. 1989) ......................................................................6

*Genesco, Inc. v. Cone Mills Corp.*
  604 F.2d 281 (4th Cir. 1979) ....................................................................5

*Gonzaga Univ. v. Doe*
  536 U.S. 273 (2002)................................................................................13

*Gonzalez v. Reno*
  212 F.3d 1338 (11th Cir. 2000), *cert. denied*, 530 U.S. 1270 (2000) .................5

*Henry A. v. Willden*
  678 F.3d 991 (9th Cir. 2012) ..............................................................13, 15

*Ingram by & Through Ingram v. Ainsworth*
  184 F.R.D. 90 (S.D. Miss. Jan. 20, 1999)..................................................5

*Jeanine B. v. McCallum*
  2001 U.S. Dist. LEXIS 12091 (E.D. Wis. June 19, 2001) ................................13

*Jonathan R. v. Justice*
  41 F.4th 316 (4th Cir. 2022) ......................................................................11

*Juan F. by & Through Lynch v. Weicker*
  37 F.3d 874 (2d Cir. 1994) ......................................................................11

*Kenny A. v. Perdue*
  218 F.R.D. 277 (N.D. Ga. Aug. 18, 2003) ..........................................11, 14, 15

*Kimes v. Stone*
  84 F.3d 1121 (9th Cir. 1996) ......................................................................3

*L.A. Cnty. Bar Ass'n v. March Fong Eu*
  979 F.2d 697 (9th Cir. 1992) ....................................................................10

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) ....................................................................4

*M.D. v. Abbott*
  907 F.3d 237 (5th Cir. 2018) ....................................................................11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) .................................................................3

*Marin v. Ovitt*
  2022 U.S. Dist. LEXIS 214664 (C.D. Cal. Nov. 1, 2022) ...................7

*Marisol A. by Forbes v. Giuliani*
  126 F.3d 372 (2d Cir. 1997) .................................................................11

*Menotti v. City of Seattle*
  408 F.3d 1113 (9th Cir. 2005) ...............................................................8

*Miller v. Ceres Unified School Dist.*
  141 F. Supp. 3d 1038 (E.D. Cal. Oct. 27, 2015) ................................7

*Olivia Y. v. Barbour*
  351 F. Supp. 2d 543 (S.D. Miss. 2004) ...............................................11

*Pich v. Lightbourne*
  221 Cal. App. 4th 480 (2013) ..........................................................9, 16

*Russick v. Hicks*
  85 F. Supp. 281 (W.D. Mich. 1949) .....................................................5

*S.M. v. City of N.Y.*
  2023 U.S. Dist. LEXIS 54400 (S.D.N.Y. Mar. 29, 2023)...................5

*Sants v. Seipert*
  2015 U.S. Dist. LEXIS 118032 (E.D. Cal. Sept. 3, 2015) .................12

*Slakan v. Porter*
  737 F.2d 368 (4th Cir. 1984) ...............................................................10

*Sossamon v. Texas*
  563 U.S. 277 (2011)............................................................................6, 7

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ...............................................................8

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) .................................................................3

*Wyatt B. v. Brown*
  2021 U.S. Dist. LEXIS 184389 (D. Or. Sept. 27, 2021) ...........6, 11, 13

**Statutes**

42 U.S.C. § 671(a)(16) .................................................................10, 12, 13, 14

42 U.S.C. § 675(1) .............................................................................12, 13

42 U.S.C. § 1983 .............................................................................3, 12, 13, 14

42 U.S.C. § 2000d-7(a)(1) ...........................................................................7

42 U.S.C. § 12202 ........................................................................................7

Americans with Disabilities Act .........................................................passim

Cal. Welf. & Inst. Code § 10552 .............................................................9, 11

Cal. Welf. & Inst. Code § 10553 .............................................................9, 11

Cal. Welf. & Inst. Code § 10601.2 ....................................................8, 9, 10, 17

Cal. Welf. & Inst. Code § 10602(b) ..........................................................9, 10

Cal. Welf. & Inst. Code § 10605 .......................................................9, 10, 17

Cal. Welf. & Inst. Code § 10609.8 ...............................................................11

Cal. Welf. & Inst. Code § 10612 ..................................................................11

CWA .........................................................................................3, 12, 13, 14

Rehabilitation Act .................................................................................passim

**Other Authorities**

Cal. Const., Article IV, § 12(a) ...................................................................11

Cal. Const., Article V, § 4 ...........................................................................11

Fed. R. Civ. P. 8(f) .........................................................................................3

Fed. R. Civ. P. 12(b)(6) .................................................................................2

Fed. R. Civ. P. 15 .......................................................................................4, 17

Fed. R. Civ. P. 17 ...............................................................................1, 4, 5, 6

L.R. 11-6.1 ...................................................................................................19

# I.  **INTRODUCTION**

Plaintiffs are foster children who have suffered countless deprivations of their constitutional and statutory rights at the hands of Defendants, who together run and oversee San Bernardino County's foster care system.[1] The Court should reject State Defendants' attempt to avoid remedying these deprivations on a countywide basis and deny CDSS Defendants' and Governor Newsom's motions to dismiss ("*CDSS Motion*" and "*Governor's Motion*" and, collectively, the "*Motions*") for the following reasons.

