Marcia Robinson Lowry (*admitted pro hac vice*)
mlowry@abetterchildhood.org
Jonathan G. Borle (SBN # 314669)
jborle@abetterchildhood.org
A BETTER CHILDHOOD
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone:  646.795.4456
Facsimile:   212.692.0415

*Attorneys for Plaintiffs* (Additional Counsel Listed on Signature Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Gary G., *et al.*,<br><br>                         Plaintiffs,<br><br>    v.<br><br>Gavin Newsom, *et al.*,<br><br>                         Defendants. | Case No. 5:23-cv-00947-MEMF-BFM<br><br>*Assigned to the Hon. Maame Ewusi-Mensah Frimpong*<br><br>**PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) MOTIONS TO DISMISS (ECF NOS. 45-47)**<br><br>**Hearing**:<br>Date:      February 29, 2024<br>Time:      10:00 a.m.<br>Room:     Courtroom 8B<br><br>Action Filed:    May 25, 2023<br>FAC Filed:       August 14, 2023<br>Trial Date:       None Set |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................... 1

II.   RELEVANT BACKGROUND ................................................................. 2

   A.   Summary Of Relevant Allegations. ................................................. 2

   B.   Plaintiffs And The Action. ............................................................... 3

III.  LEGAL STANDARD ............................................................................. 3

IV.   THE *MOTIONS* SHOULD BE DENIED ............................................... 4

   A.   The *FAC*'s Section 1983 Claims (First, Third, Fifth Causes Of
        Action) Are Adequately Pled. ......................................................... 4

        1.   The *FAC* Alleges Deprivation Of Federal Rights. ................. 5

             a.   The *FAC* Alleges Deprivation of CWA Rights (First
                  Cause Of Action). ......................................................... 5

                  (1)   The *FAC* Alleges Deprivation Of CWA Case
                        Plan Rights. ......................................................... 5

                  (2)   CWA Section 671(a)(22) Is Enforceable
                        Through Section 1983. ......................................... 7

             b.   The *FAC* Alleges Deprivation Of Substantive Due
                  Process Rights (Third Cause of Action)........................... 8

                  (1)   The *FAC* Alleges Cognizable Substantive
                        Due Process Rights. ............................................. 8

                  (2)   Although Not Necessary, The *FAC* Alleges
                        Actual And Imminent Injury.............................. 10

             c.   The *FAC* Alleges A Right To Familial Association
                  (Fifth Cause of Action)................................................. 11

        2.   The *FAC* Alleges The Remaining Section 1983 Elements. ....... 12

             a.   The *FAC* Alleges Policies, Practices, And Customs
                  That Were The Moving Force Behind The
                  Constitutional Violations.............................................. 12

             b.   The *FAC* Alleges Deliberate Indifference...................... 16

   B.   The *FAC* State-Law Claims (Second, Fourth Causes Of Action)
        Are Adequately Alleged................................................................. 17

        1.   The *FAC* Alleges Violations Of California Welfare And
             Institutions Code (Second Cause Of Action). ......................... 17

-i-

2.    The *FAC* Alleges State Substantive Due Process
Violations (Fourth Cause Of Action). ........................................ 17

C.   The *FAC* Alleges Claims Under The ADA, RA, And State
Disability Law ................................................................................. 17

1.    The *FAC* Alleges Qualifying Disabilities .................................. 17

2.    The *FAC* Alleges Denial Of Services .......................................... 18

D.   The Board, CFS, and Zepeda Are Proper Defendants. ......................... 19

1.    The *FAC* States Claims Against The Board And Zepeda. ......... 19

2.    Dismissal Based On Alleged Duplication Is Improper. ............. 19

V.    CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Alvarado v. Cnty. of San Bernardino*
   2023 U.S. Dist. LEXIS 141931 (C.D. Cal. Aug. 14, 2023) ...............................15

*Avelar v. Rodriguez*
   2018 U.S. Dist. LEXIS 127091 (C.D. Cal. June 13, 2018)..............................12

*Awodiya v. Ross Univ. Sch. of Med.*
   2019 U.S. Dist. LEXIS 248515 (S.D. Fla. Jan. 8, 2019)...................................13

*Baird ex rel. Baird v. Rose*
   192 F.3d 462 (4th Cir. 1999) ..........................................................................18

*Birdt v. San Bernardino Sheriff's Dep't*
   2014 U.S. Dist. LEXIS 80482 (C.D. Cal. May 12, 2014)...................................4

*Blessing v. Freestone*
   520 U.S. 329 (1997) .....................................................................................5, 7

*Brian A. by Brooks v. Sundquist*
   149 F. Supp. 2d 941 (M.D. Tenn. 2000) ........................................................12

*Cal. All. of Child & Family Servs. v. Allenby*
   589 F.3d 1017 (9th Cir. 2009) ..........................................................................5

*Cal. St. Foster Parent Ass'n v. Wagner*
   624 F.3d 974 (9th Cir. 2010) ............................................................................5

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ........................................................................................10

*Clark K. v. Guinn*
   2007 WL 1435428 (D. Nev. May 14, 2007) .....................................................7

*Connor B. v. Patrick*
   771 F. Supp. 2d 142 (D. Mass. 2011)...........................................................9, 10

*Darkins v. Snowden*
   2013 U.S. Dist. LEXIS 145021 (C.D. Cal. Aug. 15, 2013) .............................11

*Elder v. Gillespie*
  54 F.4th 1055 (8th Cir. 2022) ............................................................................ 11

*Eminence Capital, L.L.C. v. Aspeon, Inc.*
  316 F.3d 1048 (9th Cir. 2003) ............................................................................ 4

*Fireman's Fund Ins. Co. v. City of Lodi*
  302 F.3d 928 (9th Cir. 2002) .............................................................................. 20

*Fis v. Newrez, LLC*
  2022 U.S. Dist. LEXIS 233104 (S.D. Fla. Dec. 28, 2022) ................................ 10

*Gross v. Samudio*
  630 Fed. Appx. 772 (10th Cir. 2015) .................................................................. 10

*Hamilton v. Southwestern Bell Tel. Co.*
  136 F.3d 1047 (5th Cir. 1998) ............................................................................ 18

*Henry A. v. Willden*
  678 F.3d 991 (9th Cir. 2012) ....................................................................... 5, 8, 16

*Hernandez v. San Bernardino Cnty.*
  2023 U.S. Dist. LEXIS 65234 (C.D. Cal. Apr. 13, 2023) ................................. 13

*Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*
  380 F. 3d 872 (5th Cir. 2004) .............................................................................. 8

*Hoptowit v. Spellman*
  753 F. 2d 779 (9th Cir. 1984) .............................................................................. 10

*Howard v. Barney*
  2019 U.S. Dist. LEXIS 98857 (E.D. Cal. June 11, 2019) ................................. 10

*Estate of Hultman v. Cty. of Ventura*
  2021 U.S. Dist. LEXIS 252038 (C.D. Cal. 2021) ............................................. 20

