**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY G., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GAVIN NEWSOM, et al.,<br><br>                    Defendants. | Case No.: 5:23-cv-00947-MEMF-BFM<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NOS. 42–47]** |

For the reasons discussed below, Defendants California Department of Social Services and Kimberley Johnson's Motion to Dismiss (ECF No. 42) is GRANTED IN PART; Defendant Gavin Newsom's Motion to Dismiss (ECF No. 43) is GRANTED; Defendants San Bernardino County, Members of the San Bernardino Board of Supervisors, the San Bernardino County Children and Family Services, and Jeany Zepeda's Motion to Dismiss (ECF Nos. 44) is DENIED; Defendant San Bernardino County's Motion to Dismiss (ECF No. 45) is DENIED; and Defendants Members of the San Bernardino Board of Supervisors, the San Bernardino County Children and Family Services, and Jeany Zepeda's Motion to Dismiss (ECF No. 47) is GRANTED.

# BACKGROUND

I.    **Factual Allegations**[1]

A.    **The Parties**

1.    The Plaintiffs

Plaintiffs Gary G., Xander B., Francesca B., Delilah B., Teddy H., Lori Newels, Kevin E. and Sam E., Henry P., David O. and Arnold O., and Greg R. ("Plaintiffs") are foster children ranging from the ages of 15 months to 15 years and under the custody of Defendant San Bernardino Child and Family Services ("CFS"). *See generally* FAC. All are being represented by "next friends" who are familiar with their history and dedicated to their best interests. *Id.*

2.    The Defendants

Defendant California Department of Social Services ("CDSS") is a state agency that has general oversight of county-run child welfare agencies. FAC ¶ 41. Defendant Kimberley Johnson is the Director of CDSS (collectively with CDSS, the "CDSS Defendants"). Defendant Gavin Newsom is the Governor of the State of California. *Id.* ¶ 40.[2]

Defendant San Bernardino County (the "County") is a local government entity that oversees and monitors CFS. *Id.* ¶ 43. Defendant Members of the San Bernardino County Board of Supervisors (the "Board of Supervisors") are responsible for overseeing the County's polices, practices, and operations, and appointing and supervising the CFS director. *Id.* ¶ 44. CFS is a County agency responsible for the safety and welfare of foster children in the County. *Id.* ¶ 45. Defendant Jeany Zepeda is the Director of CFS. *Id.* ¶ 46.[3]

B.    **The Conduct**

The San Bernardino Grand Jury, an "independent civil watchdog agency," has investigated CFS and has concluded that it is so "complicated, secretive, and inefficient" that it is "too broken to

---

[1] The following factual background is derived from the allegations in Plaintiffs' First Amended Complaint, ECF No. 34 ("FAC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

[2] The Court will refer to CDSS, Johnson, and Newsom collectively as the "State Defendants."

[3] The Court will refer to the County, the Board of Supervisors, CFS, and Zepeda as the "County Defendants."

1    fix" and should be "abolished." *Id.* ¶ 60. Other investigations have also revealed abuse of foster

2    children under CFS's supervision. *Id.* ¶ 61.

3        CFS fails to adequately vet foster homes or monitor them once foster children are placed,

4    leaving the foster children at substantial risk of experiencing harm and maltreatment in care. *Id.* ¶ 66.

5    Foster children in the County experience high rates of maltreatment in care. *Id.* ¶ 94. This high rate

6    of maltreatment is a direct result of CFS's deficient policies and practices, particularly CFS's

7    inadequate vetting and monitoring of foster homes and foster parents. *Id.* ¶ 98.

8        CFS is required by law to provide foster children with a detailed, individualized case plan

9    within certain time periods, and have meetings to collaborate with children and relevant adults in the

10   case planning. *Id.* ¶¶ 67–72. CFS's caseworkers do not complete plans on time or with all required

11   information, nor do CFS meetings occur on time with all necessary stakeholders. *Id.* ¶ 73. These

12   deficiencies in case planning also places foster children at risk of harm. *Id.* ¶ 78.

13       CFS is also required by law to place each foster child in the most appropriate and least

14   restrictive placement that best suits the child's needs. *Id.* ¶ 79. However, CFS lacks adequate short-

15   term emergency placements for children, so when children first enter care, CFS often has no other

16   placement for them than a local CFS office. *Id.* ¶ 81. The CFS offices lack essential living elements

17   and basic safety features such that children are at substantial risk of experiencing maltreatment in

18   care. *Id.* ¶¶ 83–85.

19       To adequately serve foster children, CFS is required to provide adequate and timely health

20   assessments. *Id.* ¶ 87. However, there is a lack of timely and adequate assessments. *Id.* ¶ 93.

21       As foster care is intended to be temporary, CFS is required to expeditiously place foster

22   children in permanent homes. *Id.* ¶¶ 99–100. However, children in the County spend an average of

23   551 days in custody, 104 days longer than the national average—and these figures continue to

24   deteriorate. *Id.* ¶¶ 101–103. Children in CFS's custody are about 50% more likely to "age out" in

25   foster care than others around the country. *Id.* ¶ 104.

26       National organizations recommend that caseworkers maintain caseloads of between 12 and

27   15 children in out-of-home care. *Id.* ¶ 108. However, CFS permits its caseworkers to carry caseloads

28   of 70 to 90 children per caseworker. *Id.* ¶ 109. Such high caseloads prevent caseworkers from

adequately assessing a child's safety or wellbeing, developing individualized case plans, facilitating

reunification services, placing children appropriately, or deciding when to petition to terminate

parental rights. *Id.* ¶ 115.

These deficiencies in CFS's practices and policies disproportionately harm foster children

with disabilities. *Id.* ¶ 117.

There exists a lack of oversight by the State Defendants and the other County Defendants. *Id.*

¶¶ 124–136.

## II.    Procedural History

On May 25, 2023, Plaintiffs filed a class action complaint for injunctive and declarative relief

against Defendants. ECF No. 1 ("Complaint"). On August 14, 2023, Plaintiffs filed the operative

amended complaint. ECF No. 34 ("FAC"). Plaintiffs allege eight causes of action: violations

pursuant to (1) the Adoption Assistance and Child Welfare Act ("AACWA"); (2) California Welfare

and Institutions Code Sections 16501.1, 16503(a), *et seq.* (against County Defendants only), (3) 42

U.S.C. Section 1983 ("Section 1983") based on due process; (4) California Constitution Article I,

Section 7(a) based on due process (against County Defendants only); (5) Section 1983 based on

family association; (6) Title II of the Americans with Disabilities Act ("ADA"); (7) Section 504 of

the Rehabilitation Act of 1973 ("RA")); and (8) California Government Code Section 11135, *et seq.*

(against County Defendants only). *See generally* FAC.

On October 9, 2023, the CDSS Defendants filed a Motion to Dismiss. ECF No. 42 ("CDSS

Motion"). On the same day, Newsom also filed a Motion to Dismiss. ECF No. 43 ("Newsom

Motion"). On December 7, 2023, Plaintiffs filed their opposition to the State Defendants' Motions.