First, contrary to State Defendants' contentions, Federal Rule of Civil Procedure 17 ("Rule 17") does not require a minor to obtain a court's permission to sue by a next friend and, regardless, dismissal is an inappropriate remedy. Second, State Defendants have failed to show that CDSS is immune from suit under the Eleventh Amendment. Third, the *First Amended Complaint* ("*FAC*") alleges a causal connection between CDSS Defendants' culpable inaction and Plaintiffs' injuries. Fourth, the *FAC* alleges Governor Newsom had direct involvement in overseeing CFS and yet failed to act to prevent Plaintiffs' injuries.  Finally, the *FAC* adequately pleads claims against the CDSS Defendants under the Adoption Assistance and Child Welfare Act ("CWA"), First, Ninth, and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").

Accordingly, the Court should deny the *Motions*.

---

[1] "Plaintiffs" are Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R.  "County Defendants" are Defendants San Bernardino County ("County"), Members of the San Bernardino Board of Supervisors, San Bernardino County Children and Family Services ("CFS"), and Jeany Zepeda.   "State Defendants" are Defendants California Department of Social Services ("CDSS"), Kimberley Johnson ("Director Johnson"), and Gavin Newsom ("Governor Newsom").  "CDSS Defendants" are CDSS and Director Johnson.

Case No. 5:23-cv-00947-MEMF-BFM
OPPOSITION TO STATE DEFENDANTS' RULE 12(b)(6) MOTIONS (ECF Nos. 42 & 43)

## II.    RELEVANT BACKGROUND

### A.    State Defendants' Role in Overseeing San Bernardino County's Child Welfare System.

The *FAC* alleges numerous violations of Plaintiffs' statutory and constitutional rights by both State Defendants and County Defendants. ECF No. 34 ("*FAC*") ¶ 2.[2] While direct administration of San Bernardino's foster care system occurs at the county level by CFS, CDSS is ultimately responsible for overseeing CFS and ensuring it complies with applicable law. *Id.* ¶¶ 3, 40, 42, 128. For example, CDSS is required to, *inter alia*, ensure CFS provides foster children with appropriate placements, monitors and supports placed children, develops, updates, and implements written case plans, identifies appropriate permanent homes for children in a timely fashion, and provides effective services to children with disabilities. *Id.* ¶¶ 5-7. CDSS must also monitor and provide objective recommendations to county child welfare agencies including CFS. *Id.* ¶ 135. CDSS's Director is responsible for overseeing its policies, practices, and operations and must ensure CFS complies with all applicable laws. *Id.* ¶ 42. Governor Newsom is the chief executive of California and is charged with faithfully executing the laws of the state and federal governments. *Id.* ¶ 40.

State Defendants have "systematically failed" to meet their statutory and constitutional obligations to oversee CFS and protect foster children in the custody of CFS. *FAC* ¶¶ 3, 8, 10, 12, 21, 132, 136. For example, in 2011, 2015, and 2017, the California State Auditor found CDSS failed to prevent registered sex offenders from working or living in foster care homes and facilities. *Id.* ¶¶ 133-34.

---

[2] Plaintiffs incorporate by reference the summary of the *FAC*'s allegations in Section II.A of the concurrently-filed *Opposition to County Defendants' Federal Rule of Civil Procedure 12(b)(6) Motions to Dismiss* ("*Opposition to County Defendants' MTD*") including County Defendants' numerous statutory and constitutional violations.

**B.** __Plaintiffs, Their Next Friends, and This Action__.

Plaintiffs are children in San Bernardino's foster system who have been injured by State Defendants' policies, patterns, practices, and customs that fail to protect foster children and deprive them of their statutory and constitutional rights. *FAC* ¶¶ 3, 5-8, 10, 12, 21, 40, 132-36. Each is represented by a next friend dedicated to representing their best interests. *Id*. ¶¶ 27-39.

The *FAC* asserts five claims arising from State Defendants' deprivation of statutory and constitutional rights on behalf of Plaintiffs' and similarly-situated children. The *FAC*'s first, third, and fifth causes of action respectively seek to remedy deprivations of CWA rights, constitutional substantive due process rights, and familial rights through 42 U.S.C. § 1983 ("Section 1983"). The *FAC*'s sixth cause of action seeks to protect Plaintiffs' ADA rights, while its seventh cause of action seeks to remedy a deprivation of their RA rights.

## III.  __LEGAL STANDARD__

On a motion to dismiss, courts accept the complaint's allegations as true and draws all reasonable inferences in favor of plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint need only contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[D]etailed factual allegations" are not necessary and "a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "All that is required is that the complaint gives the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). In addition to considering allegations in the pleadings, a court ruling on a motion to dismiss may also consider "exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Ultimately, "all pleadings shall be so construed as to do substantial justice." *Id*. (citing Fed. R. Civ. P. 8(f)).