*Hurth v. Cty. of L.A.*
  2009 U.S. Dist. LEXIS 140814 (C.D. Cal. 2009) ............................................. 20

*Jackson v. Indiana*
  406 U.S. 715 (1972) ............................................................................................ 10

*Jeremiah M.*
  2023 U.S. Dist. LEXIS 173564 ...................................................................... 9, 16

*Jonathan R. v. Justice*
   2023 U.S. Dist. LEXIS 6658 (S.D. W. Va. 2023)......................................8, 9, 16

*Kenny A.*
   218 F.R.D. at 290...................................................................................7, 12

*Lawson v. Reynolds Indus.*
   2005 U.S. Dist. LEXIS 53703 (C.D. Cal. Feb. 4, 2005)...................................13

*Lipscomb v. Simmons*
   962 F. 2d 1374 (9th Cir. 1992).......................................................................8

*Lopez v. Smith*
   203 F.3d 1122 (9th Cir. 2000).........................................................................4

*M.D. v. Abbott*
   152 F. Supp. 3d 684 (S.D. Tex. 2015) (*Abbott I*)...........................................8, 9

*M.D. v. Abbott*
   907 F. 3d 237 (5th Cir. 2018) (*Abbott II*)................................................9, 15, 16

*Marisol A. by Forbes v. Giuliani*
   929 F. Supp. 662 (S.D.N.Y. 1996)...............................................................9, 10

*Moore v. E. Cleveland*
   431 U.S. 494 (1977) ....................................................................................11

*Morris v. Cnty. of San Bernardino*
   2015 U.S. Dist. LEXIS 119428 (C.D. Cal. July 31, 2015) ...............................5

*Estate of Nicholas Burgos v. Cty. of L.A.*
   2022 U.S. Dist. LEXIS 211745 (C.D. Cal. 2022)...........................................20

*Olivia Y. v. Barbour*
   351 F. Supp. 2d 543 (S.D. Miss. 2004)...........................................................9

*Estate of Osuna v. Cnty. of Stanislaus*
   392 F. Supp. 3d 1162 (E.D. Cal. 2019).....................................................13, 14

*Parsons v. Ryan*
   754 F. 3d 657 (9th Cir. 2014)........................................................................10

*Payan v. Los Angeles Cmty. Coll. Dist.*
   11 F.4th 729 (9th Cir. 2021)..........................................................................19

*R.G. v. Koller*
    415 F. Supp. 2d 1129 (D. Haw. 2006) ..................................................... 8

*Roberts v. U.S. Jaycees*
    468 U.S. 609 (1984) ........................................................................... 11

*Roy v. Cty. of L.A.*
    114 F. Supp. 3d 1030 (C.D. Cal. 2015) .............................................. 19

*S. Cal. Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir. 2003) ............................................................... 4

*S.P. v. Cnty. of San Bernardino*
    2020 U.S. Dist. LEXIS 102022 (C.D. Cal. Mar. 24, 2020) ............ 12, 13, 14, 15

*Safouane v. Fleck*
    226 Fed. Appx. 753 (2007) ................................................................. 19

*Shields v. Credit One Bank, N.A.*
    32 F.4th 1218 (9th Cir. 2022) ............................................................. 18

*Stanley v. Illinois*
    405 U.S. 645 (1972) ........................................................................... 11

*Streit v. Cty. of L.A.*
    236 F.3d 552 (9th Cir. 2001) .............................................................. 20

*Tamas v. Dep't of Soc. & Health Servs.*
    630 F.3d 833 (9th Cir. 2010) ........................................................... 8, 16

*Valenzuela v. City of Anaheim*
    6 F.4th 1098 (9th Cir. 2021) ................................................................. 4

*Warner v. Tinder Inc.*
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ................................................ 4

*Williams v. Specialized Loan Servicing, LLC*
    2023 WL 4203383 (C.D. Cal. June 23, 2023) ...................................... 3

*Wilson v. Garcia*
    471 U.S. 261 (1985) ............................................................................. 4

*Wolcott v. Cnty. of Orange*
    2023 U.S. Dist. LEXIS 178504 (C.D. Cal. Oct. 2, 2023) ................... 13

-vi-

*Wyatt B. v. Brown*
  2021 U.S. Dist. LEXIS 184389 (D. Or. Sep. 27, 2021) ................................. 5, 6, 9

<u>Statutes</u>

29 U.S.C. § 701 ................................................................................................ 3

29 U.S.C. § 794 .............................................................................................. 18

42 U.S.C § 671(a)(16) ...................................................................................... 5

42 U.S.C. § 671(a)(22) ..................................................................................... 7

42 U.S.C. § 675 ................................................................................................ 6

42 U.S.C. § 675(1) ........................................................................................... 6

42 U.S.C. § 675(5)(A) ..................................................................................... 6

42 U.S.C. § 675(A)-(C) ................................................................................... 6

42 U.S.C. § 1983 ..........................................3, 4, 5, 7, 8, 9, 10, 12, 16, 20

42 U.S.C. § 12102(4)(A) .......................................................................... 17, 18

42 U.S.C. § 12112(a) ..................................................................................... 17

42 U.S.C. § 12131 ...............................................................................3, 17, 18

42 U.S.C. § 12132 .......................................................................................... 18

Cal. Code Regs Tit. 2, § 11140 ....................................................................... 3

Cal. Code WIC § 16501.1 ........................................................................ 3, 17

Cal. Code WIC § 16503(a) ....................................................................... 3, 17

Cal. Const. Art. I, § 7(a) .................................................................................. 3

Cal. Gov. Code § 11135 ........................................................................... 3, 18

<u>Other Authorities</u>

28 C.F.R. § 35.130(b)(1)(iii) .......................................................................... 18

28 C.F.R. § 45.51(b)(1)(iii) ........................................................................... 18

29 C.F.R. § 1630.2(j)(1)(ii) ..................................................................... 17

Fed. R. Civ. P. 12(b)(1) ........................................................................ 10

Fed. R. Civ. P. 15(a) .............................................................................. 4

Stephen B. Presser, The Historical Background of the American Law of
    Adoption, 11 J. FAM. L. 443, 459 (1972) .......................................... 11

U.S. Constitution Ninth Amendment ........................................................ 11

U.S. Constitution Fourteenth Amendment ........................................... 8, 11

## I. **INTRODUCTION**

For years, San Bernardino County's foster care system has been the subject of judicial and non-judicial investigations stemming from County Defendants' systemic failure to protect the county's foster children by, *inter alia*, depriving them of their statutory and constitutional rights, culminating in the San Bernardino Grand Jury's December 2022 finding that the system is "too broken to fix."[1] Plaintiffs are children in this broken system, who hope it can be fixed. They, therefore, seek a determination that County Defendants are violating their rights and injunctive relief preventing those actual and imminent violations – relief that would go a long way in fixing a system the county's grand jury asserted should be "abolished."