ECF No. 56 ("State Opp."). On January 16, 2024, the State Defendants filed their replies. ECF No.

58 ("CDSS Reply"); ECF No. 59 ("Newsom Reply").

On October 9, 2023, the County Defendants filed a Motion to Dismiss for lack of subject

matter jurisdiction. ECF No. 44 ("SMJ Motion"). On December 7, 2023, Plaintiffs filed an

opposition. ECF No. 53 ("SMJ Opp."). On January 16, 2024, the County Defendants filed their

reply. ECF No. 60 ("SMJ Reply").

On October 9, 2023, the County filed a Motion to Dismiss, to which the remaining County Defendants joined in its entirety. ECF No. 45 (the "County Motion"); ECF No. 46 ("Joinder"). The County Motion also included a Request for Judicial Notice. ECF No. 45-2 ("RJN"). The remaining County Defendants (CFS, the Board of Supervisors, and Zepeda) filed a separate Motion to Dismiss. ECF No. 47 ("CFS Motion"). On December 7, 2023, Plaintiffs filed an opposition to both the County Motion and the CFS Motion. ECF No. 55 ("County Opp."). On January 16, 2024, the County Defendants filed their replies. ECF No. 61 ("County Reply"); ECF No. 62 ("CFS Reply").

## COUNTY DEFENDANTS' SMJ MOTION TO DISMISS (ECF NO. 44)

### I.    Applicable Law

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction or standing. "The jurisdiction of federal courts is defined and limited by Article III of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). Under Article III, federal courts "may act only in the context of a justiciable case or controversy." *Sec. & Exch. Comm'n v. Med. Comm. for Hum. Rts.*, 404 U.S. 403, 407 (1972). This requirement of a case or controversy "limit[s] the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast*, 392 U.S. at 95 (1968). The plaintiff bears the burden of proving jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 at n.3 (2006).

### II.    Discussion

For the reasons discussed below, the Court finds that this case is properly before it. Accordingly, the Court DENIES the SMJ Motion.

/ / /

/ / /

**A.  Plaintiffs have standing to bring their claims before this Court.**

The County Defendants first contend that this case lacks standing because Plaintiffs' claims are not redressable by relief from this Court.[4] SMJ Motion at 11. In particular, the County Defendants characterize Plaintiffs' claims as "generalized grievances" about the County's foster care system, and argue that the relief sought would violate the principles of federalism. *Id.* at 12. However, at this stage, the Court finds both that the remedies sought by Plaintiffs sufficiently relate to the injuries alleged, and do not necessarily rise to the level of broad injunctive relief that is beyond this Court's power to issue.

To establish redressability, "a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *M.S.*, 902 F.3d at 1083. "A plaintiff's burden to demonstrate redressability is 'relatively modest.'" *Id.* Here, Plaintiffs have alleged numerous concrete injuries that arise from Defendants' conduct, which the Court finds likely to be addressed by the relief sought. For example, Plaintiffs allege harm stemming from inadequate placement and monitoring, inadequate case planning, and inadequate provision of medical services. *See, e.g.*, FAC ¶¶ 142 (alleging difficulty by Gary G. to obtain necessary health services), 174 (alleging that Xander B. is still not receiving certain medication), 180 (failure to adequately monitor placements or engage in case planning for Teddy H.), 211 (placement of David O. into a foster home that was not properly vetted). And, these harms would likely be remedied if CFS had enough caseworkers to adequately place and monitor children, conduct case planning, and ensure provision of medical services. The Court finds this sufficient to show standing at the pleadings stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . .").[5]

---

[4] To establish standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

[5] At the hearing, the County Defendants emphasized the points raised in their briefing that a plaintiff must establish standing on a claim-by-claim basis. *See* SMJ Reply at 3. However, it is the County Defendants who are characterizing Plaintiffs' claims as "broad and generalized grievances" that a federal court cannot redress. SMJ Motion at 12. As just listed by the Court, Plaintiffs have alleged specific injuries, and Defendants have

The thrust of the County Defendants' arguments though, are directed towards whether this Court would have the power to issue the remedies sought. The County Defendants point to cases where the Supreme Court rejected a federal court's interference with local government. For example, they cite *Rizzo v. Goode*, where the Supreme Court found problematic a district court's injunctive order that "significantly revis[ed] the internal procedures of the Philadelphia police department." 423 U.S. 362, 379 (1976). They also point to *Lewis v. Casey*, where the district court adopted a 25-page injunctive order that "mandated sweeping changes" to the Arizona prison system in "minute detail" that was not tailored to the inadequacies identified in the underlying litigation. 518 U.S. 343, 347 (1996) (noting that the two identified "instances were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief"). However, no Supreme Court case cited affirmatively states that a district court cannot, as a matter of law, grant injunctive relief against a state or local defendant. The cases merely emphasize that appropriate consideration should be given to the "federal-state relationships underlying" the case." *Rizzo*, 423 U.S. at 380. The County Defendants have not affirmatively shown that the Court lacks the power to issue the relief sought.

Moreover, it is not clear that Plaintiffs inappropriately seek to micromanage CFS's internal procedures in a way that is not already mandated by applicable state and federal laws. For example, one form of relief sought by Plaintiffs is to ensure that all foster children receive an adequate written case plan within 60 days of entering care. FAC at 65. But, this is already mandated by California statute. *Id.* ¶ 50; *see also* Cal. Welf. & Ins. Code § 16501(a)(2) ("The case plan shall be developed within a maximum of 60 days of the initial removal of the child . . .").

The County Defendants rely on *Juliana*, where plaintiffs sought to enjoin the government from activities that would promote the use of fossil fuels. *Juliana v. U.S.*, 947 F.3d 1159 (9th Cir. 2020). *Juliana* is distinguishable in multiple ways. First, the case was at the summary judgment

---

not shown that these injuries could not be remedied by the various forms of relief sought. At the motion to dismiss stage, the Court draws all inferences in favor of Plaintiffs and finds that Plaintiffs' injuries could potentially be redressed by the relief they are seeking. *See Oregon v. Legal Services Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) ("Plaintiff bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"). To the extent that further evidence develops in this case showing Plaintiffs' injuries are unrelated to or would not be redressed by the twenty-plus specific remedies Plaintiffs seek (*see* FAC at Prayer for Relief), the County Defendants may re-raise this issue.

stage, where the plaintiffs had "compiled an extensive record." *Id.* at 1166. Moreover, as part of this record, the plaintiffs' own experts had opined that such an injunction would not "suffice to stop catastrophic climate change or even ameliorate [the plaintiffs'] injuries." *Id.* at 1170. Here, Plaintiffs have identified a host of relief sought that would appear to redress the injuries alleged in their eight causes of action. *See* Compl. at Prayer for Relief. Although the County Defendants emphasize that Plaintiffs appear to be seeking reform of the foster system as a whole, this is not mutually exclusive to relief sought to redress Plaintiffs' own alleged harms.