Leave to amend "shall be freely given when justice so requires" (Fed. R. Civ. P. 15(a))—a policy to be applied with extreme liberality. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Generally, a court should grant leave even if no request to amend was made, unless it determines the complaint cannot possibly be cured. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    THE *MOTIONS* SHOULD BE DENIED

### A.    Plaintiffs' Next Friends Satisfy Federal Rule Of Civil Procedure 17's Requirements.

Rule 17(c) allows a "minor" to "sue by a next friend." Nothing in Rule 17's language requires a minor to seek the court's permission to do so. Yet, State Defendants contend Rule 17(c) requires dismissal because Plaintiffs did not proactively seek court approval of their next friends. ECF No. 42 at 2, 18. Courts have confirmed, however, that "[t]here is no requirement under Rule 17(c) that a next friend obtain prior court authorization to commence suit on behalf of a minor child." *Dwayne B. v. Granholm*, 2007 U.S. Dist. LEXIS 28265, at *11 (E.D. Mich. Apr. 17, 2007). Regardless, even if prior authorization were necessary (it is not), dismissal is inappropriate where, as here, minor foster children have alleged violations of their constitutional and statutory rights.

### 1.    Prior Court Approval Is Not Required for a Minor to Sue By a Next Friend.

Rule 17(c) is clear—plaintiffs need not obtain court approval before bringing an action through a next friend:

> *A minor* or an incompetent person who does not have a duly appointed representative *may sue by a next friend* or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person *who is unrepresented in an action*.

Fed. R. Civ. P. 17(c)(2) (emphasis added). State Defendants interpret this as requiring a court to appoint a guardian *ad litem* or issue another appropriate order to

protect the minor when a minor initiates a lawsuit represented by a next friend. ECF No. 42 at 18. They are incorrect. Rule 17(c)(2)'s second sentence applies only when the minor "is unrepresented in an action." Minors, like Plaintiffs, who bring an action by a next friend are not "unrepresented." *Gonzalez v. Reno*, 212 F.3d 1338, 1346 (11th Cir. 2000) (court not required to appoint a guardian *ad litem* for minor represented by next friend), *cert. denied*, 530 U.S. 1270 (2000); *see also In re Chi., Rock Island & Pac. Ry.*, 788 F.2d 1280, 1282 (7th Cir. 1986) (appointment of guardian *ad litem* not required if minor represented by a next friend). Moreover, courts interpreting Rule 17(c) have rejected the notion that a plaintiff must take affirmative steps to obtain court approval for their choice of next friend. "By its terms, the second sentence of Rule 17(c) permits a[] [minor] who lacks a general guardian to bring suit by his next friend, and ***no special appointment process for the next friend is required***." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979) (emphasis added).[3] Tellingly, County Defendants do not contend that Rule 17(c) requires court appointment of next friends or seek dismissal based on Rule 17(c).

### 2.    Dismissal Is Not An Appropriate Remedy Under Rule 17(c).

Even if the Court assumed Rule 17(c) requires prior court approval of a next friend (it does not), the *CDSS Motion* must still be denied. Courts "may not use [Rule

---

[3] *See also S.M. v. City of N.Y.*, 2023 U.S. Dist. LEXIS 54400, at *10 (S.D.N.Y. Mar. 29, 2023) (Rule 17 does "not require[] that a next friend go through a formal process of judicial appointment or certification"); *Cotta v. Cnty. of Kings*, 2013 U.S. Dist. LEXIS 88493, at *13 (E.D. Cal. June 24, 2013) (identification of individual as minor's next friend in complaint "sufficient without the need for formal appointment of a guardian ad litem"); *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at *11 ("There is no requirement under Rule 17(c) that a next friend obtain prior court authorization to commence suit on behalf of a minor child."); *Ingram by & Through Ingram v. Ainsworth*, 184 F.R.D. 90, 92 (S.D. Miss. Jan. 20, 1999) (Rule 17(c) permits "a self-appointed individual to serve as next friend in order to protect the interests of the [minor]"); *Russick v. Hicks*, 85 F. Supp. 281, 283 (W.D. Mich. 1949) (denying motion to dismiss because "judicial appointment of a next friend for the [minor] plaintiffs in this action is not necessary" under Rule 17(c)).

17(c)] as a vehicle for dismissing claims or for allowing the interests of [a minor] litigant to go completely unprotected." *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014). This would pervert Rule 17(c)'s purpose of protecting "the child's interests in the litigation." *Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989); *see also Davis*, 745 F.3d at 1310. Thus, if a court believes a next friend cannot adequately represent a minor, it should "appoint a guardian ad litem—or issue another appropriate order—to protect [the] minor." Fed. R. Civ. P. 17(c)(2). An order dismissing the minor plaintiff's claims cannot be an appropriate protective order within the meaning of Rule 17(c). *Gardner*, 874 F.2d at 140; *see also Elisa W.*, 2018 U.S. Dist. LEXIS 33857, at *46 ("[I]t is difficult to understand how dismissal on non-merits grounds protects the interests of the [foster children]"). Accordingly, the *CDSS Motion* must be denied.