Despite their own admissions about the deficiencies in San Bernardino County's foster care, Defendants now seek to convince the Court with kitchen-sink *Motions* that Plaintiffs have not stated a single claim arising from those admitted deficiencies (among others).[2] They do so by, *inter alia*, minimizing Plaintiffs and the next friends seeking to protect them, ignoring factual allegations and relevant authority, and improperly submitting materials that cannot be considered on a motion to dismiss. The required review of the *First Amended Complaint*'s ("*FAC*") actual allegations, however, demonstrates that Defendants' attempts to avoid continuing violations of children's statutory and constitutional rights must fail. The *Motions* should be denied.

---

[1] "Plaintiffs" are Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R. "Defendants" are Defendants San Bernardino County ("County"), Members of the San Bernardino Board of Supervisors ("Board"), San Bernardino County Child and Family Services ("CFS"), and Jeany Zepeda ("Zepeda").

[2] The "*Motions*" are the *County's Motion to Dismiss for Failure to State a Claim*, *Individual Defendants' and CFS's Joinder to the County's Motion to Dismiss for Failure to State a Claim*, and *Individual Defendants' and CFS's Motion to Dismiss for Failure to State a Claim*. ECF Nos. 45-47.

## II.    RELEVANT BACKGROUND

### A.    Summary Of Relevant Allegations.

CFS oversees and administers San Bernardino County's foster care system. ECF No. 34 ("*FAC*") ¶¶ 2, 45. But, as a result of systemic failings, CFS does not protect the county's foster children. *See, e.g.*, *id*. ¶¶ 1-20.

Caseloads are too high. *See, e.g.*, *FAC* ¶¶ 107-16. Caseworkers carry up to 90 cases at time – nearly ten times professional recommendations. *Id*. Foster placements and subsequent monitoring are inadequate. *See, e.g.*, *id*. ¶¶ 62-66, 79-85. CFS often places children in its offices without basics (*e.g.*, beds) and/or allows children to languish for years in deficient and dangerous homes that are not properly vetted and lack necessary services (including those of registered sex offenders). *Id*. ¶¶ 62-66, 79-85, 102-06. Caseworkers do not make enough home visits, or make perfunctory visits, leaving children unmonitored, unsafe, and abused at levels significantly exceeding state and federal averages. *Id*. ¶¶ 64-65, 95-96.

Proper case planning is, at best, infrequent. *See, e.g.*, *FAC* ¶¶ 67-78. Mandatory case plans are often untimely (if even provided) and fail to comply with applicable law. *Id*. Caseworkers regularly fail to convene required Child and Family Team ("CFT") meetings. *Id*. ¶¶ 74-76. And CFS does not provide for children's health including with adequate medical, dental, and psychological services. *Id*. ¶¶ 86-93.

These systemic failures (among others) are so pervasive that, following years of investigation, the San Bernardino County Grand Jury recently concluded the county's foster system is so "complicated, secretive, and inefficient" that it is "too broken to fix" and should be "abolished." *Id*. ¶¶ 2, 55-61.[3]

---

[3] Defendants assert that Plaintiffs call the county's foster care system "too broken to fix" and allege it "should be abolished" (ECF No. 45-1 at 8:10-12, 47-1 at 6:5-6), but those are **grand jury** findings after years of investigation (*FAC* ¶¶ 2, 55-60).

**B.**     <u>**Plaintiffs And The Action**</u>.

Plaintiffs are children in San Bernardino County's foster system that have been injured by Defendants' policies and practices that fail to protect foster children in violation and deprivation of their statutory and constitutional rights. *FAC* ¶¶ 2, 9-21, 26-39, 55-123, 137-222. Plaintiffs filed the *FAC* on August 14, 2023, asserting the following claims on behalf of themselves and similarly-situated children: (1) 48 U.S.C. § 1983–Adoption Assistance and Child Welfare Act ("CWA"); (2) California Welfare & Institutions Code §§ 16501.1, 16503(a), *et seq.*–State Statutory Rights; (3) 42 U.S.C. § 1983–Federal Right to Substantive Due Process; (4) Art. I, §7(a) California Constitution–State Right to Substantive Due Process; (5) 42 U.S.C. § 1983–Federal Right to Family Association; (6) 42 U.S.C. § 12131 *et seq.*–The Americans with Disabilities Act ("ADA"); (7) 29 U.S.C. § 701 *et seq.*–The Rehabilitation Act ("RA"); and (8) California Government Code § 11135 *et seq.*, California Code of Regulations, Title 2, § 11140 *et seq.*–State Right Against Unlawful State Discrimination. *Id.* ¶¶ 223, 235-281.

### III.     <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Williams v. Specialized Loan Servicing, LLC*, 2023 WL 4203383, at *2 (C.D. Cal. June 23, 2023) (Frimpong, J.). While a complaint does not need detailed factual allegations, it must include more than threadbare recitals of the claim's elements. *Id.* Determining whether a complaint states a claim is a context-specific task requiring a court's judicial experience and common sense. *Id.* In considering a dismissal motion, courts must accept as true all well-pleaded facts and draw all reasonable inferences in plaintiff's favor. *Id.* Although courts can consider materials attached to or referenced in a complaint, or that are the proper subject of judicial notice, they cannot "consider [other] material outside the pleadings (*e.g.*, facts presented in

briefs, affidavits, or discovery materials)[.]" *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1088 (C.D. Cal. 2015).[4]

Leave to amend "shall be freely given when justice so requires" (Fed. R. Civ. P. 15(a)) – a policy to be applied with extreme liberality. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Generally, a court should grant leave even if no request to amend was made, unless it finds the complaint cannot possibly be cured. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    THE *MOTIONS* SHOULD BE DENIED

### A.    The *FAC*'s Section 1983 Claims (First, Third, Fifth Causes Of Action) Are Adequately Pled.

42 U.S.C. § 1983 ("Section 1983") "provides a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Wilson v. Garcia*, 471 U.S. 261, 271-72 (1985) (internal quotations omitted). Because of the "high purposes" (*id.* at 272) the remedial statute serves, Section 1983 and the rights it guarantees must be "liberally and beneficently construed." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (internal quotations omitted); *see also Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021).

The *FAC* asserts three Section 1983 claims: (1) deprivation of CWA rights; (2) deprivation of federal substantive due process rights; and (3) deprivation of the federal right to family associations. *FAC* ¶¶ 235-238, 244-258, 253-260. To state each claim, plaintiffs must allege that: (1) they possess a constitutional right of which they were deprived; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiffs' constitutional rights; and (4) the policy is the

---

[4] Despite this admonition, the *Motions* improperly attempt to introduce new "facts." ECF No. 45-1 at 10:23-11:22. All such "facts" must be disregarded. *See, e.g.*, *Birdt v. San Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 80482, at *17 (C.D. Cal. May 12, 2014). Moreover, the "policies" of which Defendants seek judicial notice do not establish the *Motions* should be granted. Section IV.A.2.a *supra*.

moving force behind the constitutional violation. *Morris v. Cnty. of San Bernardino*, 2015 U.S. Dist. LEXIS 119428, at *37 (C.D. Cal. July 31, 2015). Contrary to Defendants' contentions (ECF No. 45-1 at 12:22-25:17), the *FAC* sufficiently alleges each element.