The requested relief also does not appear to seek to interfere with the funding of the foster care system directly. *Cf. Horne v. Flores*, 557 U.S. 433, 455 (2009) (taking issue with requiring a state to take action through "a particular funding mechanism"). To the extent that Plaintiffs are claiming that CFS fails to meet applicable constitutional standards, the Court does not find that an order seeking to enforce them to do so would be inappropriate as a matter of law. *See Melendres v. Maricopa County*, 897 F.3d 1217, 1219 (9th Cir.) (affirming district court injunction that ordered a county's sheriff's office to take various remedial measures); *see also M.D. by Stukenberg v. Abbott*, 907 F.3d 237 (5th Cir. 2018) (affirming certain injunctive provisions related to caseload management and monitoring and oversight of violations within foster care system).

The County Defendants cite numerous times to *Connor B.*, an out-of-state district case to support their argument that the relief sought here is "rightfully the province of the legislature." *Connor B. ex rel. Vigurs v. Patrick*, 985 F. Supp. 2d 129, 157 (D. Mass. 2013). But, they ignore that the case in *Connor B.* proceeded to a bench trial, and that the court recognized its role "to adjudicate the claims before it," regardless of the concerns of imposing institutional reform through injunctive or declaratory relief. *Id.* At the hearing, the County Defendants emphasized one concern the *Connor B.* court raised—that any relief sought would require resources (or the reallocation thereof) that Defendants simply do not have. But, at this stage, the Court cannot presume this to be the truth, and that such relief may be costly is not a reason to find lack of standing. *See Watson v. City of Memphis*,

373 U.S. 526, 537 (1963) (noting that "it is obvious that vindication of conceded constitutional rights cannot be made dependent up on any theory that it is less expensive to deny than to afford them").[6]

While the Court acknowledges the concerns with overreaching injunctive relief, the County Defendants have not identified any specific provisions of relief sought by Plaintiffs that would provide a proper basis for dismissal of the whole complaint at this stage. *See Melendres v. Maricopa County*, 897 F.3d 1217, 1222 (9th Cir. 2018) (rejecting that an injunction violated federalism principles where the defendant failed to articulate why any provisions were overbroad). Given that the Court finds that the allegations sufficiently identify redressable injuries, the Court finds that the FAC adequately pleads standing for Plaintiffs to bring their claims. Accordingly, the Court DENIES the SMJ Motion on this basis.

### B. The *Younger* abstention doctrine does not apply.

The County Defendants argue that because Plaintiffs have ongoing juvenile court actions, this Court must abstain from adjudicating this case. SMJ Motion at 17. The *Younger* abstention doctrine requires federal courts to abstain from certain cases "under the principles of federalism." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987); *see also Younger v. Harris*, 401 U.S. 37 (1971). Federal courts should not enjoin state criminal prosecutions and should not intervene in civil state court proceedings "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co.*, 481 U.S. at 11. Abstention is appropriate when four requirements are met: (1) "there is an ongoing state judicial proceeding;" (2) "those proceedings implicate important state interests; (3) "there is an adequate opportunity in the state proceedings to raise constitutional challenges;" and (4) the "requested relief must seek to enjoin—or have the practical effect of enjoining—ongoing state

---

[6] At the hearing, counsel for the County Defendants described *Connor B.* as a "cautionary tale," arguing that in the case, the court "realize[d] in hindsight there was nothing it could actually do via a federal injunction to bring about the kind of reform that Article III allows." ECF No. 72 at 7:7-14. But, that is not what happened in the case. Rather, the court in *Connor B.* did not reach the question of what remedy was appropriate because it found that the plaintiffs there had not substantively proven their claims. *See Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45, 48 (1st Cir. 2014) (noting that the plaintiffs had "not established, based on the facts, that there have been constitutional violations as to the *class* of foster children, so they are not entitled to an injunction or federal court oversight"). That Plaintiffs may or may not be able to ultimately prove their claims is not a basis to deny them the ability to pursue their claims now.

proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423 (1982).

The Supreme Court has since reaffirmed the scope of *Younger* abstention and the three "exceptional circumstances" that "justify a federal court's refusal to decide a case in deference" to a state: (1) ongoing state criminal prosecutions, (2) civil enforcement proceedings, and (3) pending civil proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 78 (2013). As the Supreme Court reminded in *Sprint*, "abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Id.* at 82. "The pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 73. The Court finds that Plaintiffs' dependency proceedings do not fall under the category of exceptional circumstances to which *Younger* abstention applies, and therefore not need to reach the *Middlesex* factors. *Id.* at 82 (affirming that "*Younger* extends to the 'three exceptional circumstances'" but no further and that the *Middlesex* factors are not "dispositive" but rather "*additional* factors appropriately considered [] before invoking *Younger*").

Here, the County Defendants appear to argue that the Plaintiffs' dependency proceedings fall into the second category of civil enforcement actions which are "quasi-criminal" in nature. Reply at 6.[7] But, the term "quasi-criminal" as used in *Sprint* makes clear that the proceedings at issue here are not. In particular, the Supreme Court noted that the proceeding in *Middlesex*, a case where the Supreme Court did find abstention appropriate, was "akin to a criminal proceeding." *Sprint*, 571 U.S. at 81; *see also Middlesex*, 457 U.S. at 432 (abstention is appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature"). The "purpose of the hearing was to determine whether the lawyer should be disciplined"—thus, the *Middlesex* proceeding was found to be "quasi-criminal" in nature. *Id.* There is no dispute that Plaintiffs' dependency proceedings are not punitive nor criminal, but rather are proceedings for their benefit

---

[7] It does not appear in dispute that the proceedings at issue fall into the first or third categories. *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (citing as examples for the third category as a civil contempt order and the requirement for the posting of bond pending appeal).

and protection. Therefore, the Court does not find that their cases appropriately fall under the quasi-criminal category that *Younger* abstention apply to.

The County Defendants rely on *Moore v. Sims*—a case decided well before *Sprint*—where the Supreme Court found that a state proceeding involving the "temporary removal of a child in a child-abuse context" was subject to abstention. 442 U.S. 415, 423 (1979). But the basis for abstention in *Moore* was that the proceedings involved the state's initial and temporary removal of the child, which was determined to be a quasi-criminal proceeding. The Supreme Court explained that "the temporary removal of a child in a child-abuse context is, like the public nuisance statute involved in [another case], 'in aid of and closely related to criminal statutes.'" *Id.* at 423. The Supreme Court did not so hold regarding ongoing dependency proceedings. Here, even if the Plaintiffs' dependency proceedings were initiated similarly,[8] the posture of Plaintiffs' dependency proceedings now are markedly different—the issues Plaintiffs raise are not with the initial removal, they are with the eventual case planning, review and approval of placements, and delivery of services for the whole period that they are in the State's custody. *See* FAC. The County Defendants argue that the removal proceedings and the following dependency proceedings are one and the same, as they "are governed by a single, unitary statutory scheme." Reply at 8. However, this Court must follow the analysis dictated by *Sprint* and ask whether the nature of the proceeding was "initiated to sanction the federal plaintiff [] for some wrongful act," not merely ask what statutory scheme the proceeding falls under. *Sprint*, 571 U.S. at 79. This makes sense, as in the context of a removal proceeding, the State can be construed as "enforcing" certain laws against parents. In contrast, the State is not similarly engaged in enforcement in ongoing dependency proceedings such that it would make sense for these to fall into the second category of civil *enforcement* proceedings.