**B.    CDSS Is Not Immune From Suit Under the Eleventh Amendment.**

State Defendants are incorrect that the Eleventh Amendment prevents Plaintiffs' claims against CDSS.[4] *See* ECF No. 42 at 30. "Congress can . . . abrogate a state's immunity to suit, or the state can waive it." *Clark v. Cal. Dep't of Corrections*, 123 F.3d 1267, 1269 (9th Cir. 1997). Both exceptions apply here.

"One way for a state to waive its immunity is to accept federal funds where the funding statute 'manifests a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity.'" *Id.* at 1271 (citation omitted). State Defendants, citing to *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), assert that "'[s]tates, in accepting federal funding, do not consent to waive their sovereign immunity to private suits.'" ECF No. 42 at 30. However,

---

[4] Notably, State Defendants do not point to, and Plaintiffs are unaware of, any case holding a state child welfare agency is immune under the Eleventh Amendment in the context of a class action brought by foster children seeking institutional reform. *Cf. Wyatt B. v. Brown*, 2021 U.S. Dist. LEXIS 184389, at *4 (D. Or. Sept. 27, 2021) (denying motion to dismiss by Oregon's Department of Human Services).

State Defendants neglect to include the entirety of the relevant language: "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because **no statute expressly and unequivocally includes such a waiver**." *Sossamon*, 563 U.S. at 293 (emphasis added). Here, "the [RA] manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity." *Clark*, 123 F.3d at 1271; *see also* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the [RA] of 1973"). "Because California accepts federal funds under the [RA], [it] has waived any immunity under the Eleventh Amendment." *Clark*, 123 F.3d at 1271; *see also Espino v. Regents of the Univ. of Cal.*, 2023 U.S. Dist. LEXIS 58626, at *38 (C.D. Cal. Mar. 31, 2023) (same); *FAC* ¶ 276 (alleging that defendants receive substantial federal funding to operate statewide foster care system).

State Defendants also overlook that "Congress has unequivocally expressed its intent to abrogate the State's immunity under both the ADA and the [RA]." *Clark*, 123 F.3d at 1269; 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment"). The Ninth Circuit courts have repeatedly "upheld the ADA's mandate that a state shall not be immune from suit under Title II of the ADA." *Miller v. Ceres Unified School Dist.*, 141 F. Supp. 3d 1038, 1043 (E.D. Cal. Oct. 27, 2015); *see also Marin v. Ovitt*, 2022 U.S. Dist. LEXIS 214664, at *18 (C.D. Cal. Nov. 1, 2022) ("Plaintiff's claims under Title II of the ADA and § 504 of the [RA] . . . are not barred . . . by the Eleventh Amendment.").

Accordingly, CDSS is not immune under the Eleventh Amendment.

## C. The *FAC* Alleges a Causal Connection Between CDSS Defendants and Plaintiffs' Injuries.

Ignoring CDSS's vast oversight responsibilities over CFS, State Defendants incorrectly contend the *FAC* fails to specifically allege liability against the CDSS Defendants. *See* ECF No. 42 at 19-21. The *FAC*, however, sufficiently alleges that

1  CDSS and Director Johnson were aware of CFS's failings, had the power to rectify
2  them, and yet, inexplicably, failed to act to protect the foster children. The CDSS
3  Defendants' actions and inactions properly subject them to suit.

4      In the Ninth Circuit, "[a] defendant may be held liable as a supervisor under
5  [S]ection 1983 'if there exists either (1) his or her personal involvement in the
6  constitutional deprivation, or (2) a sufficient causal connection between the
7  supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652
8  F.3d 1202, 1207 (9th Cir. 2011). "The requisite causal connection can be established
9  . . . by knowingly ***refus[ing] to terminate a series of acts by others***, which [the
10 supervisor] knew or reasonably should have known would cause others to inflict a
11 constitutional injury." *Id*. at 1207-08 (emphasis added) (internal quotations and
12 citations omitted). A supervisor may also be liable "for his own culpable action ***or***
13 ***inaction*** in the training, supervision, or control of his subordinates; for his
14 acquiescence in the constitutional deprivation; or for conduct that showed a ***reckless***
15 ***or callous indifference to the rights of others***." *Id*. at 1208 (emphasis added)
16 (internal quotations and citation omitted); *see also Menotti v. City of Seattle*, 408
17 F.3d 1113, 1149 (9th Cir. 2005) ("culpable indifference" may suffice to show that a
18 supervisor "personally played a role in the alleged constitutional violations"). The
19 *FAC* adequately alleges the CDSS Defendants "refus[ed] to terminate a series of
20 acts" by CFS and "showed a reckless or callous indifference" to Plaintiffs' statutory
21 and constitutional rights. *Starr*, 652 F.3d at 1207-08; *see also FAC* ¶¶ 10, 12, 21,
22 136.

23      California law imposes several supervisorial duties on CDSS Defendants.
24 *FAC* ¶ 3. For example, CDSS Defendants must "review all county child welfare
25 systems," including CFS, to "maximize compliance with federal regulations," and
26 "monitor, on an ongoing basis, county performance on" certain "child welfare
27 program performance measures." Cal. Welf. & Inst. Code § 10601.2. CDSS
28 Defendants must also "investigate, examine and make reports upon . . . [t]he public

officers who are in any way responsible for the administration of public funds . . . administered by [CDSS]." *Id*. § 10602(b). And CDSS Defendants are empowered to conduct "audits and reviews . . . to meet [their] obligations for child welfare programs and to ensure the protection of children and families." *Id*. § 10605(c)(1). Director Johnson is "responsible for the management of [CDSS]" and for "[a]dminister[ing] the laws pertaining to the administration of public social services." *Id*. § 10553; *FAC* ¶ 42.