### 1. The *FAC* Alleges Deprivation Of Federal Rights.

> a. The FAC *Alleges Deprivation of CWA Rights (First Cause Of Action)*.
>
> > (1) *The* FAC *Alleges Deprivation Of CWA Case Plan Rights*.

It is undisputed that Section 1983 applies to violations and denials of statutory rights. ECF No. 45-1 at 13:26-28; *see also Blessing v. Freestone* 520 U.S. 329, 340 (1997). This includes CWA rights.[5] *See, e.g., Henry A. v. Willden*, 678 F.3d 991, 1008 (9th Cir. 2012); *Cal. St. Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 982 (9th Cir. 2010); *Wyatt B. v. Brown*, 2021 U.S. Dist. LEXIS 184389, at *31 (D. Or. Sep. 27, 2021). The *FAC* alleges violations and denials of seven such rights. *FAC* ¶ 237.[6] Defendants challenge only denials of case plan rights – apparently conceding

---

[5] The CWA "creates an opt-in scheme whereby states can receive federal funding to assist in the costs associated with raising children who are [its] dependants [*sic*] or wards[.] To qualify for federal funding, the state agrees to abide by certain requirements." *Cal. All. of Child & Family Servs. v. Allenby*, 589 F.3d 1017, 1018 (9th Cir. 2009).

[6] Specifically, the *FAC* alleges rights to: (1) placement in the least restrictive and most family-like setting, closest to their home community that conforms to nationally recommended professional standards; (2) access to quality services to protect safety and health; (3) a written case plan that includes a plan to provide safe, appropriate, and stable placements; (4) a written case plan that ensures safe and proper care of children in foster care and implementation of that plan; (5) a written case plan that ensures the provision of services to foster children, their parents, and their foster parents to facilitate reunification, or where that is not practicable, their permanent placement and implementation of that plan; (6) a case review system providing a case plan designed to achieve safe and appropriate foster care placements in the least restrictive and most family-like setting, close to the foster child's home community; and (7) have a petition to terminate parental rights filed under certain conditions. *FAC* ¶ 237. These rights derive from 42 U.S.C § 671(a)(16), which requires development of "case plan[s]" (*id.* ¶ 237(a), (c)-(e)) and "case review system[s]" (*id.* ¶ 237(b), (f)-(g)) that comply with requirements set

Plaintiffs sufficiently allege claims based on other CWA rights – and only because no Plaintiff alleges "their case plans are inadequate" (ECF No. 45-1 at 13:14-15). Defendants are wrong.

The *FAC* contains detailed allegations of the "inadequacy" of case plans (and planning). *See*, *e.g.*, *FAC* ¶¶ 67-78. The *FAC* alleges that "[m]any foster parents, family members, and foster children have never seen the foster child's case plan." *Id*. ¶ 75. This includes several Plaintiffs – many of whom have not been shown a case plan despite being in CFS custody for years. *Id*. ¶¶ 144 (Gary G.), 170 (Xander B., Francesca B., Delilah B.), 180 (Teddy H.), 188 (Kevin E., Sam E.). And, even when case plans are provided, they are often untimely (*id*. ¶ 73), incomplete (*id*.), and, as CFS has admitted, "'cookie cutter,' 'not update[d]…[to reflect the child's] progress and new needs,' and 'not tailored to the family and child's needs' (*id*. ¶ 74 (quoting 2017 County Self-Assessment)). It is unsurprising, then, that case plans do not include CWA-required information like a reunification or a permanency plan. *See*, *e.g.*, *id*. ¶¶ 175, 191, 200, 220. Moreover, several Plaintiffs allege caseworkers did not hold the required CFT planning meetings – further demonstrating the inadequacy of case planning. *Id*. ¶¶ 154 (Xander B.), 160 (Francesca B., Delilah B.), 201 (Henry P.), 209 (David O., Greg R., and Arnold O).

Even more, the *FAC*'s allegations create the reasonable inference that case plans – when prepared and provided – are inadequate. Several Plaintiffs have had multiple failed placements, "which supports a reasonable inference...there has been a breakdown in the case plan system." *Wyatt B*., 2021 U.S. Dist. LEXIS 184389, at *32; *see also FAC* ¶¶ 152-175 (six or seven placements for Xander B. and nine to thirteen for Francesca B. and Delilah B), 183 ("several" for Kevin E. and Sam E.),

---

forth in 42 U.S.C. §§ 675(1) and (5)(A) respectively. *See Wyatt B*., 2021 U.S. Dist. LEXIS 184389, at *31. Among other things, 42 U.S.C. § 675 requires that every case plan provides "safe and proper care[,]" is calculated to "address the needs of the [foster] child…, including a discussion of the appropriateness of the services[,]" assures the child "receives safe and proper care[,]" and includes the child's "health and education records[.]" 42 U.S.C. § 675(A)-(C).

192-205 (four for Henry P.), 206-07 ("nine placements in two years" for David O. and at least four for Greg R. and Arnold O.). And the extremely heavy caseloads pointed to by San Bernardino's grand jury and CFS itself, and alleged in the *FAC* (*see*, *e.g.*, *FAC* ¶¶ 56-57, 74, 107-116), further support an inference that the case plan system has broken down, as the overworked caseworkers barely have time to visit children, let alone prepare adequate case plans.

           (2)    *CWA Section 671(a)(22) Is Enforceable Through Section 1983*.

Defendants contend in a single sentence that "there is no private right of action under 42 U.S.C. § 671(a)(22)." ECF No. 45-1 at 14:6-8. While it is true that the court in *Clark K. v. Guinn*, 2007 WL 1435428, at *10 (D. Nev. May 14, 2007) found Section 671(a)(22) "too vague and amorphous to support a private cause of action" under Section 1983, another court found it satisfies all requirements for such an action (*Kenny A.*, 218 F.R.D. at 290-92). The latter court's analysis is correct.

To "seek redress through § 1983, …a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing*, 520 U.S. at 340. (emphasis in original). A three-part test applies to determine whether a statute creates a right enforceable under Section 1983. *Kenny A.*, 218 F.R.D. at 290. CWA Section 671(a)(22) satisfies the test. *Id*. CWA section 671(a)(22) provides that foster children are entitled to "quality services that protect the[ir] safety and health[.]" Foster children are "the clearly intended beneficiaries" of this provision, which "clearly imposes a binding obligation on the States" – meeting two of the three requirements. *Kenny A.*, 218 F.R.D. at 292; *see also Clark K.*, 2007 WL 1435428, at *10. And Section 671(a)(22) is not so "vague and amorphous" that its enforcement would "strain judicial competence." Indeed, Defendants do not explain why a court could not competently enforce a provision requiring quality services that protect children's health and safety.

       b.     *The FAC Alleges Deprivation Of Substantive Due Process Rights (Third Cause of Action).*

Defendants contend the Section 1983 claim for deprivation of substantive due process rights fails because: (1) some of the alleged rights "do not exist at all"; and (2) Plaintiffs do not allege any right "is currently being (or imminently will be) violated." ECF No. 45-1 at 14:15-18. Defendants' contentions lack merit.