The Ninth Circuit has not spoken to the issue of whether *Younger* abstention applies in the context of ongoing dependency proceedings (as opposed to the removal proceeding), but the Court notes that other circuits have taken diverging approaches. *Compare Ashley W. v. Holcomb*, 34 F.4th

---

[8] The Court notes that the specific status and circumstance of each named Plaintiffs' dependency proceeding is not clear from the record, but it appears undisputed that the dependency proceedings at issue were initiated by the state to bring them into state custody. *See* SMJ Opp. at 3; SMJ Reply at 8.

588 (7th Cir. 2022) with *Jonathan R. by Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022).[9] The Court

finds the reasoning of the Fourth Circuit in *Jonathan R.* persuasive. *Jonathan R.*, 41 F.4th at 320–21.

There, the Fourth Circuit dealt with a similar case brought by a class of foster children that

challenged the state's administration of child welfare services, and found that "principles of

federalism not only do not preclude federal intervention, they compel it." *Id.* In particular, the Fourth

Circuit held that the periodic dependency hearings did not "require the district court to stand aside"

because the "*ongoing* individual hearings [] serve to protect the children who would be plaintiffs in

federal court," as opposed to the initial removal in *Moore* which was focused on taking away

parental rights from purportedly abusive parents in an enforcement-like proceeding. *Id.* at 329–30.

This aligns with the scope of *Younger* abstention as set forth by the Supreme Court in *Sprint*. *See*

*Sprint*, 571 U.S. at 73 ("We have cautioned, however, that federal courts should entertain and

resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to

decide a case in deference to the States.'").

      Accordingly, the Court does not find that abstention applies in this case and DENIES the

SMJ Motion on this basis.

/ / /

/ / /

---

[9] The Seventh Circuit did not discuss the applicability of *Younger* at great length, focusing primarily on the inadequacy of the district court's reasons for failing to apply *Younger*. *Ashley W.*, 34 F.4th at 593. It did not address this question of initial removal versus ongoing dependency proceedings, stating that *Younger* "applies to state-initiated child-welfare litigation" due to the holding in *Moore*, as well as two prior Seventh Circuit cases. *Id.* at 592. However, these two cases were about child custody, not about the proceedings that happen after a child is already in state custody. *See Brunken v. Lance*, 807 F.2d 1325 (7th Cir. 1986); *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). Moreover, in *Brunken*, the Seventh Circuit's determination that *Younger* applied focused specifically on the state's "strong interest in the health and welfare of the child" (*Brunken*, 807 F.2d at 1330)—but *Sprint*, which was decided after *Brunken*, has clarified that the state interest factor is not reached if the proceeding itself does not fall into one of the three categories identified in *Sprint*.

The Court further notes that both the Tenth and Eleventh Circuit cases cited by the County Defendants that applied *Younger* abstention in similar situations were decided prior to *Sprint*, and relied on a pure application of the *Middlesex* factors. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003); *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002). Moreover, the Eighth Circuit cases cited by the County Defendants were in the context of removal proceedings similar to *Moore*. *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018) (plaintiffs were challenging "procedures used in proceedings brought by the State to remove children temporarily from their homes in exigent circumstances").

**C.  The *Rooker–Feldman* doctrine does not deprive the Court of jurisdiction.**

Finally, the County Defendants argue that *Rooker–Feldman* doctrine deprives the Court of jurisdiction. "Under *Rooker–Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)). This applies to not just actual appeals of state court judgments, but also to the "de facto equivalent" of appeals of such judgment, "when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court." *Id.* at 1155–56.

Here, neither the FAC nor the County Defendants identify any specific judgment from a juvenile proceeding that has been challenged. Although the County Defendants argue that juvenile courts have already made certain determinations as to Plaintiffs' cases, it is not clear that these determinations align with Plaintiffs' particular allegations here. Nowhere in the FAC do Plaintiffs state that any of their circumstances that they now complain of arose out of a court order. The Court also does not interpret Plaintiffs to be seeking review of the juvenile courts' determinations, whether related to case plans or otherwise. Plaintiffs' quarrels are not with the juvenile courts, but with the agency's ability to provide the required resources and services to foster children under its care. Therefore, the Court does not find that the *Rooker-Feldman* doctrine is a bar to jurisdiction here.

Accordingly, the Court DENIES the SMJ Motion on this basis.

**COUNTY'S REQUEST FOR JUDICIAL NOTICE (ECF NO. 45-2)**

**I.    Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

## II.   Discussion

### A.  The Court Denies the County's RJN (ECF No. 45-2)

In support of the County's Motion to Dismiss, the County seeks judicial notice of a number of the County's policies,[10] postings on government websites, and government contracts and memoranda of understanding. The Court does not find that any of these documents to satisfy the *Corinthian* elements. None of the categories of the documents are central to Plaintiffs' claims, nor relevant to consider at the motion to dismiss stage.

Accordingly, the Court DENIES the County's Request for Judicial Notice.

## COUNTY DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 45–47)

### I.   Applicable Law

Defendants bring their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

---

[10] Plaintiffs argue that the policies are not properly authenticated. County Opp. at n.11.

the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II. Discussion

For the reasons discussed below, the Court DENIES the County Motion and GRANTS the CFS Motion WITH LEAVE TO AMEND.

### A. Plaintiffs Sufficiently Allege Municipal Liability.

The County first moves on Plaintiffs three Section 1983 claims (First, Third, and Fifth Causes of Action), arguing that Plaintiffs fail to meet the standard for municipal liability. County Motion at 12. To assert a Section 1983 claim against a municipality, a plaintiff must plead that (1) he was deprived of a constitutional right, (2) the defendant had a policy or custom, (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right, and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

#### 1. Plaintiffs sufficiently allege a violation of their rights.

The Court analyzes whether the FAC alleges a violation of Plaintiffs' rights under the three causes of action at issue.

##### a. *AACWA*

To enforce federal statutes under Section 1983, a plaintiff "must assert a violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340

(1997). There are three factors courts consider to determine when a statutory provision gives rise to a federal right: (1) Congress must have intended that the provision in question benefit the plaintiff, (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence, and (3) the statute must impose a mandatory obligation on the state. *Id.* Meeting the *Blessing* factors creates a presumption that the right is enforceable, which can be rebutted if the defendant shows that Congress explicitly or impliedly "create[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 341.