CDSS is also required to intervene in a county-run child welfare system if it is "substantially failing" to comply with its obligations. *Pich v. Lightbourne*, 221 Cal. App. 4th 480, 494 (2013). Among their enforcement tools, CDSS Defendants may require the county to "submit and implement a corrective action plan," "[b]ring an action for injunctive relief to secure immediate compliance," "[o]rder the county to appear at a hearing before the director to show cause why the director should not take administrative action to secure compliance," "[a]ssume, temporarily, direct responsibility for the administration of" the county foster care system, and "bring[] an action for writ of mandamus or any other action" to secure compliance. Cal. Welf. & Inst. Code §§ 10601.2, 10605. CDSS Defendants fully acknowledge these obligations. In the *CDSS Motion*, they concede federal law requires states to "develop a plan for child welfare services, foster care, and adoption assistance that meets the [CWA's] requirements" in exchange for "obtain[ing] federal funds[,]" that "CDSS is the single state agency responsible for oversight of public social services," and that "CDSS may monitor county programs, conduct audit reviews, and offer technical training" to counties, such as San Bernardino County. ECF No. 42 at 14-15.

Yet, as the *FAC* alleges, CDSS Defendants refused to take any necessary steps to oversee and "rein in" CFS to prevent harm. *FAC* ¶ 136. Indeed, while the CDSS Defendants have "long been aware" of CFS's legal violations, they have failed to take corrective measures to protect foster children leading to, *inter alia*, "scrutiny

1  from state auditors" on at least three separate occasions. *Id*. ¶¶ 10, 12, 21, 133-36.[5]

2  CFS itself has specifically used CDSS's oversight obligations to excuse its own

3  failures to comply with federal and state law. *Id*. ¶ 135. And the *FAC* alleges CDSS

4  has the power to correct CFS's failures simply by making recommendations to it.

5  *See id*.; *see also* Cal. Welf. & Inst. Code §§ 10601.2, 10602(b), 10605, 10605(c)(1).

6  The *FAC* seeks declaratory and injunctive relief specifically against State

7  Defendants to use the tools at their disposal to bring CFS into compliance with

8  applicable law. *FAC* at Prayer for Relief, IV(p)-(u).

9  The bottom line is the *FAC* alleges CDSS Defendants were aware of CFS's

10  many failures, had the power and duty to intervene to correct those failures, and yet,

11  "stood by" and failed to take any action to prevent harm to Plaintiffs. *See, e.g.*, *FAC*

12  ¶¶ 10, 12, 21, 136. These allegations are sufficient to state a claim against CDSS

13  Defendants. *See Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (noting that "[a]

14  supervisor's continued inaction in the face of documented widespread abuses" is

15  sufficient to support a finding of supervisory liability).

16  **D.   The *FAC* States Claims Against Governor Newsom.**

17  The *Governor's Motion* seeks dismissal of Governor Newsom, claiming he

18  has only general enforcement powers over CDSS and CFS. However, Governor

19  Newsom is a proper defendant because he is responsible for overseeing California's

20  complex and multi-faceted child welfare system and has taken direct actions in

21  connection with that duty.

22  To be sure, governors are proper parties to lawsuits only where they have

23  some specific duty beyond a "general duty to enforce state law." *Artichoke Joe's v.*

24  *Norton*, 216 F. Supp. 2d 1084, 1110-11 (E.D. Cal. 2002); *see also L.A. Cnty. Bar*

25  *Ass'n v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (governor proper party

26

27  [5] State Defendants argue that this particular allegation lacks "factual
enhancement[s]" to support a claim. But that is wrong—there is no heightened
28  pleading standard for these claims.

due to "specific connection to the challenged statute"). In the child welfare context, however, courts routinely allow lawsuits to proceed against governors even though the governors may "play[] a somewhat detached, supervisory role" in overseeing the foster care system. *See Connor B. v. Patrick*, 771 F. Supp. 2d 142, 159 (D. Mass. 2011).[6]

Here, the *FAC* sufficiently alleges Governor Newsom knew CFS was failing and did not take the necessary steps to protect San Bernardino County's foster children. *See FAC* ¶ 136. Governor Newsom receives regular reporting directly from CDSS, which includes executive action recommendations. Cal. Welf. & Inst. Code § 10612; *FAC* ¶ 136; *see also* Cal. Const., Art. V, § 4. Governor Newsom is solely responsible for appointing the CDSS Director, who serves at his pleasure and is responsible for overseeing California's child welfare systems. Cal. Welf. & Inst. Code §§ 10552, 10553; *FAC* ¶ 42. Finally, Governor Newsom is responsible for proposing the total statewide budget for child welfare programs in California. Cal. Welf. & Inst. Code § 10609.8; Cal. Const., art. IV, § 12(a). In short, Governor Newsom is a direct participant in California's child welfare regime, and Plaintiffs' injuries are fairly traceable to his obligation to oversee the county-administered child