       (1)     *The FAC Alleges Cognizable Substantive Due Process Rights.*

The Fourteenth Amendment's Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. When a state assumes custody of a child – depriving them of liberty – it creates a "special relationship" triggering these due process protections. *Henry A.*, 678 F. 3d at 1000; *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846-47 (9th Cir. 2010). Accordingly, a foster child has a "protected liberty interest" in "reasonable safety and minimally adequate care and treatment appropriate to the [child's] age and circumstances" and the state has a "duty to protect" the child from deprivations of those interests. *Lipscomb v. Simmons*, 962 F. 2d 1374, 1379 (9th Cir. 1992); *see also Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F. 3d 872, 880 (5th Cir. 2004); *Jonathan R. v. Justice*, 2023 U.S. Dist. LEXIS 6658, at **10-11 (S.D. W. Va. 2023); *M.D. v. Abbott*, 152 F. Supp. 3d 684, 696 (S.D. Tex. 2015) (*Abbott I*).

A foster child's "federal constitutional right to state protection…encompasses [her] liberty interest in social worker supervision and protection from harm inflicted by a foster parent" (*Henry A.*, 678 F. 3d at 1000 (internal quotations omitted)), "protection from psychological [and] physical abuse" (*R.G. v. Koller*, 415 F. Supp. 2d 1129, 1156 (D. Haw. 2006)), and "personal security and reasonably safe living conditions" (*Abbott I*, 152 F. Supp. 3d at 696 (internal quotations omitted)). In short, the Fourteenth Amendment requires that the state "provide food, shelter, clothing,

medical care, [and] supervision," and "shield [foster children] from…harm." *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at **25-26. Plaintiffs specifically allege deprivations of seven such rights. *FAC* ¶ 246(a)-(g). Each falls within the scope of the Fourteenth Amendment's guarantee.

It is apparently undisputed that, while under state supervision, foster children have "the right to freedom from the foreseeable risk of maltreatment[.]" ECF No. 34 ¶ 246(a); *see also* ECF No. 45-1 at 14:15-15:8.[7] Regardless, any contention that the right does not exist would be meritless. *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at **45-46; *Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at **20-21; *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at *26. Courts have also confirmed the existence of the other rights:

1.  "the right to protection from unnecessary intrusions into the child's emotional wellbeing" (*FAC* ¶ 246(b)). *See M.D. v. Abbott*, 907 F. 3d 237, 251 (5th Cir. 2018) (*Abbott II*); *Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at **21-22; *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at **45-46; *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at **25-26; *Abbott I*, 152 F. Supp. 3d at 696; *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 675 (S.D.N.Y. 1996).

2.  "the right to services necessary to prevent unreasonable risk of harm in the least restrictive environment" (*FAC* ¶ 246(c)). *See Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at **22-23; *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 161 (D. Mass. 2011).

3.  "the right to conditions and duration of foster care reasonably related to the purpose of government custody" (*FAC* ¶ 246(d)). *See Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at *23; *Wyatt B.*, 2021 U.S. Dist. LEXIS 184389, at **25-26; *Marisol A.*, 929 F. Supp. at 676.

4.  "the right to treatment and care consistent with the purpose and assumptions of government custody" (*FAC* ¶ 246(e)). *Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at **45-46; *Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at **24-25; *Connor B.*, 771 F. Supp. 2d at 161; *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 556 (S.D. Miss. 2004).

5.  "the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody" (*FAC* ¶ 246(f)). *See Jonathan R.*, 2023 U.S. Dist. LEXIS

---

[7] Defendants' contentions that "mere risk of injury is not something a federal court can remedy" and is "not enough to plead municipal liability under section 1983" do not appear to challenge the existence of the right. ECF No. 45-1 at 14:15-15:8.

6658, at *23; *Connor B.*, 771 F. Supp. 2d at 161; *Marisol A.*, 929 F. Supp. at 676.

6.    "the right to receive or be reunited with an appropriate permanent home and family within a reasonable period" (*FAC* ¶ 246(g)). *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed").

(2)    *Although Not Necessary, The* FAC *Alleges Actual And Imminent Injury.*

Defendants contend courts "lack jurisdiction" to adjudicate foster children's Section 1983 claims unless they allege "actual or imminent" injury. ECF No. 45-1 at 14:24-28 (internal quotations omitted). As Defendants' authority confirms, this is an Article III standing requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). "The proper procedural vehicle to challenge Article III standing is a motion under Fed. R. Civ. P. 12(b)(1)." *Fis v. Newrez, LLC*, 2022 U.S. Dist. LEXIS 233104, at *2 (S.D. Fla. Dec. 28, 2022). Defendants filed one and should have made Article III arguments there. ECF No. 44-1. This argument should be disregarded.

Even if considered, Defendants' barebones argument fails. As Defendants' confirm, neither actual nor imminent injury is an element of a Section 1983 claim. ECF No. 45-1 at 12:28-13:5. To extent it is necessary to allege harm at all, plaintiffs need only allege a ***substantial risk of harm*** to establish deliberate indifference. Section IV.A.2.b *supra*.[8] Even if actual or imminent injury were necessary elements (they are not), the *FAC* alleges them. The deprivation of a constitutional right is, itself, an injury.[9] Even if it were not, the *FAC* alleges that, as a result of Defendants'

---

[8] *See also Parsons v. Ryan*, 754 F. 3d 657, 676 (9th Cir. 2014) (claim based on risk of future harm due to unsafe conditions was "firmly established in our constitutional law"); *Hoptowit v. Spellman*, 753 F. 2d 779, 784 (9th Cir. 1984) (plaintiffs "need not wait until actual casualties occur in order to obtain relief from [unsafe] conditions").

[9] *See Gross v. Samudio*, 630 Fed. Appx. 772, 776 (10th Cir. 2015) ("the injury in a § 1983 case is the violation of a constitutional right"); *Howard v. Barney*, 2019 U.S. Dist. LEXIS 98857, at *10 (E.D. Cal. June 11, 2019) ("deprivation of a

-10-

systemic policies and practices, foster children (including Plaintiffs) were (and are), among other things, placed in unsanitary and unsafe environments in which they were (and are) subjected to theft and physical and sexual abuse leading to serious and possibly permanent physical and psychological injuries (*see, e.g., FAC* ¶¶ 59, 64-65, 85, 94-97, 161-63, 174, 210) and deprived of medical care including basic assessments, and necessary and recommended treatments and medication for serious conditions (*see, e.g., id.* ¶¶ 82-83, 87-91, 118-20, 145-46, 156-58, 171-178, 181, 215-219). These foster children (including Plaintiffs) unquestionably face imminent (and, often, recurrent) harm because the same policies and practices that led to their actual injuries remain in place. *See Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022) (plaintiffs faced a "real, immediate thread of future injury" because policy that led to actual injuries remained "unchanged").

      c.    *The* FAC *Alleges A Right To Familial Association (Fifth Cause of Action)*.