The FAC identifies seven different rights that Plaintiffs allege they have been deprived of by Defendants under the AACWA, which the Court categorizes into four categories: (1) right to a certain standard of placement, (2) access to quality services to protect safety and health, (3) right to case plans and case review system, and (4) right to have a petition to terminate parental rights in certain conditions. FAC ¶ 237. The County only takes issue with the second and third categories. *See* County Motion at 13.[11]

As to this third category, the Ninth Circuit has affirmatively held that "case plan provisions are enforceable through § 1983," in addition to provisions related to providing a case review system. *Henry A. v. Willden*, 678 F.3d 991, 1006 (9th Cir. 2012).[12] The County argues that Plaintiffs themselves have not sufficiently alleged that their case plans are inadequate, because half the Plaintiffs admit they have a case plan, and the others do not mention case plans at all. County Motion at 13. However, drawing all inferences in favor of Plaintiffs, the allegations support that the

---

[11] On reply, the County argues that it did not address any others because case plans are the only "cognizable" AACWA right pleaded. County Reply at 2. It is unclear whether the County means cognizable under the law or under the facts pleaded by Plaintiffs. Regardless, as the County could have raised this issue in its moving papers, the Court declines to reach issues first raised on reply.

[12] The CDSS Defendants make the argument that the rights to case plans held by the Ninth Circuit in *Henry A.* were limited to the textual nature of Section 671(a)(16). CDSS Reply at 9. However, the Ninth Circuit clearly also included the language of Section 675(1) in its contemplation of what case plan provisions are enforceable. *Henry A.*, 678 F.3d at 1006.

1    case plans are inadequate. FAC ¶ 221 (alleging that Plaintiffs are being kept "in suitable homes

2    without providing adequate case planning").[13] The Court finds this sufficient.

3         As to the second category, the County relies on non-binding authority that there is no private

4    right of action under 42 U.S.C. § 671(a)(22). *See Clark K. v. Guinn*, 2007 WL 1435428, at *10 (D.

5    Nev. May 14, 2007). But, even assuming there is no private right of action, this does not mean that

6    the provision cannot create a federal right for purposes of Section 1983.[14] *Blessing*, 520 U.S. at 346–

7    48 (leaving "open the possibility that Title IV-D may give rise to some individually enforceable

8    rights," even though the statute "contains no private remedy—either judicial or administrative—

9    through which aggrieved persons can seek redress").

10        Nevertheless, the Court finds that the *Blessing* factors do not support a finding of an

11   enforceable right to access certain types of services as to Section 671(a)(22). In determining that the

12   provision of case provision plans met the *Blessing* test, the Ninth Circuit emphasized that the

13   statutory language references "each child," focusing it "squarely on the protected individual, rather

14   than an aggregate interest or a regulated entity." *Henry A.*, 678 F.3d at 1007. Here, Section

15   671(a)(22), which is part of the same statute, does not contain such language. 42 U.S.C. § 671(a)(22)

16   (states shall ensure "that children in foster care placements" are provided services "that protect the

17   safety and health of children"). Moreover, the Ninth Circuit found that the second factor of the

18   *Blessing* test was met because the definitions provided in the statute described "exactly what a case

19   plan must include," so there is no ambiguity for what a state need do. *Henry A.*, 678 F.3d at 1007.

20   Here, the only unambiguous thing that the provision sets forth is that the state "shall develop and

---

[13] This allegation is supported by other specific, factual allegations that Plaintiffs have not seen their case plans, that their caseworkers did not hold required planning meetings, and that Plaintiffs have had multiple failed placements. *See* FAC ¶¶ 144, 152–175, 180, 183, 188, 192–205, 206–207, 209.

[14] Plaintiffs also rely on non-binding authority where a federal right from Section 671(a)(22) was found after applying the *Blessing* factors. *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 294 (N.D. Ga. 2003).

On reply, the County states that *Kenny A.* is "bad law" because another district court criticized the *Kenny A.* court's analysis of a different section of the opinion. County Reply at 4 (citing *Melvin H. v. Atlanta Indep. Sch. Dist.*, 2008 WL 11342510, at *19 (N.D. Ga July 10, 2008). The County appears to be conflating the standard for finding a federal right with the standard that creates a private right of action.

As discussed in Blessing, the determination of whether a statute creates a private right of action is distinct from the determination of whether it creates a federal right for purposes of Section 1983.

implement *standards* to ensure that children . . . are provided quality services." 42 U.S.C. § 671(a)(22) (emphasis added). But, Plaintiffs' alleged right is the right to *access* quality services. This is not aligned with any right actually provided by the provision itself.

Accordingly, while the Court finds the FAC sufficiently pleads a violation of enforceable rights under the AACWA as to the case plan provisions, the Court does not find an enforceable right as to access to quality services.

b.    *Substantive Due Process*

Once a state takes a child into its custody, "the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstance of the child." *Lipscomb By and Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). The County argues that the seven rights that Plaintiffs identify under this cause of action are not cognizable rights. County Motion at 14.[15] First, the County argues that "risk of maltreatment" cannot give standing. *Id.* But, the Court finds that the risk of maltreatment is properly pleaded as a violation of the right to reasonable safety, which is a cognizable right. Moreover, Plaintiffs do allege that they are currently being mistreated or face imminent risk of mistreatment. *See, e.g.,* FAC ¶¶ 175 (alleging that Francesca and Delilah B. "require substantial ongoing services, which they are not receiving"), 205 (alleging lack of caseworker visits and inadequate planning as to Henry P. exposes him "to a substantial risk of harm"). The County cites no binding authority that the harms alleged by Plaintiffs, as a matter of law, are insufficient to be construed as violations of their due process interests in reasonable safety and minimally adequate care and treatment.

---

[15] The alleged rights are as follows: (1) the right to freedom from the foreseeable risk of maltreatment while under the protective supervision of the State; (2) the right to protection from unnecessary intrusions into the child's emotional wellbeing once the State has established a special relationship with that child; (3) the right to services necessary to prevent unreasonable risk of harm in the least restrictive environment; (4) the right to conditions and duration of foster care reasonably related to the purpose and assumption of government custody; (5) the right to treatment and care consistent with the purpose and assumptions of government custody; (6) the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody; and (7) the right to receive or be reunited with an appropriate permanent home and family within a reasonable period. FAC ¶ 246.

1    The County Defendants similarly cite various non-binding cases for the proposition that the

2   Fourteenth Amendment does not provide Plaintiffs with the remaining rights alleged, but

3   mischaracterize the rights Plaintiffs are actually claiming. Even these cited cases acknowledge that

4   some form of these rights may exist for children under a state's custody. *See M.D. by Stukenberg*,

5   907 F.3d at 250 (noting that the Fifth Circuit has held that children enjoy "a right to personal

6   security and reasonably safe living conditions," and that while the "precise contours" of these rights

7   "have yet to be fleshed-out at length, it is clear that foster children are, at minimum, entitled to

8   protection from physical abuse and violations of bodily integrity"). While the Fifth Circuit held that

9   children do not have a right to be free from "any and all psychological harm," or to "receive optimal

10   treatment and services," Plaintiffs do not claim such rights. *See* FAC ¶ 246 (alleging that Plaintiffs

11   are due protection from "*unnecessary* intrusions" into a child's emotional wellbeing and the right to

12   "services necessary to prevent *unreasonable* risk of harm") (emphasis added).