---

[6] *See also Jonathan R. v. Justice*, 41 F.4th 316, 320 (4th Cir. 2022) (case asserting statutory and constitutional claims against West Virginia's governor for systematic deficiencies in West Virginia's child welfare and foster care systems); *M.D. v. Abbott*, 907 F.3d 237, 243 (5th Cir. 2018) (Texas's governor); *Sam M.*, 608 F.3d at 82 (Rhode Island's governor); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 374 (2d Cir. 1997) (New York's governor); *Juan F. by & Through Lynch v. Weicker*, 37 F.3d 874, 876 (2d Cir. 1994) (Connecticut's governor); *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at \*4 (Oregon's governor); *D.G. v. Henry*, 2011 U.S. Dist. LEXIS 38709, at \*2 (N.D. Okla. Apr. 8, 2011) (Oklahoma's governor); *Dwayne B.*, 2007 U.S. Dist. LEXIS 28265, at \*2 (Michigan's governor); *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 546 (S.D. Miss. 2004) (Mississippi's governor); *Kenny A. v. Perdue*, 218 F.R.D. 277, 284 (N.D. Ga. Aug. 18, 2003) (Georgia's governor); *Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941, 944 (M.D. Tenn. 2000) (Tennessee's governor); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 515 (D.N.J. 2000) (New Jersey's governor).

1  welfare systems in the state. Accordingly, the *FAC* sufficiently pleads claims against

2  him.[7]

3  **E.    The *FAC* Sufficiently Pleads Claims Against State Defendants for**

4  **Deprivations of Rights Under the CWA, United States Constitution,**

5  **ADA, and RA (First, Third, Fifth, Sixth, and Seventh Causes of Action).**

6  **1.    The *FAC* Alleges a CWA Claim Against State Defendants.**

7  Plaintiffs' first cause of action against State Defendants sufficiently alleges

8  that State Defendants' policies, patterns, practices, or customs deprive Plaintiffs of

9  their CWA rights. *FAC* ¶¶ 235-238. Plaintiffs allege seven enforceable rights under

10  the CWA. Six are rooted in 42 U.S.C. § 671(a)(16), which requires foster care

11  agencies to develop "case plan[s]" that meet the requirements of 42 U.S.C. § 675(1)

12  and "case review system[s]" that meet the requirements of 42 U.S.C. § 675(5). *See*

13  *also FAC* ¶ 237(a), (c)-(g).  The seventh CWA right Plaintiffs assert is rooted in 42

14  U.S.C. § 671(a)(22), which requires foster care agencies to provide foster children

15  "quality services[.]" *See also FAC* ¶ 237(b). State Defendants argue Plaintiffs have

16  "fail[ed] to establish a private right of action" for enforcing any of these seven CWA

17  rights. ECF No. 42 at 28. However, clear Ninth Circuit precedent holds otherwise.[8]

18  A statute provides a privately enforceable federal right under Section 1983

19  where Congress "intended to confer individual rights upon a class of beneficiaries."

20

21  [7] Even if the Court finds these allegations insufficient, it should grant leave to amend

22  the FAC because Plaintiffs can allege additional facts showing Governor Newsom

23  took affirmative executive actions affecting foster care in California. *Sants v. Seipert*, 2015 U.S. Dist. LEXIS 118032, at *10 (E.D. Cal. Sept. 3, 2015) (courts may

24  consider these "new" facts in deciding whether to grant leave to amend). Among

25  other things, Plaintiffs can allege Governor Newsom issued executive orders, announced plans, slashed budgets, and vetoed bills drastically affecting the rights of

26  California's foster children, including Plaintiffs.

27  [8] Notably, the County Defendants only challenge the existence of a private right of

28  action as to one of these seven rights—the right rooted in 42 U.S.C. § 671(a)(22)—in apparent acknowledgment that a private right of action exists as to the other six rights rooted in section (a)(16). ECF No. 45-1 at 14.

1   *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Courts consider whether: (1)

2   Congress intended that the provision benefit plaintiff; (2) the statute is not so "vague

3   and amorphous" that enforcement would strain judicial competence; and (3) the

4   statute unambiguously imposes a binding obligation on the states. *Blessing v.*

5   *Freestone*, 520 U.S. 329, 340-42 (1997).[9]

6        The Ninth Circuit has held that "the case plan provisions of the [CWA],

7   codified at §§ 671(a)(16) and 675(1), are enforceable through § 1983." *Henry A.*,

8   678 F.3d at 1008. The Ninth Circuit also held that the "case review" provision of the

9   CWA, codified at §§ 671(a)(16) and 675(5), is enforceable through an action under

10   Section 1983. *Id.* at 1008-09. While *Henry A.*'s holding regarding "case review"

11   rights concerned the requirements of section 675(5)(D), a district court in the Ninth

12   Circuit held that "the Ninth Circuit's underlying reasoning [in *Henry A.*] applies with

13   equal force to [Section 675(5)(A)]." *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at