There are "certain intimate human relationships [that] must be secured against undue intrusion by the State" and protected as "a fundamental element of personal liberty." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). This includes familial relationships, the integrity of which have "found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (internal citations omitted).[10] When a state removes a child from

---

constitutional right is itself a cognizable injury"); *Darkins v. Snowden*, 2013 U.S. Dist. LEXIS 145021, at *15 (C.D. Cal. Aug. 15, 2013) ("deprivation by defendant of one or more rights secured by the United States Constitution or federal statute" is "an injury cognizable under Section 1983").

[10] History and tradition provide substantial support for substantive due process rights to familial association. *See Moore v. E. Cleveland*, 431 U.S. 494, 504 (1977) ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition"); Stephen B. Presser, The Historical Background of the American Law of Adoption, 11 J. FAM. L. 443, 459 (1972)

her family, "it cannot deliberately and without justification deny that child the services necessary to facilitate reunification with…her family, when safe and appropriate, without violating the child's right to family integrity." *Kenny A.*, 218 F.R.D. at 297. Thus, allegations of systematic failure "to facilitate [foster children's] prompt reunification with their families whenever safe and appropriate" state a viable familial association claim. *Id.*; *see also Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941, 956 (M.D. Tenn. 2000) (denying motion to dismiss claim "that [d]efendants' systemic actions and inactions have violated [foster children's] rights…not to be deprived of family relationships"). This is exactly what the *FAC* alleges. *FAC* ¶¶ 253-260.

And the *FAC*'s allegations are sufficient to state a claim regardless of whether the right to familial association is limited to the parent-child relationship. ECF No. 45-1 at 16:14-17:4. In addition to non-parent-child relationships (*see*, *e.g.*, *FAC* ¶¶ 153, 159, 173-74, 195, 202, 207, 214), and contrary to Defendants' contentions, the *FAC* alleges Defendants have "denied [Plaintiffs] access to their parents" (ECF No. 45-1 at 17:5-9). *See FAC* ¶¶ 179 (Teddy H. "lost contact with his stepmother, who had been his primary caregiver for most of his life"), 202 (no visits between Henry P. and the father he has not seen since November 2021); *see also Avelar v. Rodriguez*, 2018 U.S. Dist. LEXIS 127091, at *16 (C.D. Cal. June 13, 2018).

**2.    The *FAC* Alleges The Remaining Section 1983 Elements.**

a.    *The* FAC *Alleges Policies, Practices, And Customs That Were The Moving Force Behind The Constitutional Violations.*

Section 1983 "provides a cause of action against government entities if a plaintiff can establish…the entity's unconstitutional policies and customs led to…plaintiff's injury." *S.P. v. Cnty. of San Bernardino*, 2020 U.S. Dist. LEXIS 102022, at *31 (C.D. Cal. Mar. 24, 2020). As Defendants concede, a written policy

_____

(kinship placement was widely practiced in America by the middle of the nineteenth century).

is not necessary. ECF No. 45-1 at 17:13-18.[11] To allege a custom, a plaintiff "must allege facts of 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *S.P.*, 2020 U.S. Dist. LEXIS 102022, at *31 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

While "some district courts [find] plaintiffs must…identify the particular policy or custom that caused the constitutional violation[,]" others "have adopted a more lenient pleading standard, holding that while a complaint must include a sufficient quantum of factual material to plausibly suggest the existence of a policy or custom, the policy or custom itself need not be specifically alleged, or may be alleged only in a general fashion." *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174 (E.D. Cal. 2019); *see also* ECF No. 45-1 at 17:19-22. The Court should follow the latter approach, as "the details of the alleged policy or custom…is a topic properly left to development through discovery" because "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery[.]" *Estate of Osuna*, 392 F. Supp. 3d at 1174; *see also Wolcott v. Cnty. of Orange*, 2023 U.S. Dist. LEXIS 178504, at *29 (C.D. Cal. Oct. 2, 2023); *Hernandez v. San Bernardino Cnty.*, 2023 U.S. Dist. LEXIS

---

[11] Defendants contend their "formal policies comply with the law[,]" relying on purported policies of which they seek judicial notice. ECF No. 45-1 at 18:27-28. The policies – which are attached to a counsel declaration – are not properly authenticated. ECF No. 45-3; *see also Lawson v. Reynolds Indus.*, 2005 U.S. Dist. LEXIS 53703, at **7-9 (C.D. Cal. Feb. 4, 2005). Moreover, even if it is assumed the Court can take judicial notice of policies' existence, it cannot take judicial notice of the truth of their contents. *See, e.g.*, *Awodiya v. Ross Univ. Sch. of Med.*, 2019 U.S. Dist. LEXIS 248515, at *3 (S.D. Fla. Jan. 8, 2019). Regardless, such judicial notice would **support** the *FAC*'s claims. For example, although CFS apparently has a written policy requiring that CFT meetings occur within 60 days, CFS repeatedly violates it by failing to hold timely meetings (if they are held at all). *Compare* ECF No. 45-1 at 9:20-10:1 *with FAC* ¶¶ 76, 105, 144, 170, 180. And the policies' existence is immaterial to whether the *FAC* states claims because the *FAC* does not allege that written policies are deficient, it alleges that Defendants' actual practices (which often violate their written policies) violate foster children's rights.

65234, at *23 (C.D. Cal. Apr. 13, 2023). Regardless, the *FAC* is adequate under either standard.

The *FAC* alleges Defendants systemically fail to: (1) adequately vet foster homes or monitor foster children; (2) provide adequate case planning; (3) provide short-term emergency placements; (4) provide necessary health assessments or services; (5) protect foster children from maltreatment; (6) place foster children into permanent placements; (7) prevent caseworkers from carrying dangerously high caseloads; and, (8) provide services for children with disabilities. *See, e.g.*, *FAC* ¶¶ 55-123. Not only does the *FAC* allege these systemic failures injure Plaintiffs (*see, e.g.*, *id.* ¶¶ 138-220), it alleges facts establishing these failures – which deprive foster children of their statutory and constitutional rights – have become a traditional method of carrying out policy. *See, e.g.*, *Estate of Osuna*, 392 F. Supp. 3d at 1172 ("a public entity may be held liable for a longstanding practice or custom" including when "the public entity fail[s] to implement procedural safeguards to prevent constitutional violations") (internal quotations omitted).