13    As to the claimed rights to the duration of foster care and custody, as well as the right to

14   reunification, the County Defendants cite a few district cases that solely cite each other, and the

15   proposition appears to arise ultimately from dicta that does not actually contradict the existence of

16   Plaintiffs' asserted rights.[16] Similarly, the case cited by the County Defendants does not actually

17   contradict Plaintiffs' claimed right to treatment and care consistent with the purpose of custody. *See*

18   *DeShaney v. Winnebago Cnty. Dep.'t of Soc. Servs.*, 812 F.2d 298, 304 (7th Cir. 1987). On the other

19   hand, Plaintiffs have cited a number of non-binding cases from which courts have recognized similar

20   rights. Opposition at 9–10. The Court does not find it necessary at this stage to determine the

21   existence of every specific right alleged, given that it finds Plaintiffs to have adequately pleaded the

22

23

24   _____

25   [16] *Wyatt B. by McAllister v. Brown*, 2021 WL 4434011, at *9 (D. Or. Sept. 27, 2021) cites *Clark K. v. Guinn*,
2007 WL 1435428, at *15 (D. Nev. May 14, 2007) and *Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J.

26   2000). *Clark K.* cites *Charlie H.* and *Baby Neal v. Casey*, 821 F. Supp. 320, 335 (E.D. Penn. 1993). *Charlie
H.* cites to *Baby Neal* for the proposition that a child does not have right to "remain in state custody

27   unnecessarily." *Charlie H.*, 83 F. Supp. 2d at 507. However, *Baby Neal* actually only states in dicta that a
child's "constitutional right to be free from harm while in foster care does not entitle them to the right to

28   permanent placements or placement in preadoptive homes." *Baby Neal*, 821 F. Supp. 320 at 335. But, this
strays from the actual rights claimed by Plaintiffs in this case.

1    existence of at least one substantive due process right that they allege to be violated to support this

2    cause of action.

3        Accordingly, drawing all inferences in favor of the Plaintiffs, the Court finds that the

4    allegations are sufficient to allege a violation of Plaintiffs' due process rights.

5                    c.    *Familial Association*

6        Plaintiffs allege that the First Amendment provides a "right of association and right to a

7    permanent family," which, combined with "the Ninth Amendment's reservation of rights to the

8    people, and the Fourteenth Amendment's right to due process," creates an "affirmative duty" on

9    states "to provide reasonable efforts to obtain a permanent home and family." FAC ¶ 254. Plaintiffs

10   appear to interpret this statement from *Stanley v. Illinois*, where the Supreme Court stated that "[t]he

11   integrity of the family unit has found protection" in these three amendments.[17] 405 U.S. 645, 651

12   (1972). However, *Stanley* discusses "the rights to conceive and raise one's children" and "the

13   integrity of the family unit." *Id*. The Court does not find that the constitutional rights to family

14   association creates a duty for the government to help people create a family. Nevertheless, the

15   County does not dispute that there can be a violation of the right to familial association "where a

16   state actor unlawfully interferes with the parent-child relationship." County Motion at 16; *Grae-El v.

17   City of Seattle*, 2022 WL 16758473, at *5 (W.D. Wa. Nov. 8, 2022), citing *Keates v. Koile*, 883 F.3d

18   1228, 1238 (9th Cir. 2018). Plaintiffs point to allegations that visitation with their parents have been

19   improperly denied. FAC ¶ 179 (alleging that because of CFS's actions, Teddy H. lost contact with

20   his stepmother, who was his primary caregiver), 202 (alleging that despite visitation requests since

21   September 2022, CFS did not approve one until March 2023, and has still not scheduled the visit).

22   Drawing all inferences in favor of Plaintiffs, the Court finds the allegations sufficient to plead a

23   violation of the right to familial association.[18]

24

25

26   _____

     [17] *See* County Opp. at 11.

27   [18] The parties dispute whether the right extends to siblings. Neither party cites binding authority on the issue,
     and the Court does not find it necessary to reach this question at this stage in light of its other findings and
28   determinations.

Accordingly, the Court finds that the FAC sufficiently pleads a violation of Plaintiffs' constitutional rights to family association.

2.  <u>Plaintiffs sufficiently allege policies, practices, and customs that were the moving force behind the violations at issue.</u>

Two other elements of *Monell* liability require the Plaintiffs sufficiently allege that the County had a policy or custom that was the moving force behind the alleged violations. The Court finds these two prongs satisfied. Drawing all inferences in favor of Plaintiffs, the Court finds that the FAC alleges various and significant systematic failures of the County's foster care system. FAC ¶¶ 55–123; *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (explaining that "[a]bsent a formal governmental policy," a plaintiff can show a custom that is "so 'persistent and widespread' that it constitutes 'permanent and well settled [] policy'"). Here, Plaintiffs allege practices and customs that appear to have gone on for years. *See, e.g.,* FAC ¶¶ 55–61. Moreover, drawing all inferences in favor of Plaintiffs, these systematic failures are the cause of the harm Plaintiffs allege.

Accordingly, the Court finds that Plaintiffs sufficiently allege policies, practices, and/or customs that are the driving force of the violations for purposes of *Monell* liability at this stage.

3.  <u>Plaintiffs sufficiently allege deliberate indifference.</u>

The final element of a *Monell* claim is a showing of deliberate indifference. In the foster care context, a plaintiff can show that a government entity acted with deliberate indifference through two exceptions—the special relationship exception or the state-created danger exception. *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021). The special relationship exception applies when the state assumes responsibility for a child. *Id.* The Ninth Circuit has explained that the "deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts" from which they drew or reasonably should have drawn the conclusion that the risk existed. *Henry A.*, 678 F.3d at 1001. There is also an exception where a state "affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger.'" *Id.* at 998. This exception applies where a state's affirmative act places an individual in obvious or known danger that they otherwise would not have faced, and the state acted with deliberate indifference to that danger. *Id.* at 1002. Here, the

Court finds sufficient allegations in the FAC to plead deliberate indifference as to both the special relationship and state-created danger exception.[19] While the County argues that there are insufficient allegations that this is a "deliberate choice" sufficient to rise to the level of deliberate indifference, the Court finds this is a reasonable inference which must be drawn in favor of Plaintiffs at this stage of the case. County Motion at 21.

The allegations, taken as true, show that a foster child under the care of CFS is objectively likely to suffer harm from CFS's lack of adequate case planning, monitoring, and provision of services, and the caseworkers' high caseload. The allegations also show that CFS is aware of this significant likelihood of harm but has taken no steps to address it.[20] This is sufficient to allege that CFS has violated the due process of the foster children under its care because these children do not have their "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety" provided for. *Henry A.*, 678 F.3d at 1000. For example, the FAC alleges that CFS "does not provide Plaintiffs or other foster children in its custody with timely health or dental assessments." FAC ¶ 18. Drawing all inferences in favor of Plaintiffs, a lack of timely medical treatment creates an objective risk of harm that CFS either would or should subjectively know creates this risk, and the Court finds it a plausible inference at this stage that CFS has the ability to address these issues.

There are also allegations that satisfy a state-created danger exception—for example, using CFS offices that lack basic living essentials and safety features as living quarters for children. FAC ¶¶ 81–84. This is an affirmative act that places the child in known or obvious danger. Moreover, the allegations show this act is taken with deliberate indifference to the risk, as CFS is alleged to have acknowledged that children with significant behavioral and emotional problems spend nights in CFS offices. *Id.* ¶ 82. At this stage, the Court finds the allegations sufficient to support a claim of deliberate indifference.