14   **31-32. This same reasoning applies to Section 675(5)(E), which sets forth detailed

15   and objectively-measurable standards with which states must comply. 42 U.S.C. §

16   675(5)(E); *see also Jeanine B. v. McCallum*, 2001 U.S. Dist. LEXIS 12091, at **13-

17   17 (E.D. Wis. June 19, 2001) (plaintiffs may seek to enforce Section 675(5)(E)'s

18   core requirement that states initiate proceedings to terminate parental rights through

19   Section 1983 because Section 675(5)(E) provides an "objective yardstick for

20   determining timeliness" that "would not strain judicial competence"). Accordingly,

21

22   [9] State Defendants argue that because Congress created a private right of action for 42 U.S.C. § 671(a)(18), all other provisions within Section 671(a) are foreclosed from Section 1983 enforcement. *See* ECF No. 42 at 26-27. This is contrary to clear

23   Ninth Circuit precedent, which recognizes private rights of action for other provisions within Section 671(a). *See, e.g.*, *Henry A. v. Willden*, 678 F.3d 991, 1008

24   (9th Cir. 2012). State Defendants' argument also misses the mark because the remedy Congress created for Section 671(a)(18) "is broader than the Section 1983

25   remedy in that it permits actions against the State and is not limited to claims against persons acting under color of state law, so it carries no implication that Congress

26   intended to preclude the narrower Section 1983 remedial route for enforcement of any rights that are created by other provisions of Section 671." *Elisa W. v. City of*

27   *N.Y.*, 2016 U.S. Dist. LEXIS 123332, at *17 (S.D.N.Y. Sept. 12, 2016).

28

all of the first six CWA rights asserted by Plaintiffs are enforceable under Section 1983.

The seventh CWA right Plaintiffs assert, which is rooted in 42 U.S.C. § 671(a)(22), is also enforceable under Section 1983.[10] Section 671(a)(22) requires states to provide "quality services" to foster children "that protect the[ir] safety and health." This mandatory provision is clearly intended to benefit foster children, is not so vague and amorphous that enforcement would strain judicial competence, and, therefore, "satisf[ies] the standards . . . for the creation of federal rights enforceable under [Section] 1983." *Kenny A. v. Perdue*, 218 F.R.D. 277, 292 (N.D. Ga. 2003).[11]

## 2. The *FAC* Alleges a Substantive Due Process Claim Against State Defendants.

Plaintiffs' third cause of action against State Defendants sufficiently alleges State Defendants have deprived Plaintiffs of their rights to substantive due process under the United States Constitution's Fourteenth Amendment. *FAC* ¶¶ 244-48. State Defendants argue the *FAC* fails to plead a substantive due process claim because it lacks *any* allegations that State Defendants had "personal knowledge" or were "deliberate[ly] indifferen[t]" to violations of Plaintiffs' substantive due process rights.[12] ECF No. 42 at 23. However, the *FAC*'s allegations clearly show State

---

[10] Plaintiffs refer the Court to, and incorporate by reference, the CWA arguments in Section IV.A.1.a.1 of their *Opposition to County Defendants' MTD*.

[11] State Defendants also argue in one sentence that Plaintiffs "do not allege sufficient facts against the CDSS Defendants." ECF No. 42 at 28. However, as set forth in Section IV.C. *supra*, the *FAC* adequately alleges State Defendants' knowledge of CFS's illegal practices, their ability to intervene to prevent them, and their refusal to take the necessary steps to prevent foster children's injuries. *See also FAC* ¶¶ 3-12, 21, 40-42, 128-36.

[12] State Defendants do not contest, and thus concede, the existence of Plaintiffs' asserted substantive due process rights.

Defendants were aware of these violations and deliberately failed to act to rectify them.[13]

Plaintiffs allege State Defendants knew CFS maintained policies and practices such as high caseloads and inadequate services and that these policies and practices placed Plaintiffs at substantial risk of harm. *See, e.g.*, *FAC* ¶¶ 21, 136, 248. The *FAC* also alleges State Defendants maintain their own policies or practices that put Plaintiffs at substantial risk of harm. *Id*. ¶¶ 132-34. And, the *FAC* alleges State Defendants have not changed either CFS's or their own harmful policies or practices including things like preventing registered sex offenders from living or working in foster homes. *Id*. ¶¶ 3, 10, 12, 21, 132-136, 248. This type of inaction is "deliberate indifference" to Plaintiffs' wellbeing. *Henry A.*, 678 F.3d at 998, 1001. At this stage, these allegations are sufficient to plead a violation of Plaintiffs' substantive due process rights.

### 3. The *FAC* Alleges A Family Association Claim Against State Defendants.

Plaintiffs' fifth cause of action against State Defendants asserts State Defendants have deprived Plaintiffs' of the familial rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution. *FAC* ¶¶ 253-60. State Defendants argue there is no such constitutional right and, even if there were, Plaintiffs have not alleged how State Defendants violated it. ECF No. 42 at 23. State Defendants are wrong on both counts.