Among other things, the *FAC* alleges that, over the course of a decade's-long investigation, San Bernardino's grand jury found that: (1) CFS lacks adequate vetting systems; (2) CFS's caseworkers do not regularly visit foster children and the irregular visits are insufficient and inadequate; (3) CFS leaves children to languish in its offices for days or weeks at a time; (4) CFS does not provide medical and behavioral assessments for foster children, timely share critical medical information, or provide adequate medical and mental health services; (5) CFS fails to protect foster children from abuse leading to an "eye-opening" and ever-increasing number of incidents of substantiated abuse; and (6) CFS workers carry extremely heavy caseloads. *See, e.g.*, *FAC* ¶¶ 56-59, 63, 65, 81, 88-92, 95-97, 107-14; *see also S.P.*, 2020 U.S. Dist. LEXIS 102022, at **35-36 (grand jury findings sufficient to allege custom and practice). CFS, itself, has acknowledged these long-standing practices, including admitting in 2017 that case plans and planning are inadequate,

acknowledging children with special needs spend nights in CFS offices, and conceding permanency is not being addressed and has gotten worse for years. *See*, *e.g.*, *FAC* ¶¶ 74, 82, 101-05. These allegations establish CFS's failures have become its standard operating procedure. *S.P.*, 2020 U.S. Dist. LEXIS 102022, at *31.

The *FAC* also sufficiently alleges Defendants' failures have caused injuries to the county's foster children including Plaintiffs. Causation requires "plead[ing] that the [municipality's] action or inaction was the 'moving force' behind the constitutional violation." *Alvarado v. Cnty. of San Bernardino*, 2023 U.S. Dist. LEXIS 141931, at *12 (C.D. Cal. Aug. 14, 2023). "'Moving force'…includes 'both causation-in-fact and proximate causation.'" *Id.* (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013)).[12]

The *FAC* contains allegations connecting the customs to the harm. This includes allegations that:  (1) extremely heavy caseloads lead to, *inter alia*, case plans that do not comply with statutory requirements (when they are even provided at all) and maltreatment including abuse (*see*, *e.g.*, *FAC* ¶¶ 57-59, 73-78, 94-98, 107-16); (2) inadequate vetting and monitoring leads to, *inter alia*, placement in dangerous and unsafe environments in which children are subject to physical and emotional harm at rates significantly exceeding statewide and national averages (*see*, *e.g.*, *id.* ¶¶ 63-66, 107-23); (3) failure to provide emergency placements leads to children, including those with special needs, not receiving basic (*e.g.*, beds) and necessary (*e.g.*, medical) services (*see*, *e.g.*, *id.* ¶¶ 79-85, 117-23), and (4) failure to provide necessary health assessments and services leads to, *inter alia*, children not receiving necessary and/or recommended medical, dental, or psychological services, failed placements, and permanent harm (*see*, *e.g.*, *id.* ¶¶ 86-93).

---

[12] Defendants cite *Abbott II* for the proposition that alleging causation is a "'high threshold." ECF No. 45-1 at 24:19-20 (quoting *Abbott II*, 907 F.3d at 255). But, in *Abbott II*, the Fifth Circuit addressed the sufficiency of evidence at trial, not whether causation had been adequately pled. *Abbott II*, 907 F.3d at 243-47.

b.    *The* FAC *Alleges Deliberate Indifference.*

A Section 1983 claim requires defendant's "deliberate indifference" to an unreasonable risk of harm to plaintiff. *Henry A.*, 678 F.3d at 1000-01. This "requires an objective risk of harm and a subjective awareness of that harm." *Id.* at 1001. The subjective component requires "that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F. 3d at 845. This subjective component, however, may be inferred "from the fact that the risk of harm is obvious." *Tamas,* 630 F. 3d at 845; *see also Abbott II*, 907 F. 3d at 264-65, 267-68 (officials need not be warned of "specific danger"). At the pleading stage, courts have repeatedly found this element satisfied where plaintiffs allege the existence of practices from which "the risk of [future] harm is obvious." *Abbott II*, 907 F.3d at 253.

Here, the *FAC* alleges deliberate indifference. For example, the *FAC* alleges CFS knows foster children (including Plaintiffs) face abuse in particular placements but either places them there anyway or does not remove them – leading to abuse in the county at rates significantly higher than those occurring state- and nationwide. *See*, *e.g.*, *FAC* ¶¶ 56-59, 63-65, 94-97. This, alone, sufficiently alleges deliberate indifference. *Jonathan R.*, 2023 U.S. Dist. LEXIS 6658, at **20-21; *see also Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at **46-47. The *FAC* does not stop there. It alleges CFS knows foster children (including Plaintiffs) are not receiving necessary and recommended medical or behavioral services. *See*, *e.g.*, *FAC* ¶¶ 87-92; *see also Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *47. And it alleges CFS routinely fails to provide necessary health assessments or to notify foster parents of foster children's (including Plaintiff's) known medical and behavioral needs. *See*, *e.g.*, *FAC* ¶¶ 89, 118, 164; *see also Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *47. In short, deliberate indifference is sufficiently alleged.

**B.**     **The *FAC* State-Law Claims (Second, Fourth Causes Of Action) Are Adequately Alleged.**

    **1.**     **The *FAC* Alleges Violations Of California Welfare And Institutions Code (Second Cause Of Action).**

The California Welfare and Institutions Code mandates foster children be provided with case plans that meet specific requirements and have their cases subjected to timely and proper administrative review. *FAC* ¶¶ 50, 242.  Contrary to Defendants' contentions (ECF No. 45-1 at 26:4-21), the *FAC* alleges that Defendants have not satisfied these requirements including by: (1) failing to provide timely case plans; (2) failing to provide complete case plans that address all requirements; and (3) failing to provide timely administrative reviews that address all requirements. *See*, *e.g.*, *FAC* ¶¶ 67-78; Section IV.A.1.a.1 *infra*.

    **2.**     **The *FAC* Alleges State Substantive Due Process Violations (Fourth Cause Of Action).**

As Defendants admit, state and federal due process claims are coextensive. ECF No. 45-1 at 25:18-26:3. Thus, because the *FAC* states claims for violations of federal substantive due process (Section IV.A.1.b. *supra*), it also states claims for the same violations under state law.

**C.**     **The *FAC* Alleges Claims Under The ADA, RA, And State Disability Law.**

Defendants argue Plaintiffs fail to state claims under the ADA, RA, and California disability law because Plaintiffs do not allege qualifying disabilities or denial of services. ECF No. 45-1 at 26:22-28:11. Both arguments fail.

    **1.**     **The *FAC* Alleges Qualifying Disabilities.**

The ADA forbids discrimination "on the basis of disability." 42 U.S.C. § 12112(a). A disability is "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1); *see also* 29 C.F.R. § 1630.2(j)(1)(ii). ADA "major life activities" – a term that must be "construed in favor of broad coverage" (42 U.S.C. § 12102(4)(A)) – include "caring for oneself,

-17-

performing manual tasks, [] eating, [] walking, standing [], speaking, [] learning, reading, concentrating, thinking, [and] communicating" (*id*. § 12102(2)(A)). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis," particularly on a motion to dismiss. *Shields v. Credit One Bank, N.A.,* 32 F.4th 1218, 1223-25 (9th Cir. 2022).