---

[19] The County Defendants noted at the hearing that the state-created danger exception was not raised in Plaintiffs' opposition. The Court addresses this exception here as it was argued by the State Defendants in their motion, but given that the Court finds that both exceptions apply, the Court does not find it necessary for the County Defendants to further brief the issue.

[20] The allegations also sufficiently show awareness by the CDSS Defendants. FAC ¶¶ 21, 136.

Accordingly, the Court finds Plaintiffs adequately plead a *Monell* claim and DENIES the County Motion on this basis.

**B. Substantive Due Process Claim Under State Law (Fourth Cause of Action)**

The County moves on Plaintiffs' claim for violation of substantive due process based on California's Constitution on the same grounds as the due process claim under the Fourteenth Amendment. Accordingly, the Court's reasoning above applies equally to these claims and the Court DENIES the County Motion on this basis.

**C. Plaintiffs Adequately Plead Violations of the WIC (Second Cause of Action)**

The County argues that Plaintiffs fail to plead sufficient facts to state a violation of WIC Sections 16501.1 or 16503. County Motion at 26. These WIC provisions mandate specific requirements for case plans. The Court finds that Plaintiffs sufficiently allege at this stage that CFS does not provide adequate or timely case planning. *See, e.g.,* FAC ¶¶ 73 ("All available evidence indicates that [] CFS's caseworkers do note complete case plans on time or with all required stakeholders . . ."), 74 (alleging CFS acknowledges that its case plans are "cookie cutter" and not made with input from the family), 75 (alleging many foster parents, family members, and foster children never see the plan).

Accordingly, the Court DENIES the County Motion on this basis.

**D. Plaintiffs Adequately Plead Claims under the ADA, RA, and Section 11135 (Sixth, Seventh, and Eighth Causes of Action)**

To plead a public program violation under the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability, (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). A plaintiff may show disability discrimination based on "disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Payan v. Los Angeles Community College Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) ("To assert a disparate impact claim, a plaintiff must allege that a facially neutral government policy or practice has the 'effect of denying meaningful access to public services' to

people with disabilities.'"). Drawing all inferences in favor of the Plaintiffs, the Court finds these elements adequately alleged. Several Plaintiffs are alleged to have qualifying disabilities. FAC ¶¶ 141, 157, 166, 167, 218. The FAC alleges that CFS's policies and practices "disproportionately harm foster children with disabilities." *Id.* ¶ 117. For example, "CFS's failure to conduct timely health assessments—especially those related to mental health" plausibly leads to a disparate impact on children with disabilities because of the obvious implications that the absence of assessments has on identifying and meeting these children's unique needs. *Id.* ¶ 120.

Accordingly, the Court DENIES the County Motion on this basis.

### E.  There are insufficient facts stated against the Individual Defendants.

Separately from the County, the Board Members and Zepeda (the "Individual Defendants") move to dismiss Plaintiffs' claims against them arguing that there is a lack of facts against them. CFS Motion at 8. Plaintiffs appear to concede that the only claims against the Individual Defendants go towards explaining their general role with relation to CFS and the County. County Opp. at 19. However, the Court finds this insufficient to plead any actual awareness or knowledge of the deficiencies alleged of the CFS beyond mere speculation.

Accordingly, the Court GRANTS the CFS Motion as to the Individual Defendants with leave to amend.

### F.  Section 1983 Claims Against Remaining County Defendants are Redundant.

CFS and the Individual Defendants also argue that the Section 1983 claims against them should be dismissed because they are redundant with the ones brought against the County. CFS Motion at 11. Plaintiffs do not dispute the redundancy, nor identify any specific remedies that they would not be able to seek if CFS and the Individual Defendants were so dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself"). Rather, Plaintiffs merely argue that the Court is not "required" to dismiss redundant claims at this time. County Opp. at 19. Nevertheless, the Court finds no reason not to deal with the redundancy at an early stage given the scope of this case.

1      Accordingly, the Court GRANTS the CFS Motion on this basis and DISMISSES the

2   Individual Defendants and CFS as to the First, Third, and Fifth Causes of Action.

3                  **STATE DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 42, 43)**

4   **I.      Applicable Law**

5      The State Defendants also move to dismiss the FAC under Federal Rule of Civil Procedure

6   12(b)(6), for which the standard the Court has laid out previously.

7   **II.     Discussion**

8      For the reasons discussed below, the Court GRANTS IN PART the CDSS Motion and

9   GRANTS the Newsom Motion without leave to amend.

10      **A.      The Court finds no grounds for dismissal under Rule 17.**

11      The CDSS Defendants first seek dismissal on the basis of Federal Rule of Civil Procedure

12   17(c)(2) ("Rule 17"). Rule 17 requires that a minor who does not have a duly appointed

13   representative may sue "by a next friend or by a guardian ad litem." Fed. R. Civ. Proc. 17(c)(2). A

14   court must appoint a guardian ad litem, or issue another appropriate order, to protect a minor "who is

15   unrepresented in an action." *Id.* However, that is what has been done in this case—Plaintiffs are

16   minors who are bringing suit by next friends. As such, Plaintiffs are represented parties, so the latter

17   part of Rule 17 does not apply. The CDSS Defendants point to no binding authority that requires the

18   Court to "evaluate the propriety of the purported 'next friends'" based on the record before it.

19   Moreover, the Ninth Circuit has instructed that Rule 17 does not provide grounds for dismissal of the

20   case. *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014) (explaining that "the court may not use

21   [Rule 17] as a vehicle for dismissing claims or for allowing the interests of an incompetent litigant to

22   go completely unprotected").[21]

23      Accordingly, the Court does not find that Rule 17 provides any basis for granting the CDSS

24   Motion.

25   / / /

26

27   ─────────────────────

[21] On reply, the CDSS Defendants do not rebut this point, and instead state that a stay would suffice. CDSS

28   Reply at 3. While the Court does not find an order under Rule 17 required under these circumstances, this
argument is irrelevant to the merits of the motion to dismiss.

**B.    Eleventh Amendment immunity is applicable to CDSS on some claims.**

CDSS individually argues that dismissal against it is warranted because it is immune under the Eleventh Amendment. CDSS Motion at 10. "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state," including state agencies and departments. *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991). Plaintiffs do not dispute that facially, CDSS is covered under this immunity. *Genevier v. U.S. Citizenship & Immigr. Servs.*, 144 Fed. App'x 586, 587 (9th Cir. 2005). Instead, Plaintiffs argue that there are two exceptions that are applicable here. CDSS Opp. at 6. However, these exceptions are only argued as to the ADA claim and the RA. *Id.* Plaintiffs make no arguments that there are any applicable exceptions to the remaining claims asserted against CDSS, so the Court finds that the immunity applies to the AACWA and Section 1983 claims. *See Dittman v. Cal.*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that '§ 1983 was note intended to abrogate a State's Eleventh Amendment immunity.'") (internal citations omitted).