First, courts have clearly recognized that "once the state has removed a child from his or her family, it cannot deliberately and without justification deny that child the services necessary to facilitate reunification with his or her family, when safe and appropriate, without violating the child's right to family integrity." *Kenny A.*,

---

[13] Plaintiffs incorporate by reference Section IV.A.1.b of the *Opposition to County Defendants' MTD*.

218 F.R.D. at 297. For further explanation of the basis for their constitutional right to family association, Plaintiffs incorporate by reference Section IV.1.c of their *Opposition to County Defendants' MTD*.

Second, the *FAC* sufficiently alleges State Defendants were aware of CFS's policies and practices that denied Plaintiffs access to their parents but failed to act in line with legal obligations to prevent these illegal policies and practices. *See, e.g.*, *FAC* ¶¶ 179, 202. State Defendants' argument that they cannot be liable because they have no "role in placement decisions" is irrelevant because they are empowered to take steps to bring CFS into compliance with applicable law. *See Pich*, 221 Cal. App. 4th at 494 (CDSS is "require[d] . . . to act if a county is 'substantially failing' to comply with its legal obligations"); *see also FAC* ¶¶ 40, 128-129, 131, 135-36.

### 4.    The *FAC* Alleges ADA and RA Claims Against State Defendants.

Finally, Plaintiffs' sixth and seventh causes of action against State Defendants allege State Defendants have deprived disabled foster children, including several Plaintiffs, of their ADA and RA rights. *FAC* ¶¶ 261-78. State Defendants contend the *FAC* fails to allege any particular action by CDSS Defendants that discriminated against Plaintiffs based on disability. ECF No. 42 at 29. This argument fails because CDSS Defendants were aware of CFS's discriminatory policies and practices, were empowered to prevent them, and failed to do so, creating the necessary causal connection between State Defendants' inaction and disabled foster children's injuries.

The *FAC* alleges numerous discriminatory policies and practices that have disproportionately harmed foster children with disabilities, including members of the ADA Subclass.[14] *See FAC* ¶¶ 117-20, 158, 171, 218. Additionally, it alleges how CDSS Defendants "stood by" and failed to exercise appropriate oversight to correct

---

[14] Plaintiffs incorporate by reference their ADA and RA arguments in Section IV.C of the *Opposition to County Defendants' MTD*.

1  CFS's discriminatory policies and practices. *See id.* ¶¶ 3, 10, 12, 21, 40, 42, 132,
2  136. State Defendants' argument that they "are not responsible for providing
3  plaintiffs with direct services" goes nowhere. ECF No. 42 at 29. State Defendants
4  themselves acknowledge CDSS is empowered to "monitor county programs,
5  conduct audit reviews, and offer technical training" to ensure CFS's compliance with
6  federal and state mandates. ECF No. 42 at 15. In addition, CDSS is empowered to
7  submit and implement corrective action plans, bring actions for injunctive relief,
8  assume direct responsibility for the administration of a foster care system, bring
9  action for writ of mandamus, and take other administrative action to bring a county
10 into compliance with the law. *See* Cal. Welf. & Inst. Code §§ 10601.2, 10605.
11 Instead, CDSS "has not taken actions to stop [CFS's] illegal activities." *FAC* ¶ 12.
12 These allegations are sufficient to state ADA and RA claims against State
13 Defendants.

## V. <u>CONCLUSION</u>

15    For the foregoing reasons, the *Motions* should be denied. If, however, the
16 court grants any part of the *Motions*, Plaintiffs request leave to amend under Federal
17 Rule of Civil Procedure 15.

1    A BETTER CHILDHOOD

2

3    Dated:  December 7, 2023    By    */s/ Polly Towill*
_____
Marcia Robinson Lowry (*admitted pro hac vice*)

4    mlowry@abetterchildhood.org
Jonathan G. Borle (SBN # 314669)

5    jborle@abetterchildhood.org
355 Lexington Avenue, Floor 16

6    New York, NY 10017
Telephone: (646) 795-4456

7    Facsimile: (212) 692-0415

8

9    SHEPPARD MULLIN RICHTER &
HAMPTON LLP

10    Polly Towill (SBN # 120420)
ptowill@sheppardmullin.com

11    Daniel Brown (*admitted pro hac vice*)

12    dlbrown@sheppardmullin.com
Benjamin O. Aigboboh (SBN # 268531)

13    baigboboh@sheppardmullin.com
Tori Kutzner (SBN # 334057)

14    tkutzner@sheppardmullin.com
Victoria B. Ayeni (SBN # 335233)

15    vayeni@sheppardmullin.com
Alexandria Amerine (*admitted pro hac vice*)

16    aamerine@sheppardmullin.com
333 S. Hope St., Forty-Third Floor

17    Los Angeles, CA 90071
Telephone: (213) 620-1780

18    Facsimile: (213) 620-1398

19

20    *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

## __CERTIFICATE OF COMPLIANCE__

The undersigned, counsel of record for Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R., certifies that this brief contains 5,673 words, which:

   _x_  complies with the word limit of L.R. 11-6.1.

   ____  complies with the word limit by court order dated _____.

Dated:  December 7, 2023

                                                                                         _/s/ Polly Towill_
                                                                      POLLY TOWILL