The *FAC* alleges foster children "experience physical, cognitive, and psychological disabilities that qualify them as individuals with disabilities under the ADA." *FAC* ¶ 264. This includes several Plaintiffs, who have ADA-recognized disabilities. *Id.* ¶¶ 157 (Xander B.: PTSD, ADHD, and Major Depressive Disorder), 166 (Francesca B.: PTSD). 167 (Delilah B.: dyslexia, Oppositional Defiance Disorder, ADHD, PTSD.[13] And, as to other Plaintiffs, the *FAC* alleges facts establishing substantial limitation of major life activities. *Id*. ¶¶ 141 ("Gary G…experiences delayed language and motor skills development"), 218 ("Arnold O. is non-verbal, has delayed motor skills, and requires specialized care").

### 2. The *FAC* Alleges Denial Of Services.

The ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA similarly prohibits disability discrimination by recipients of federal funds. 29 U.S.C. § 794. The ADA and RA are interpreted coextensively and bar public entities from providing people with disabilities "a service that is not as effective in affording [them] equal opportunity…to gain the same benefit" as others. 28 C.F.R. §§ 35.130(b)(1)(iii), 45.51(b)(1)(iii). California Government Code § 11135 provides similar coverage.

---

[13] *See*, *e.g.*, *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 468-69 n.3 (4th Cir. 1999) (depression) (citing *Mustafa v. Clark Cty. Sch. Dist.,* 157 F.3d 1169, 1174-75 (9th Cir. 1998) (depression, PTSD, panic attacks); *Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998) (PTSD).

Here, the *FAC* alleges foster children with disabilities have been "refused any services available to non-disabled children." ECF No. 45-1 at 27:13-14. It alleges foster children (including Plaintiffs) do not receive the benefits of CFS services and are disproportionally harmed. *See, e.g.*, *FAC* ¶¶ 117-120, 158, 171, 218. By failing to safely plan for foster children with disabilities, or to make reasonable case planning practice modifications, CFS unnecessarily prevents these children from experiencing foster care in the manner required by law. *Id*. ¶¶ 123, 277, 280; *see also Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021).

**D.    The Board, CFS, and Zepeda Are Proper Defendants.**

**1.    The FAC States Claims Against The Board And Zepeda.**

Supervisors are "liable for constitutional violations of [their] subordinates [where they] participated in or directed the violations, **or knew of the violations and failed to act to prevent them.**" *Safouane v. Fleck*, 226 Fed. Appx. 753, 760 (2007) (internal quotations omitted) (emphasis added). Here, Zepeda oversees CFS and must ensure it follows the law. FAC ¶ 46. It is unlikely any practice or policy (whether official or not) happens without her knowledge or consent. And Zepeda knows about CFS's systemic failures and has failed to act. See, e.g., id. ¶¶ 248, 252, 258. Similarly, the Board is the "governing body of San Bernardino County" and is responsible for overseeing the County's policies, practices, and operations and supervising the CFS director (id. ¶ 44). It knows CFS is failing and has not intervened, despite having the ability to do so. Id. ¶¶ 248, 252, 258.

**2.    Dismissal Based On Alleged Duplication Is Improper.**

Defendants argue the claims against CFS, the Board, and Zepeda should be dismissed because they are "redundant of the causes of action asserted against the County." ECF No. 47-1 at 11:10-12:28. But as Defendants acknowledge, dismissal is not required. *See id*.; *see also Roy v. Cty. of L.A.*, 114 F. Supp. 3d 1030, 1047 (C.D. Cal. 2015). Case law supports CFS continued presence as a defendant because "the bulk of [] cases [dismissed for redundancy] rely on the misplaced conclusion

that the sub-municipal entity is not a suable person under § 1983." *Hurth v. Cty. of L.A.*, 2009 U.S. Dist. LEXIS 140814, at **9-10 (C.D. Cal. 2009).[14] "Others seem to be decided solely for prudential reasons." *Id*. There "simply is no rule of law requiring a court to dismiss a municipal entity as a duplicative, redundant, or unnecessary defendant in cases where the municipality itself is named." *Id*. at *11. Thus, "if both a county and a county [subdivision] are amenable to suit, they may be named in a single action." *Id*. The Court should also keep the Board and Zepeda in this lawsuit, just as the Ninth Circuit did in *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 (9th Cir. 2002), where it reversed a district court's decision to dismiss municipal officers sued in their official capacities.

## V.    **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny the *Motions*. However, should the Court grant any part of the *Motions*, Plaintiffs respectfully request they be given leave to amend the *FAC*.

---

[14] *See also Streit v. Cty. of L.A.*, 236 F.3d 552, 555-56 (9th Cir. 2001) (Los Angeles Sherriff's Department and county both subject to Section 1983 liability); *Estate of Nicholas Burgos v. Cty. of L.A.*, 2022 U.S. Dist. LEXIS 211745, at *9 (C.D. Cal. 2022) (declining to dismiss claims against LA County Department of Health Services where the County was a defendant to the same lawsuit); *Estate of Hultman v. Cty. of Ventura*, 2021 U.S. Dist. LEXIS 252038, at *8 (C.D. Cal. 2021).

1                           A BETTER CHILDHOOD

2

3   Dated:  December 7, 2023   By    */s/ Polly Towill*

Marcia Robinson Lowry (*admitted pro hac vice*)
mlowry@abetterchildhood.org
Jonathan G. Borle (SBN # 314669)
jborle@abetterchildhood.org
355 Lexington Avenue, Floor 16
New York, NY 10017
Telephone:  (646) 795-4456
Facsimile:  (212) 692-0415

SHEPPARD MULLIN RICHTER
& HAMPTON LLP
Polly Towill (SBN # 120420)
ptowill@sheppardmullin.com
Daniel Brown (*admitted pro hac vice*)
dlbrown@sheppardmullin.com
Benjamin O. Aigboboh (SBN # 268531)
baigboboh@sheppardmullin.com
Tori Kutzner (SBN # 334057)
tkutzner@sheppardmullin.com
Victoria B. Ayeni (SBN # 335233)
vayeni@sheppardmullin.com
Alexandria Amerine (*admitted pro hac vice*)
aamerine@sheppardmullin.com
333 S. Hope St., Forty-Third Floor
Los Angeles, CA 90071
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398

*Attorneys for Plaintiffs*

-21-

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Gary G., Xander B., Francesca B., Delilah B, Teddy H., Kevin E., Sam E., Henry P., David O., Arnold O., and Greg R., certifies that this brief contains 6,879 words, which:

    <u>x</u>  complies with the word limit of L.R. 11-6.1.

    ____  complies with the word limit by court order dated _____.

Dated:  December 7, 2023

                           */s/ Polly Towill*
                           POLLY TOWILL