As to the ADA and RA claims, the Court finds both that Congress has abrogated any state immunity, and that California has waived its immunity by accepting federal funding. *See Clark v. Cal. Dep't. of Corrections*, 123 F.3d 1267, 1269 (9th Cir. 1997) ("Congress can . . . abrogate a state's immunity to suit, or the state can waive it."). Specifically, the Ninth Circuit has held that the RA "manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity." *Id.* at 1271. Moreover, "Congress has unequivocally expressed its intent to abrogate the State's immunity under both the ADA and the [RA]." *Id.* at 1269. Therefore, there is no state immunity as to Plaintiffs' RA and ADA claims as a matter of law.

Accordingly, the Court GRANTS IN PART the CDSS Motion and DISMISSES the claims against CDSS only as to Plaintiffs' Section 1983 claims (First, Third, and Fifth Causes of Action) without leave to amend.

**C.    There are sufficient facts stated against the CDSS Defendants.**

The CDSS Defendants argue that Plaintiffs' allegations in the FAC regarding their liability are based only on a few conclusory allegations related to their general oversight over CFS, which are

insufficient to meet the plausibility requirement set forth by *Iqbal* and *Twombly*. CDSS Motion at 9. The CDSS Defendants argue that to establish such supervisory liability, Plaintiffs must show either a "personal involvement in the constitutional deprivation" or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).[22]

The FAC alleges that CDSS "has failed to take the necessary steps to ensure that CFS protects [] children," "has not taken actions to stop these illegal activities," and that CDSS is "fully aware of CFS's systematic failings." FAC ¶¶ 10, 12, 21, 136. The Court finds this sufficient to establish a causal connection at this stage. That statutory provisions *do* impose affirmative duties on the CDSS, which is a specific basis to establish a causal connection between the CDSS Defendants and the harm alleged. FAC ¶ 3.[23] *See Starr*, 652 F.3d at 1207–08 (explaining that the "requisite causal connection can be established" by knowingly refusing to stop actions which one "knew or reasonably should have known would cause others to inflict" an injury). Plaintiffs have sufficiently alleged the CDSS Defendants' knowledge of CFS's deficiencies in addition to a lack of action on their part in violation of their obligations, which plausibly lead to the harm identified.[24]

Accordingly, the Court DENIES the CDSS Motion on this basis.

### D.    There are insufficient allegations against Newsom.

Newsom separately argues that there are insufficient allegations against him, in particular because "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v.*

---

[22] The Court notes that this standard is specific to Section 1983 claims, but it appears that both parties are using this standard as to all claims moved on. Accordingly, the Court addresses the arguments as to all relevant claims, including the ADA and RA claims, based on this standard.

[23] The Court notes that it does not appear that the specific statutory provisions that impose these duties, which Plaintiffs raise in their opposition, are specifically identified in the FAC. CDSS Opp. at 8–9. Nevertheless, at this stage, the Court finds that the description of CDSS's responsibilities and obligations in the FAC is sufficient to give the CDSS Defendants fair notice of the claims, especially given that there is no heightened pleading standard for the claims at issue. *See, e.g.,* FAC ¶¶ 128–136.

[24] At the hearing, counsel for the State Defendants emphasized that certain claims should fail against Director Johnson specifically, but as the State Defendants did not distinguish their arguments as to the CDSS and Director Johnson in their motion, the Court does not consider these arguments.

*Brussa*, 153 F.3d 984, 986 (9th Cir. 1998). Plaintiffs do not dispute this.[25] Plaintiffs appear to argue that suit against Newsom is proper here because he (1) receives regular reporting directly from CDSS, (2) he is solely responsible for appointing the CDSS director, and (3) he is responsible for proposing the total statewide budget for child welfare programs in California. Newsom Opp. at 11. However, the Ninth Circuit previously considered the same types of powers insufficient to tie a governor to a claim. *See Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 953 (9th Cir. 1983) (finding an insufficient connection where "the Governor's powers in th[e] area are limited to making general policy and budget recommendations, as well as administrative appointments"). Plaintiffs have simply failed to make specific allegations against the Governor that tie him to their claims.

Accordingly, the Court GRANTS the Newsom Motion WITHOUT LEAVE TO AMEND, as the deficiency cannot be adequately remedied through amendment.

### E.    Plaintiffs adequately plead causes of action against the CDSS Defendants.

The CDSS Defendants next move on the adequacy of Plaintiffs' First, Third, Fifth, Sixth, and Seventh Causes of Action.[26] The Court finds the arguments made by the CDSS Defendants to be largely duplicative of the ones made by the County in the County Motion.[27] Accordingly, the Court incorporates its findings on the County Motion as to these causes of action here. Moreover, since the Court finds supervisory liability is sufficiently alleged as to the CDSS Defendants, any allegations that support a cause of action as to the County and CFS would similarly subject the CDSS Defendants to liability.

Accordingly, the Court DENIES the CDSS Motion on these grounds.

\*\*\*

---

[25] Plaintiffs only argue that "courts routinely allow lawsuits to proceed against governors" in the child welfare context. Newsom Opp. at 11. However, Plaintiffs cite only non-binding, out-of-state cases. *Id.*

[26] While the Court addresses the CDSS Defendants together in this section for consistency, the Court notes that for the Section 1983 causes of action, the only defendant is Johnson giving the Court's previous finding that CDSS is immune to such claims.

[27] The Court has addressed the specific arguments made by the CDSS Defendants in footnotes in its analysis of the County Motion.

**III.**     **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants California Department of Social Services and Kimberley Johnson's Motion to Dismiss (ECF No. 42) is GRANTED IN PART;

    a. Defendant California Department of Social Services is DISMISSED from the First, Third, and Fifth Causes of Action WITHOUT LEAVE TO AMEND;

2. Defendant Gavin Newsom's Motion to Dismiss (ECF No. 43) is GRANTED;

    a. Defendant Gavin Newsom is DISMISSED WITHOUT LEAVE TO AMEND;

3. Defendants San Bernardino County, Members of the San Bernardino Board of Supervisors, the San Bernardino County Children and Family Services, and Jeany Zepeda's Motion to Dismiss (ECF No. 44) is DENIED;

4. Defendant San Bernardino County's Motion to Dismiss (ECF No. 45) is DENIED;

    a. Defendant San Bernardino County's Request for Judicial Notice (ECF No. 45-2) is DENIED; and

5. Defendants Members of the San Bernardino Board of Supervisors, the San Bernardino County Children and Family Services, and Jeany Zepeda's Motion to Dismiss (ECF No. 47) is GRANTED IN PART as follows:

    a. Defendants Members of the San Bernardino Board of Supervisors and Jeany Zepeda are DISMISSED from the entire case WITH LEAVE TO AMEND;

    b. Defendants Members of the San Bernardino Board of Supervisors, the San Bernardino County Children and Family Services, and Jeany Zepeda are DISMISSED from the First, Third, and Fifth Causes of Action WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: September 30, 2024

                                MAAME EWUSI-MENSAH FRIMPONG

                                  United States District Judge